**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
                    )
U.T., *et al.*                 )
                    )
        *Plaintiffs,*    )
                    )    Case No.: 1:20-cv-00116 (EGS)
v.                   )
                    )
WILLIAM BARR, *et al.,*    )
                    )
        *Defendants.*   )
———————————————————)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE**
**TO FILE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

    A. Procedural History ..................................................................................................... 3

    B. Additional Factual Developments and Allegations ........................................................ 4

    C. Proposed Amendments ............................................................................................. 7

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT .................................................................................................................... 8

    I. There Is No Undue Delay and Defendants Would Not Be Prejudiced. ................................... 8

    II. Plaintiffs' Proposed Claims Are Not Futile. .................................................................. 10

    A. DHS Officials Lacked Authority to Issue the Challenged Policies ................................... 10

        1. The Proposed Amended Complaint Pleads Facts Showing That Neither McAleenan Nor Defendant Wolf Was Authorized to Serve as Acting DHS Secretary Under the DHS Further Succession Orders ....................................................... 10

        2. The Proposed Amended Complaint Pleads Facts Showing That Defendant Wolf Did Not Validly Ratify the Rule or DHS Guatemala Designation ........................................... 15

    B. 8 U.S.C. § 1252(e)(3)'s 60-day Deadline Does Not Bar the Proposed Claims. ............... 19

CONCLUSION ................................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Immigration Lawyers Ass'n v. Reno*,
　18 F. Supp. 2d 38 (D.D.C. 1998) ........................................................... 20

*Am. Immigration Lawyers Ass'n v. Reno*,
　199 F.3d 1352 (D.C. Cir. 2000) ...................................................... 20, 21

*Atchinson v. D.C.*,
　73 F.3d 418 (D.C. Cir. 1996) ........................................................ 8, 9, 10

*Azar v. Allina Health Servs.*,
　139 S. Ct. 1804 (2019) .......................................................................... 20

*Batalla Vidal v. Wolf*,
　No. 16-cv-4756, 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) ...................... passim

*Bode & Grenier, LLP v. Knight*,
　808 F.3d 852 (D.C. Cir. 2015) ................................................................ 9

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*,
　148 F.3d 1080 (D.C. Cir. 1998) ............................................................... 8

*Casa de Maryland, Inc. v. Wolf*,
　No. 20-cv-02118, 2020 WL 5500165 (D. Md. Sept. 11, 2020) ...................... passim

*City of Moundridge v. Exxon Mobil Corp.*,
　250 F.R.D. 1 (D.D.C. 2008) ................................................................. 10

*Doe v. McMillan*, 566 F.2d 713 (D.C. Cir. 1977) ....................................... 7

*Does I through III v. District of Columbia*,
　815 F. Supp. 2d 208 (D.D.C. 2011) ......................................................... 9

*Easter v. District of Columbia*,
　128 F. Supp. 3d 173 (D.D.C. 2015) ......................................................... 8

*Ellis v. Georgetown Univ. Hosp.*,
　631 F. Supp. 2d 71 (D.D.C. 2009) ........................................................... 9

*FEC v. NRA Political Victory Fund*,
　513 U.S. 88 (1994) .............................................................................. 17

*Foman v. Davis*,
　371 U.S. 178 (1962) .............................................................................. 7

*Freytag v. CIR*,
　501 U.S. 868 (1991) ............................................................................. 13

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019) ................................................................................ 14

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   356 F. Supp. 3d 109 (D.D.C.) ............................................................................. 14

*Harris v. Sec'y, U.S. Dep't of Veterans Affairs*,
   126 F.3d 339, 344 (D.C. Cir. 1997) ...................................................................... 7

*Howard v. Gutierrez*,
   237 F.R.D. 310 (D.D.C. 2006) .............................................................................. 9

*Immigrant Legal Resource Center (ILRC) v. Wolf*,
   No. 20-cv-5883, 2020 WL 5798269, (N.D. Cal. Sept. 29, 2020) ..................... passim

*In re Vitamins Antitrust Litig.*,
   217 F.R.D. 30 (D.D.C. 2003) .............................................................................. 10

*Jiggetts v. Cipullo*,
   285 F. Supp. 3d 156 (D.D.C. 2018) ................................................................... 9, 10

*L.M.-M. v. Cuccinelli*,
   442 F. Supp. 3d 1 (D.D.C. 2020) .................................................................. 2, 15, 16

*La Clinica de la Raza v. Trump*,
   No. 19-cv-4980, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ..................... 2, 5, 10

*Make the Rd. New York v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020) ............................................................................ 20

*Make the Rd. New York v. Wolf*,
   No. 19-cv-2369 (D.D.C. Nov. 2, 2020)................................................................ 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .............................................................................................. 17

*NLRB v. SW Gen., Inc.*,
   137 S. Ct. 929 (2017) .......................................................................................... 13

*NWIRP v. USCIS*,
   No. 19-cv-3283, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) ............................ passim

*Richardson v. United States*,
   193 F.3d 545 (D.C. Cir. 1999) .............................................................................. 7

**Statutes**

5 U.S.C. § 3345 ...................................................................................................... 13

5 U.S.C. § 3345(1)(B)............................................................................................ 15

5 U.S.C. § 3345(a) ................................................................................................ 17

5 U.S.C. § 3345(a)(2) ............................................................................................ 17

5 U.S.C. § 3345(a)(3) ............................................................................................ 17

5 U.S.C. § 3345(b)(1)(B) ....................................................................................... 15

5 U.S.C. § 3346 ..................................................................................................... 13

5 U.S.C. § 3346(a)(1) ............................................................................................ 13

5 U.S.C. § 3346(d)(2) ............................................................................................ 13

5 U.S.C. § 3347(a)(1) ............................................................................................ 12

5 U.S.C. § 3348(d) ................................................................................................ 14

5 U.S.C. § 3348(d)(1) ...................................................................................... 13, 15

5 U.S.C. § 3348(d)(2) ...................................................................................... 13, 16

5 U.S.C. § 706 ....................................................................................................... 14

5 U.S.C. § 706(2)(A) ............................................................................................. 14

6 U.S.C. § 112(e) .................................................................................................. 16

6 U.S.C. § 113(a)(1)(A) ................................................................................... 11, 13

6 U.S.C. § 113(a)(1)(F) .................................................................................... 11, 13

6 U.S.C. § 113(g) .................................................................................................. 17

6 U.S.C. § 113(g)(1) ................................................................................... 11, 16, 17

6 U.S.C. § 113(g)(2) ........................................................................................ passim

8 U.S.C. § 1103(a)(3) ............................................................................................ 16

8 U.S.C. § 1158(a)(2)(A) ....................................................................................... 16

8 U.S.C. § 1225(b) ................................................................................................ 19

8 U.S.C. § 1252 ..................................................................................................... 20

8 U.S.C. § 1252 (b)(7)(B) ...................................................................................... 20

8 U.S.C. § 1252(a)(2)(D) ....................................................................................... 20

8 U.S.C. § 1252(b)(5) ............................................................................................ 20

8 U.S.C. § 1252(e)(1) ............................................................................................ 20

8 U.S.C. § 1252(e)(3) ....................................................................................... 19, 20

8 U.S.C. § 1252(e)(3)(A) ........................................................................................ 19

8 U.S.C. § 1252(e)(3)(B) ........................................................................................ 19

8 U.S.C. § 1252(f)(1) ............................................................................................. 20

8 U.S.C. § 1252(g) ................................................................................................. 20

42 U.S.C. § 265 .................................................................................................. 4, 18

**Rules**

Fed. R. Civ. P. 15(a) ................................................................................................. 8

Fed. R. Civ. P. 15(a)(2) ............................................................................................ 7

Fed. R. Civ. P. 2 ..................................................................................................... 19

Fed. R. Civ. P. 3 ..................................................................................................... 19

**Regulations**

Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the
   Immigration and Nationality ("the Rule"), 84 Fed. Reg. 63,994 (Nov. 19, 2019) ............... 3, 18

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ........................................................................ 19

6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil
   2d § 1488 (1990 & Supp. 1997) ............................................................................. 8

DHS Delegation No. 106, Rev. No. 08.5 (Apr. 10, 2019) ............................................. 11, 12, 17

DHS, Ratification of Certain Actions (Nov. 16, 2020) ...................................................... 6

DHS, Ratification of Department Actions (Nov. 16, 2020) ............................................. 6

Peter T. Gaynor, Order Designating the Order of Succession for the Secretary of Homeland
   Security (Nov. 14, 2020) ........................................................................................ 6

Restatement (Second) of Agency (1958) ...................................................................... 17

U.S. Gov't Accountability Off., No. B-331650, *Decision: Matter of Department of Homeland
   Security—Legality of Service of Acting Secretary of Homeland Security* ("GAO Decision") 4
   (Aug. 14, 2020) .................................................................................................... 5

## INTRODUCTION

Plaintiffs move this Court under Federal Rule of Civil Procedure 15(a)(2) for leave to file a First Amended Complaint,[1] which adds claims challenging the government's authority to issue the unlawful policies presented in this case.  Those policies deny asylum seekers protection in the United States and allow for their summary removal to any third country with which the United States has an operative "Asylum Cooperative Agreement" ("ACA"), without considering their asylum claims.  The new claims challenge two of the primary policies pled in the original complaint: the November 19, 2019 regulations establishing the procedures for ACA removals, which were issued by Acting Secretary of Homeland Security Chad Wolf; and a DHS memorandum designating Guatemala as a "safe third country" (the "DHS Guatemala Designation"), which was issued by former Acting Secretary Kevin McAleenan.  In their proposed amended complaint, Plaintiffs allege that neither Defendant Wolf nor McAleenan had authority to issue an interim final rule (the "Rule") or designate an ACA country as "a safe third country" because they were not validly serving as Acting Secretary of DHS at the time the respective policies were issued.[2]

There is no undue delay or prejudice to Defendants in permitting Plaintiffs to amend their complaint.  Plaintiffs filed this action just ten months ago.  The additional claims challenge policies already pled in Plaintiffs' complaint.  No discovery has taken place in the case and no new discovery or administrative record would be necessary to resolve the new claims.  The claims

---

[1] The First Amended Complaint (Ex. A), and a redline comparison (Ex. B) between the original and amended pleading are attached hereto, along with a Proposed Order (Ex. C).

[2] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel contacted Defendants' counsel to determine Defendants' position on the instant motion, and Defendants' counsel stated that Defendants oppose this motion.

present legal questions that can be resolved based on an undisputed set of facts after supplemental motions for summary judgment.  *See, e.g.*, *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 15, 29 (D.D.C. 2020).

The proposed amendment does not alter the allegations or claims that have been briefed in the parties' cross-motions for summary judgment.  Plaintiffs request that the Court grant this motion for leave to amend and treat the pending summary judgment motions as motions for partial summary judgment.  *See* Minute Order, *Nw. Immigrant Rights Project (NWIRP) v. U.S. Citizenship & Immigration Servs. (USCIS)*, No. 19-cv-3283-RDM (D.D.C. filed Aug. 29, 2020) (Moss, J.) (granting motion to file amended and supplemental complaint; and further granting plaintiffs' request to treat pending cross-motions for summary judgment as motions for partial summary judgment).  Plaintiffs believe the case can be resolved in their favor based on the existing claims and respectfully request that the Court move forward with adjudicating the pending partial motions for summary judgment.  Plaintiffs are prepared to brief these new claims, which provide alternative grounds to invalidate the Rule and DHS Guatemala Designation, on a separate track, if necessary.

Finally, Plaintiffs' claims are not futile.  In fact, several courts have ruled that neither Wolf nor McAleenan was validly serving as Acting Secretary and that various actions they took while exercising that authority were therefore void.  *See Batalla Vidal v. Wolf*, No. 16-cv-4756, 2020 WL 6695076, at *1 (E.D.N.Y. Nov. 14, 2020); *NWIRP v. USCIS*, No. 19-cv-3283, 2020 WL 5995206, at *13 (D.D.C. Oct. 8, 2020); *Immigrant Legal Resource Center (ILRC) v. Wolf*, No. 20-cv-5883, 2020 WL 5798269, at *7-9 (N.D. Cal. Sept. 29, 2020); *Casa de Maryland, Inc. v. Wolf*, No. 20-cv-2118, 2020 WL 5500165, at *18-23 (D. Md. Sept. 11, 2020); *La Clinica de la Raza v. Trump*, No. 19-cv-4980, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020).

## BACKGROUND

### A.  Procedural History

Individual Plaintiffs are six Honduran and Salvadoran asylum seekers who were denied the opportunity to apply for asylum, withholding of removal, or protection under the Convention Against Torture in the United States and who were instead removed to Guatemala under the challenged Rule, agency guidance, and agency designations of Guatemala as a "safe third country."[3]  *See* Pls.' Statement of Undisputed Facts ("SUF"), ECF No. 38-2, ¶¶ 126-36. Organizational Plaintiffs Tahirih Justice Center and Las Americas Immigrant Advocacy Center share a mission of providing legal services to asylum seekers.  The new policies frustrate that mission and force them to divert substantial resources to respond.  *See id.* ¶¶ 143-64.  Plaintiffs timely sued on January 15, 2020, within 60 days of the implementation of the challenged policies. *See* Complaint for Declaratory and Injunctive Relief ("Compl."), ECF No. 3.

In their original complaint, Plaintiffs challenged the regulations that provide the procedures to effectuate removals under the ACAs.  *See* Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality ("the Rule"), 84 Fed. Reg. 63,994 (Nov. 19, 2019); *see also* Compl., ECF No. 3, ¶¶ 156-186.  Plaintiffs also challenged agency guidance providing additional directives for implementing the Guatemala ACA in expedited removal (the "Guidance").  Plaintiffs alleged that the Rule and Guidance violate the Immigration and Nationality Act's ("INA") safe third country provision, the withholding of removal statute, the Foreign Affairs Reform and Restructuring Act of 1998, the expedited removal statute, and the

---

[3] Defendant Wolf and the Attorney General each issued a "safe third country" designation of Guatemala as providing adequate access to asylum.  The designations are referred to collectively as the "Guatemala Designations" and the DHS designation issued by Wolf is referred to as the "DHS Guatemala Designation."

Suspension Clause of the U.S. Constitution; and that their issuance violated the Administrative Procedure Act's ("APA") reasoned decisionmaking requirements.  *See* Compl. ¶¶ 156-86. Plaintiffs further alleged that the Rule violates the APA's notice-and-comment and 30-day-grace-period requirements.  *Id.* ¶¶ 181-83.  Finally, Plaintiffs challenged any categorical "safe third country" designations of the three current ACA countries (Guatemala, Honduras, and El Salvador) as providing asylum seekers with "access" to a "full and fair" asylum process.  Plaintiffs alleged that these country-specific designations would violate the safe third country provision and the APA's reasoned decisionmaking requirements.  *See id.* ¶¶ 156-62, 177-80.

The parties proceeded to cross-motions for summary judgment on Plaintiffs' claims challenging the Rule, Guidance, and the Guatemala Designations,[4] which concluded on April 29, 2020, with the filing of Defendants' final brief.  ECF No. 92.  Due to the global COVID-19 pandemic, Defendants have temporarily halted the use of the challenged policies.  Instead, the government primarily has been expelling asylum seekers under regulations and orders invoking the public health authority of 42 U.S.C. § 265.  However, DHS has indicated its intent to resume removals under the challenged ACA policies in the future.  Ex. A, Proposed First Amended Complaint ("FAC") ¶ 182.[5]

**B.  Additional Factual Developments and Allegations**

Over the last two years, DHS has engaged in an unprecedented series of maneuvers to fill its senior offices with acting officials instead of Senate-confirmed appointees, including the two

---

[4] Plaintiffs moved for summary judgment on their claims challenging the Guatemala Designations.  However, the government has not yet implemented the Honduras or El Salvador ACAs or any designations of those countries as providing adequate access to asylum.

[5] If the government were to resume ACA removals while the parties await a decision on their pending cross-motions for summary judgment, Plaintiffs would seek an expedited hearing on those motions.

acting secretaries who purported to issue and ratify the policies at issue here.  These actions are described more fully below.  *See infra* Argument at 11.

In brief, Kevin McAleenan purported to assume the DHS Acting Secretary role on April 10, 2019, after the resignation of Secretary of Homeland Security Kirstjen Nielsen.  *See* FAC ¶¶ 110-11 (citing U.S. Gov't Accountability Off., No. B-331650, *Decision: Matter of Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security* 4 (Aug. 14, 2020)).  However, DHS's internal succession orders at the time assigned the role to a different official, and thereby precluded McAleenan from serving as Acting Secretary.  *Id.* ¶ 122.  He nonetheless issued the DHS Guatemala Designation on October 16, 2019.  *Id.* ¶¶ 17, 96, 113.

McAleenan then purported to change DHS's order of succession on November 8, 2019, to designate Chad Wolf as the next Acting Secretary.  *Id.* ¶¶ 114, 117.  However, this change to the order of succession had no effect because McAleenan was not validly serving as Acting Secretary and, even if he was, only a Senate-confirmed DHS Secretary—not an acting official—can change the order of succession.  Thus, Wolf's service was also invalid.  Moreover, by the time Wolf purportedly assumed the Acting Secretary position on November 13, 2019, *id.* ¶¶ 119-20, the Federal Vacancies Reform Act's ("FVRA") 210-day statutory limit on service by an acting official had already elapsed, *id.* ¶ 250.  Wolf nonetheless issued the challenged Rule on November 19, 2019.  *Id.* ¶ 75.

In August 2020, the GAO concluded that McAleenan had not validly served as Acting Secretary and that his designation of Wolf as his successor was therefore also invalid.  *See id.* ¶ 122.  Several courts have recently come to the same conclusion.  *See Batalla Vidal*, 2020 WL 6695076, at *1; *NWIRP*, 2020 WL 5995206, at * 13; *ILRC*, 2020 WL 5798269, at *7-9; *Casa de Maryland*, 2020 WL 5500165, at *20-23; *La Clinica*, 2020 WL 4569462, at *12-14.

In response to the GAO decision and court challenges on these grounds to several of Wolf's actions, DHS tried to retroactively validate Wolf's and McAleenan's actions.  On November 14, 2020, Federal Emergency Management Agency ("FEMA") Administrator Peter Gaynor purported to exercise "any authority vested in [him] as Acting Secretary" pursuant to the order of succession in place when Secretary Nielsen resigned in April 2019 to re-amend that order of succession to re-assign the Acting Secretary role to Wolf.  FAC ¶ 126 (citing Peter T. Gaynor, Order Designating the Order of Succession for the Secretary of Homeland Security (Nov. 14, 2020)).  On November 16, 2020, Wolf issued two memoranda purporting to ratify various actions, including the Rule and DHS Guatemala Designation.  *Id.* ¶¶ 132-33 (citing DHS, Ratification of Department Actions (Nov. 16, 2020) and DHS, Ratification of Certain Actions (Nov. 16, 2020)).

As explained above, however, an Acting Secretary may not amend the order of succession, so Gaynor could not change the order to elevate Wolf to Acting Secretary.  *See* 6 U.S.C. § 113(g)(2); *NWIRP*, 2020 WL 5995206, at *24.  Accordingly, Wolf was not validly serving as Acting Secretary when he attempted to ratify the Rule and DHS Guatemala Designation. Moreover, even if Wolf had become the Acting Secretary, those policies are not ratifiable under the FVRA and, even if they were, Defendant Wolf failed to effectively ratify the challenged policies.[6]

---

[6] Gaynor's November 14 order is a reissuance of his September 10 succession order, which was invalid because, among other reasons, it had been signed prior to Wolf's nomination to serve as DHS Secretary on September 10, 2020.  *See* FAC ¶ 125 (citing Letter by DHS, *Batalla Vidal*, No. 16-cv-4756 (E.D.N.Y. Nov. 13, 2020), ECF No. 341 (DHS statement regarding the sequence of events)).  Wolf previously attempted to ratify the Rule and DHS Guatemala Designation based on Gaynor's September 10 order designating him as Acting Secretary.  *See id.* ¶¶ 129, 131.  The November 16 memoranda are virtually identical to the previous ratification memos that Wolf issued on September 23 and October 16, 2020.  *See id.* ¶ 132.  Defendant Wolf appears to have issued the November 16 memoranda because of the apparent defect in the timing of the original Gaynor order, *id.* ¶ 125, which, among other reasons, would have rendered his initial ratification attempts ineffective.

### C.  Proposed Amendments

Plaintiffs seek to amend their pleading to add allegations that then-Acting Secretary Kevin McAleenan lacked authority to issue the DHS Guatemala Designation and that Acting Secretary Chad Wolf lacked the authority to issue the Rule.  Plaintiffs' proposed complaint alleges that neither official was validly serving as Acting Secretary of DHS at the time of the challenged actions.  *See id.* ¶¶ 96-135.  Plaintiffs propose to add claims alleging that the Rule and DHS Guatemala Designation are invalid under the Homeland Security Act ("HSA"), the Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause.  FAC ¶¶ 232-64.

### LEGAL STANDARD

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "The decision to grant or deny leave to amend . . . is vested in the sound discretion of the trial court," *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977), which should "determine the propriety of amendment on a case by case basis, using a generous standard." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997).  "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman*, 371 U.S. at 182).

"'Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend . . . . In most cases delay alone is not a sufficient reason for denying leave . . . . If no prejudice [to the non-moving party] is found, the amendment will be allowed.'"

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998)

(citing 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure:

Civil 2d § 1488, at 652, 659, 662–69 (1990 & Supp. 1997)) (alterations in original); *see also*

*Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996) (consideration of whether delay is undue

should generally take into account the "possibility of any resulting prejudice").  The non-movant

generally "bears the burden of persuasion that a motion to amend should be denied." *Easter v.*

*District of Columbia*, 128 F. Supp. 3d 173, 177 (D.D.C. 2015).

## ARGUMENT

The Court should grant Plaintiffs' motion for leave to amend to add the proposed

allegations and claims that the challenged policies are void because DHS officials lacked authority

to issue them.

## I.   There Is No Undue Delay and Defendants Would Not Be Prejudiced.

There is no undue delay or prejudice to Defendants from Plaintiffs' proposed claims.  Only

ten months have passed since Plaintiffs filed this action.  In the interim, six months after Plaintiffs

filed their initial complaint, the GAO issued an opinion detailing the succession orders issued by

DHS officials and concluding that McAleenan and Defendant Wolf had not lawfully served as

Acting Secretary.  There has been no discovery in this case to date and the proposed claims will

not require any discovery or even the production of additional administrative record materials.

The Court has not yet ruled on the parties' motions for summary judgment and there is no trial

scheduled in the case.

The mere passage of time does not preclude amendment.  Rather, "[p]arties are routinely

permitted to amend pleadings well after suit has been filed." *Howard v. Gutierrez*, 237 F.R.D.

310, 312 (D.D.C. 2006).  Courts in this District have granted leave to amend after far more

substantial delays, even in the midst of or after the close of discovery. *See, e.g.*, *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 162 (D.D.C. 2018) (permitting amendment two years after initial complaint was filed and while discovery was ongoing); *Does I through III v. District of Columbia*, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) (permitting amendment seven years after complaint filed, and after discovery and summary judgment motions); *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 80 (D.D.C. 2009) (permitting amendment nearly three years after initial complaint was filed and one day before the close of discovery); *compare, e.g.*, *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (undue delay where "motion to amend arrived four years after litigation began, one year after summary judgment motions were decided, eight months after filing an amended answer and only days before trial"). Indeed, a judge in this District recently granted plaintiffs leave to amend and supplement their complaint following the GAO opinion under similar circumstances. *See* Minute Order, *NWIRP*, 19-cv-03283-RDM (D.D.C.) (Aug. 29, 2020) (Moss, J.) (allowing plaintiffs to add new appointments-related claims challenging a policy for which summary judgment motions were already pending on existing claims); *see also* Minute Order, *Batalla Vidal*, 16-CV-4756 (E.D.N.Y. Aug. 13, 2020) (allowing plaintiffs to file supplemental appointments-related claims to challenge changes in DACA policy).

Defendants cannot demonstrate the required prejudice from any delay between the original complaint and the proposed amendment. *See Atchinson*, 73 F.3d at 426 (prejudice to non-movant should be considered in determining whether delay is undue). An amendment is not prejudicial merely because it causes the non-movant inconvenience or to expend additional resources. *Jiggetts*, 285 F. Supp. 3d at 162-63. Instead, Defendants "must show that [they were] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered had the amendments been timely." *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32

(D.D.C. 2003) (internal quotation marks omitted); *see also City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6 (D.D.C. 2008) (explaining that "[u]ndue prejudice is not mere harm to the non-movant") (internal quotation marks omitted). Here, Defendants cannot demonstrate any harm, much less meet this high prejudice threshold.

## II.    Plaintiffs' Proposed Claims Are Not Futile.

### A.    DHS Officials Lacked Authority to Issue the Challenged Policies.

Multiple courts have recently invalidated or enjoined policies issued by McAleenan and Wolf based on the same claims Plaintiffs seek to include in their amended complaint.  As they have held, both officials lacked authority to serve as Acting Secretary.  *See Batalla Vidal*, 2020 WL 6695076, at *8; *ILRC*, 2020 WL 5798269, at *7; *Casa de Maryland*, 2020 WL 5500165, at *23; *see also NWIRP*, 2020 WL 5995206, at *14, 23-24 (holding that Wolf was not validly appointed); *La Clinica*, 2020 WL 4569462, at *12-14 (agreeing that McAleenan never validly became the Acting Secretary under the HSA).[7]  The Government Accountability Office came to the same conclusion in a recent Opinion.  *See supra* at 2.  No court, in any of the recent challenges, has held that either official validly served as Acting Secretary.  These decisions alone establish that amendment is not futile here.

> ### 1.    The Proposed Amended Complaint Pleads Facts Showing That Neither McAleenan Nor Defendant Wolf Was Authorized to Serve as Acting DHS Secretary Under the DHS Further Succession Orders.

---

[7] The district court in *La Clinica* left open the possibility that McAleenan, although not validly designated under the HSA, could have been separately appointed by the President under the FVRA.  *See La Clinica*, 2020 WL 4569462, at *14.  As DHS itself has since explained, however, "the President did not designate Mr. McAleenan as Acting Secretary under the Federal Vacancies Reform Act."  Gov't Opp. to Mot. for Recon., *La Clinica de la Raza v. Trump*, No. 19-cv-4980, ECF 184 at 1 (N.D. Cal. Sept. 24, 2020); *see ILRC*, 2020 WL 5798269, at *7 n.9 (noting DHS's concession).  Accordingly, there is no valid basis for McAleenan's appointment.

**McAleenan.**  As alleged in the proposed amended complaint, McAleenan lacked authority to issue the DHS Guatemala Designation.  The HSA allows the Secretary to designate a "further order of succession to serve as Acting Secretary," in the event that the offices of the Secretary and the default successors under the FVRA—the statutorily designated "first assistant" positions (the Deputy Secretary and the Under Secretary for Management)—are simultaneously vacant.  *See* 6 U.S.C. § 113(g)(2); *id.* § 113(a)(1)(A), (F); *id.* § 113(g)(1).  When McAleenan's predecessor Secretary Nielsen resigned, the two default successor roles were vacant.  FAC ¶ 106.  However, DHS's succession orders assigned the role of Acting Secretary to a different official, which means that under these orders, McAleenan could not assume that role or exercise any of its functions.  Every court to resolve this issue has agreed.

The invalidity of McAleenan's tenure is clear from the text of DHS's succession orders.  *See id.* ¶ 108 (citing DHS Delegation No. 106, Rev. No. 08.5 (Apr. 10, 2019)).  At the time McAleenan assumed office, on April 10, 2019, those orders established two lines of succession: one line "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office," *id.* (citing § II.A of Delegation), and another line "in the event [of] a disaster or catastrophic emergency," *id.* (citing § II.B of Delegation).  In case of resignation, succession was governed by Executive Order 13753, which assigned the Acting Secretary role to Christopher Krebs.  *Id.* ¶ 110.  In case of emergency, succession was governed by "Annex A," which would have assigned the role to McAleenan.  *See id.* ¶¶ 109, 111.  On April 10, Secretary Nielsen resigned, triggering the succession order in § II.A, which made Krebs, not McAleenan, the Acting Secretary.  *Id.* ¶ 110.

That outcome was consistent with a document signed by Secretary Nielsen the day before, on April 9, which amended "Annex A of DHS [Delegation 106]."  *Id.* ¶ 109.  As explained, Annex

A provides the "order for delegation of authority" in case of disasters and emergencies only. *Id.* (capitalization omitted).  Secretary Nielsen's April 9 order did not change Annex A's title or its function in DHS Delegation 106.  It simply changed the line of succession within Annex A.  It therefore had no impact on succession in the event of the Secretary's resignation.  As a result, after Secretary Nielsen's resignation, the order of succession in Executive Order 13753 governed, and it precluded McAleenan from acting as Secretary.  *See Casa de Maryland*, 2020 WL 5500165, at *22 ( "[T]he plain language [of the Order] . . . controls [and] speaks for itself.") (citations omitted); *ILRC*, 2020 WL 5798269, at *8 (agreeing that Delegation 106 "meant what it said" and that DHS had "no basis to ignore its plain language").

**Wolf**.  As alleged in the proposed amended complaint, Wolf lacked authority to issue the Rule for three independent reasons.  Any one of them is sufficient to invalidate the Rule.

First, Wolf could only have become Acting Secretary through McAleenan's November 2019 attempt to revise the DHS order of succession.  As explained above, however, McAleenan was not validly serving as Acting Secretary and so he lacked any authority to amend the succession orders.  *See Casa de Maryland*, 2020 WL 5500165, at *23; *ILRC*, 2020 WL 5798269, at *8.

Second, even if McAleenan validly became the Acting Secretary, the HSA only allows a Senate-confirmed Secretary to change the order of succession, as Judge Moss recently explained. *See NWIRP*, 2020 WL 5995206, at *24 ("[T]he Court holds that an Acting Secretary may not amend the Department's order of succession.").  Under the FVRA, a statute can only give an official appointment power if the statute does so "expressly."  5 U.S.C. § 3347(a)(1).  But the HSA, which distinguishes between "the Secretary" and an "Acting Secretary," only gives power over the order of succession to the *Secretary*.  6 U.S.C. § 113(g)(2); *see NWIRP*, 2020 WL 5995206, at *19.  This reading is reinforced by the Appointments Clause, because it would raise major

constitutional concerns if § 113(g)(2) could be used to give appointment power to any one of the dozens of DHS officers who could become acting secretary. *See NWIRP*, 2020 WL 5995206, at *20 (quoting *Freytag v. CIR*, 501 U.S. 868, 878, 886 (1991)). For this independent reason, Wolf lacked authority to issue the Rule.

Third, Defendant Wolf's service as Acting Secretary violated the FVRA's time limit on acting service, and the Rule therefore has no force or effect. *See* 5 U.S.C. §§ 3346, 3348(d)(1). Congress enacted the FVRA in 1998 to combat the executive branch's systematic evasion of the Senate's advice and consent power. *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017). At that time, approximately 20% of executive offices requiring Senate confirmation were occupied by temporary designees serving indefinite terms while the President refused to submit nominations to the Senate. *Id.* In response, Congress set a 210-day time limit on the service of acting officers— and added a powerful enforcement mechanism that nullifies actions taken after the time limit has elapsed. *See* 5 U.S.C. §§ 3346, 3348(d)(1). Unless the vacancy is "caused by sickness," the period of acting service must not exceed "210 days beginning on the date the vacancy occurs." *Id.* § 3346(a)(1). Any action to perform a "function or duty of a vacant office" in violation of the FVRA "shall have no force and effect," *id.* § 3348(d)(1), and cannot be ratified, *id.* § 3348(d)(2).

The FVRA and HSA make clear that a vacancy in the office of the DHS Secretary, whether filled temporarily by a statutorily designated "first assistant" or as directed by the agency's "further" order of succession, remains subject to the FVRA's 210-day time limit. *See* 5 U.S.C. § 3346 (applying 210-day limit to any "person serving as an acting officer as described under section 3345"); *id.* § 3345 (describing Senate-confirmed officials); 6 U.S.C. § 113(a)(1)(A), (F) (DHS first assistants). The FVRA's 210-day limit on acting service had already elapsed when

Wolf assumed the Acting Secretary position on November 13, 2019.[8]  FAC ¶ 250.  He nonetheless issued the Rule days later on November 19, 2019, *id.* ¶¶ 96, 121, in violation of the FVRA's time limits.  5 U.S.C. §§ 706, 3348(d).

Alternatively, if an Acting Secretary serving under a further order of succession authorized in 6 U.S.C. § 113(g)(2) were not subject to a time limit, § 113(g)(2) would violate the Appointments Clause.  *See* FAC ¶¶ 256-264; *see also Batalla Vidal*, 2020 WL 6695076, at *7 n.9 ("[A]llowing acting officers to serve without time limitations and other enforcement mechanisms raises serious constitutional concerns.").  As this District has recognized, "courts can and must play a role in policing 'acting' appointments that are effectively permanent."  *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 153 (D.D.C.), *aff'd*, 920 F.3d 1 (D.C. Cir. 2019).  Here, McAleenan's and Wolf's purportedly indefinite terms as Acting Secretary run afoul of the Appointments Clause, and their actions must be set aside as contrary to law.

For these reasons, the DHS Guatemala Designation and the Rule are unlawful and Plaintiffs' proposed claims are not futile.  As every other court to address the issue has ruled, and DHS has acknowledged in other cases, a policy issued by an illegally acting official is "not in accordance with law" and must be "set aside."  5 U.S.C. § 706(2)(A); *see, e.g.*, *Casa de Maryland*, 2020 WL 5500165, at *21, 33-34 (agreeing with DHS's concession and enjoining rule); *ILRC*, 2020 WL 5798269, at *19-20 (enjoining rule); *NWIRP*, 2020 WL 5995206, at *24, 33 (same); *Batalla Vidal*, 2020 WL 6695076, at *14 (granting summary judgment and invalidating Wolf's July 2020 DACA Memorandum).  In addition, the FVRA provides that actions taken by an

---

[8] DHS has now lacked a Senate-confirmed Secretary for 590 days as of November 20, 2020, more than twice the FVRA's 210-day limit on interim service by an Acting Secretary.

improperly acting official "shall have no force or effect."  5 U.S.C. § 3348(d)(1); *see L.M.-M.*, 442 F. Supp. 3d at 34 (invalidating DHS policy).

> **2.**  **The Proposed Amended Complaint Pleads Facts Showing That Defendant Wolf Did Not Validly Ratify the Rule or DHS Guatemala Designation.**

As noted above, the unlawful actions by purportedly "acting" DHS officials at issue in this case are part of a larger pattern of such illegal actions by DHS.  The latest such attempt came only last week, when another DHS official, Mr. Gaynor, attempted (for the second time) to re-designate Chad Wolf as next in line for Acting Secretary, and Wolf then tried to ratify the Rule and DHS Guatemala Designation for the second time.  As three courts have held when Gaynor and Wolf attempted this maneuver the first time, their efforts failed to validly ratify anything.  *See NWIRP*, 2020 WL 5995206, at *17-24; *ILRC*, 2020 WL 5798269, at *9; *Batalla Vidal*, 2020 WL 6695076, at *9 .

On September 10, 2020, after relying exclusively on acting secretaries for more than 500 days, the President nominated Chad Wolf to be DHS Secretary.  *See* FAC ¶¶ 123, 250.  Wolf's nomination made him ineligible to serve as Acting Secretary under the FVRA.  5 U.S.C. § 3345(b)(1)(B).  Under Executive Order 13753 and therefore § II.A of DHS Delegation 106, the next person in line for Acting Secretary was Peter Gaynor, the FEMA Administrator.  On November 14, 2020, Gaynor issued his second order purporting to make Wolf the next Acting Secretary, effective immediately, using the Secretary's HSA power to designate the "further order of succession."  6 U.S.C. § 113(g)(2); FAC ¶ 126.

Wolf, acting on the authority Gaynor purportedly conferred upon him, then reissued two memoranda.  In one, he purported to ratify the Rule and, in the other, he purported to ratify the

DHS Guatemala Designation and other actions taken by McAleenan.  FAC ¶¶ 130-33.  Wolf's

ratifications of the Rule and DHS Guatemala Designation are invalid for four reasons.

First, as explained above, an acting official like Gaynor does not have the authority to

change the order of succession to place Defendant Wolf next in line as Acting Secretary and, thus,

Wolf has no authority to ratify the actions.  *See NWIRP*, 2020 WL 5995206, at *17-24 (holding

that Wolf lacked authority to ratify because Gaynor lacked authority to change the succession

order).

Second, the FVRA bars ratification of these actions even by a validly serving official.

Ratification is improper for any action taken by an illegally acting official as part of the "functions

or duties" of the office.  5 U.S.C. § 3348(d)(2).  These functions or duties "must include the duties

*specifically* assigned by statute to [an] office."  *L.M.-M.*, 442 F. Supp. 3d at 31-32 (remedy applies

where a function "is assigned to one particular office").  The ratification bar applies here, because

the primary function at issue—the issuance of rules for DHS—is specifically assigned to the

Secretary under the section entitled "Secretary; functions."  6 U.S.C. § 112(e); *see also* 8 U.S.C.

§ 1103(a)(3) (assigning powers and duties of the Secretary to include establishing regulations); 8

U.S.C. § 1158 (a)(2)(A) (assigning duty to "determine[]" whether country can provide "full and

fair" access to asylum).

Third, even if Gaynor could change the order of succession, he could not transfer the role

of Acting Secretary without resigning and thus creating a new vacancy for Acting Secretary.  The

HSA does not provide authority to directly install a new Acting Secretary; it simply authorizes the

Secretary to create an "order of succession," 6 U.S.C. § 113(g)(2), which only kicks in once there

is a *vacancy*—i.e., the preceding officer becomes unavailable to serve "by reason of absence,

disability, or vacancy in office."  *Id.* § 113 (g)(1).  This is clear in all the relevant statutes and DHS

16

rules.  *See, e.g.*, *id.* § 113(g), (g)(1) (rules for "vacancies" caused by a Secretary's "absence" or "disability"); 5 U.S.C. § 3345(a), (a)(2)-(3) (providing for acting officials to fill a "vacant office" when the previous official "dies, resigns, or is otherwise unable to" serve); FAC ¶ 108 (quoting DHS Delegation No. 106, Rev. 08.5, §§ I, II.A) (DHS succession orders apply "[i]n case of the Secretary's death, resignation, or inability to" serve).  Gaynor never resigned or otherwise became unable to serve as Acting Secretary.  He therefore never created a new vacancy that would allow the next official in line to assume the role.

Finally, Wolf's cursory ratification efforts fail to satisfy basic ratification requirements under common law agency principles and therefore cannot save his and McAleenan's prior unlawful actions.  *See FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98-99 (1994) (applying Restatement (Second) of Agency (1958) to ratification of agency action).  A principal may not ratify a purported agent's prior action if circumstances have materially changed in the interim or if doing so would otherwise be unfair.  *See* Restatement (Second) of Agency § 82 cmt. D (1958) (denying "power to ratify when it would obviously be unfair"), *id.* § 89 ("If the affirmance of a transaction occurs at a time when the situation has so materially changed that it would be inequitable to subject the other party to liability thereon, the other party has an election to avoid liability.").  If Wolf had been promulgating the Rule and DHS Guatemala Designation anew on November 16, 2020, the date of the most recent ratification attempt, he would have been required to consider all important aspects of the issue as of that date, including current conditions in Guatemala and at the U.S. border.  *See NRA Political Victory Fund*, 513 U.S. at 98 (explaining that "the party ratifying" must also be able to undertake the action "at the time the ratification was made"); *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (requiring agency to consider all "important aspect[s] of the problem" at issue).

Here, Wolf's ratification ignored materially changed circumstances at the U.S. border and in Guatemala that are highly relevant to the agency's conclusions in the DHS Guatemala Designation, as well as the agency's justifications for issuing an interim final rule without notice and comment.  For example, the experiences of approximately 1,000 asylum seekers removed to Guatemala under the ACA have been well documented since November 2019.  FAC ¶¶ 178-80. In addition, in March 2020, the Guatemalan government suspended removals under its ACA due to concerns surrounding the spread of COVID-19 and the country's capacity to meet the needs of asylum seekers removed there.  *Id.* ¶ 182.  Recent devastation wrought by Hurricanes Eta and Iota has undoubtedly further lessened Guatemala's capacity to receive asylum seekers.  *See id.*  These circumstances are highly relevant to the DHS Guatemala Designation, underscoring that the country is not capable of providing "full and fair" "access" to protection.  *See id.* ¶¶ 140-41. Conditions at the U.S.-Mexico border have also changed dramatically since the Rule was issued. In March, the government invoked 42 U.S.C. § 265 ("Title 42") to effectively suspend the operation of the asylum laws altogether at United States land borders.  FAC ¶ 183.  Since that time, DHS has expelled the vast majority of would-be asylum seekers without providing them any of the protections provided by the asylum and expedited removal statutes.  *Id.*  When Wolf originally issued the Rule in November 2019, he did so without use of ordinary notice and comment rulemaking procedures, *id.* ¶ 76, citing both the good cause and foreign affairs exceptions.  The changed circumstances severely undermine the agency's migrant "surge" rationale for the "good cause" exception and the need to "rapidly" effectuate ACAs as a basis for applying the "foreign affairs" exception.  84 Fed. Reg. at 64,006-07.

Wolf was required to consider these critical intervening developments in ratifying the policies—otherwise he would unjustly benefit from his and McAleenan's prior unlawful conduct.

Such an outcome would be inequitable and also incentivize agency officials to issue rules *ultra vires* in order to prematurely close the administrative record, narrow the scope of judicial review, and increase the likelihood that the action would be upheld.

**B.      8 U.S.C. § 1252(e)(3)'s 60-day Deadline Does Not Bar the Proposed Claims.**

With respect to Plaintiffs' claims subject to 8 U.S.C. § 1252(e)(3), Defendants have taken the position in separate litigation that 8 U.S.C. § 1252(e)(3) would preclude Plaintiffs from raising any additional legal claims where those particular claims were not pleaded within 60 days of the date of the challenged policies' implementation.  Gov't Opp. to Mot. Prelim. Inj. at 2, *Make the Rd. New York v. Wolf*, No. 19-cv-2369 (D.D.C. Nov. 2, 2020), ECF No. 62.  Defendants' position is wrong and could not support denial of leave to amend here.

The addition of new *claims* does not violate § 1252(e)(3)'s bar on bringing new *actions* after 60 days.  The statute provides that "judicial review of determinations under section 1225(b) . . . is available in an *action* instituted" in this Court.  8 U.S.C. § 1252(e)(3)(A) (emphasis added). Subsection (B) provides: "Any *action* instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is . . . implemented."  *Id.* § 1252(e)(3)(B) (emphasis added).  An *action* refers to a *lawsuit*—not to specific claims within that lawsuit.  *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *see also* Black's Law Dictionary (11th ed. 2019) (defining "action" as "[a] civil or criminal judicial proceeding").  Thus, the "action instituted under this paragraph"—*i.e.*, the systemic challenges to the "validity of the system," 8 U.S.C. § 1252(e)(3) (title of paragraph)—was "filed" when the original complaint was filed within 60 days of the challenged policies' first implementation.

Defendants issued the Rule on November 19, 2019 and the first individuals were removed the following day.  Plaintiffs filed their complaint on January 15, 2020.

Section 1252(e)(3) does not say that "[a]ny action *or claim* instituted under this paragraph" must be filed within 60 days.  And other subsections of the INA's judicial review provision, 8 U.S.C. § 1252, demonstrate that when Congress wishes to refer to a *claim* in addition to an action, it knows how to do so.  For example, in § 1252(e)(1), Congress specified limitations on relief "[w]ithout regard to the nature of the *action or claim*."  8 U.S.C. § 1252(e)(1) (emphasis added); *see also id.* § 1252(f)(1) (limitation on judicial review that applies regardless of the "nature of the action or claim"); *id.* § 1252(g) (barring review of "any cause or claim"); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019) ("our normal presumption [is] that, when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout").  Likewise, other provisions of § 1252 repeatedly refer to a particular claim as opposed to the action in which that claim is asserted.  *See, e.g.*, 8 U.S.C. § 1252(a)(2)(D) (allowing judicial review of "certain . . . claims"); *id.* § 1252(b)(5), (b)(7)(B) (addressing nationality "claims").  Plaintiffs' reading of § 1252(e)(3) as requiring the filing of a lawsuit challenging a written policy within the designated time frame, but not necessarily every particular legal theory that may be advanced in that lawsuit, is further reinforced by the strong presumption in favor of judicial review of agency action.  *See Make the Rd. New York v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020).

*American Immigration Lawyers Ass'n (AILA) v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000), does not control this issue.  In *AILA*, the district court rejected an untimely attempt to amend in *new plaintiffs* who were issued expedited removal orders after the 60-day deadline in order to cure a jurisdictional defect in the original complaint.  *See AILA v. Reno*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("[T]he new plaintiffs in the amended . . . complaint are time barred.").  The D.C. Circuit

summarily affirmed on that issue without analysis. *See AILA*, 199 F.3d at 1357. *AILA* has no bearing here, where there is a singular action, timely filed by the Plaintiffs, who have standing to raise all the claims presented.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Leave to File a First Amended Complaint.

Dated: November 20, 2020

Respectfully submitted,

  */s/ Katrina Eiland*

Keren Zwick (D.D.C. Bar. No. IL0055)
Gianna Borroto***
Ruben Loyo***
Mark Fleming***
Charles G. Roth***
National Immigrant Justice Center
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
(312) 660-1370

Katrina Eiland*
Julie Veroff*
Morgan Russell*
Stephen Kang*
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation of
the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Omar Jadwat*
Lee Gelernt*
Noor Zafar**
Ming Cheung**
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Blaine Bookey*
Annie Daher*
Sayoni Maitra*
Karen Musalo*
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877

Hardy Vieux (D.C. Bar No. 474762)
Patricia Stottlemyer (D.C. Bar No. 888252536)
Human Rights First
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 547-5692

*Attorneys for Plaintiffs*
*\* Admitted Pro Hac Vice*

21

\*\* *Pro Hac Vice Forthcoming*
\*\*\**Admitted Pro Bono*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: /s/ *Katrina Eiland*
Katrina Eiland