UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.T., *et al.* ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | Case No.: 1:20-cv-00116-EGS |
| v. ) | |
| ) | |
| WILLIAM BARR, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs move this Court to supplement the administrative record with a previously-undisclosed Department of Homeland Security ("DHS") memorandum prepared by Defendant Chad Wolf (the "Wolf Memo"), attached hereto as Exhibit A.[1] This newly-surfaced memo predates and appears to directly contradict the conclusion reached by DHS just months later in its October 2019 Guatemala Designation. The Wolf Memo was only made public on November 2, 2020, following a court order in a Freedom of Information Act ("FOIA") lawsuit. In it, Wolf states that except for Costa Rica, "Central American countries have not . . . created functioning asylum systems to provide protection to refugees fleeing neighboring countries." Ex. A at 2. By contrast, just months later in the Designation, DHS concluded that Guatemala has a "robust protection system in place" that ensures asylum seekers can "safely remain in Guatemala until their protection claim[s] [are] resolved." *See* DHSFF1282-83. Accordingly, the Wolf Memo

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel contacted Defendants' counsel to determine Defendants' position on the instant motion, and Defendants' counsel stated that Defendants oppose this motion.

1

strongly supports Plaintiffs' arguments that the Guatemala Designations are arbitrary and capricious because, inter alia, the agencies disregarded the actual functioning of Guatemala's asylum system and ignored evidence contradicting their decisions.

Because the Wolf Memo is both directly relevant to and seemingly contrary to the conclusion in the DHS Guatemala Designation, supplementation of the administrative record is warranted under well-established D.C. Circuit and District precedent.[2]

## BACKGROUND

On October 16, 2019, then-Acting DHS Secretary Kevin McAleenan issued a memorandum (the "DHS Guatemala Designation") concluding "that Guatemala's refugee protection laws and procedures satisfy the requirements of [8 U.S.C. § 1158(a)(2)(A)]."[3] DHSFF1282-83.  McAleenan's Designation stated that, "Guatemala has satisfied [the safe third country provision's] requirement because it has in place a sufficient protection system with accompanying procedures and laws." *Id.* at 1282.  The Designation asserted that this was so because, among other things, "[a]pplicants for protection in Guatemala have a meaningful opportunity to make a protection claim, receive a hearing and adjudication regarding that claim, and safely remain in Guatemala until their protection claim is resolved." *Id.*  Indeed, McAleenan concluded that the country "has a robust protection system in place under its laws." *Id.* at 1283. Shortly thereafter, on November 7, 2019, the Attorney General issued a similar Designation that

---

[2] In the interest of timeliness, Plaintiffs have endeavored to file the present motion promptly following the release of the Wolf Memo.  However, Plaintiffs believe the Court can defer deciding this motion until it takes up the pending cross-motions for summary judgment.

[3] By referring to McAleenan and Wolf using the titles DHS assigned them at relevant times, Plaintiffs do not concede that those individuals are or were lawfully serving in the respective offices.

largely mirrored the DHS Designation and came to the same conclusion, based in part on "information provided by the Department[] of . . . Homeland Security." DOJFF6-7.

On November 2, 2020, El Paso-based legal services organization Diocesan Migrant & Refugee Services ("DMRS") posted on its website 33 pages of DHS documents concerning the so-called Migrant Protection Protocols ("MPP")—also known as the "Remain in Mexico" policy—produced pursuant to an October 19, 2020 court order. *See* DMRS vs. ICE FOIA Production, http://www.dmrs-ep.org/wp-content/uploads/2020/11/2019-ICLI-00062.pdf (last accessed Dec. 7, 2020); *see also* Findings of Fact and Conclusions of Law, *DMRS v. ICE*, No. EP-19-cv-00236, Dkt. 44 (W.D. Tex. Oct. 19, 2020) (ordering production). Among these newly-public documents is a 2019 memorandum prepared by Chad Wolf—who was then serving as the "Senior Official Performing the Duties of the Under Secretary" for DHS's Office of Strategy, Policy and Plans—titled "Migrant Protection Protocols as only One Piece of a Comprehensive Approach to Regional Migration Management" (the "Wolf Memo"). Ex. A. The memo is undated, but from context it appears that it was prepared between February 14 and April 8, 2019—and clearly well before DHS issued its Guatemala Designation in October 2019.[4]

---

[4] The first lawsuit challenging MPP was filed on February 14, 2019, and MPP was preliminarily enjoined between April 8 and May 7, 2019. *See Innovation Law Lab v. Nielsen*, 366 F. Supp. 3d 1110 (N.D. Cal. 2019) (granting preliminary injunction); *Innovation Law Lab v. McAleenan*, 924 F.3d 503 (9th Cir. 2019) (staying injunction). The Wolf Memo states that "MPP is the recent subject of litigation," but that "the initiative is still operational," without referencing the period MPP was preliminarily enjoined or noting that the injunction was stayed. Ex. A at 3. Thus, the memo was likely issued before the April 8 decision. The memo further states that, "to date, only a small number of individuals have been subject to MPP." *Id.* By the end of February 2019, only 169 deportation proceedings had been initiated under MPP. *See* Syracuse Univ., Transactional Records Access Clearinghouse, Details on MPP (Remain in Mexico) Deportation Proceedings, https://trac.syr.edu/phptools/immigration/mpp/ (select "Initial Filing" for all hearing locations) (last accessed Dec. 7, 2020). That number was still just 507 at the end of March 2019, but it was 3,130 by the end of April, and 8,212 by the end of May. *Id.*

3

The Wolf Memo's stated purpose is "[t]o contextualize the recent implementation of [MPP] within DHS's larger efforts to promote a comprehensive, regional approach to migration management and identify where additional action is needed." Ex. A at 1. The memo sets out four goals to advance this "regional vision" and identifies "successes" and "remaining challenges" in each area. *Id.* at 1-4 (capitalization omitted). Most relevant here, the first stated goal is to "[i]ncrease access to humanitarian protections as close to migrants' homes as possible," and one of the identified challenges to doing so is that:

> Central American countries have not taken responsibility for their own internally displaced citizens, nor (with the exception of Costa Rica) created functioning asylum systems to provide protection to refugees fleeing neighboring countries.

*Id.* at 2. The memo also lists the fact that "Mexico remains opposed to negotiating a Safe Third Country Agreement" as a challenge to "[i]mplement[ing] a 'compliance' mechanism to discourage undocumented migration." *Id.* at 3. This context makes clear that just as with the Rule and related policies at issue in this case, reliance on "safe third country" agreements (like those later signed with Guatemala, Honduras, and El Salvador) was part of the so-called regional approach the Wolf Memo envisioned.

Moreover, as the Acting Under Secretary of the DHS Office of Strategy, Policy, and Plans throughout most of 2019—including the period in which the Guatemala, Honduras, and El Salvador Asylum Cooperative Agreements were signed—Wolf was specifically responsible for "[l]ead[ing] and coordinat[ing] [DHS's] international engagement and negotiations." *See* Department of Homeland Security, Office of Strategy, Policy, and Plans, https://www.dhs.gov/office-strategy-policy-plans (last accessed Dec. 7, 2020) Indeed, the administrative record reflects that Wolf was party to communications immediately preceding McAleenan's issuance of the DHS Guatemala Designation. For instance, on October 11, 2019,

five days before the Designation was signed, Wolf was copied on an email concerning an "ACA Understanding of Facts" with the Guatemalan Ministry of Foreign Affairs. *See* DHSFF1261. Notably, moreover, the Wolf Memo is captioned a "Memorandum for the Secretary" and so was plainly meant to inform the Secretary's (and thus the agency's) decisionmaking. Ex. A at 1 (all capitals omitted).

Acting Under Secretary Wolf's conclusion in the previously-undisclosed memo that Guatemala and other "Central American countries have not . . . created functioning asylum systems to provide protection to refugees fleeing neighboring countries," *id.* at 2, appears to directly contradict the Designation's conclusion that Guatemala "has a robust protection system in place." DHSFF1283. Moreover, nothing in the Designation suggests that it was based on considerations that changed after the Wolf Memo was prepared just months earlier. *See id.* at 1282-83. Accordingly, the Wolf Memo further strengthens Plaintiffs' arguments that the Guatemala Designations are arbitrary and capricious. The memo underscores the agencies' failure to grapple with "the actual functioning of Guatemala's asylum system and the ability of asylum seekers to safely remain there in practice"—issues the memo squarely addresses. *See* Pls.' Brief, ECF NO. 40-1, at 35. The Wolf Memo likewise bolsters Plaintiffs' arguments that "the agencies failed to adequately explain their decisions" and ignored evidence contradicting their position. *See id.* at 35-36.

Plaintiffs now move the Court to supplement the administrative record with the Wolf Memo.

**LEGAL STANDARD**

While Administrative Procedure Act ("APA") review is generally limited to the administrative record produced by the agency, supplementation of the record is proper if "'[t]he agency deliberately or negligently excluded documents that may have been adverse to its decision.'" *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)); *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (noting same exception); *Kent Cty., Del. Levy Court v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (supplementing administrative record with adverse documents where the agency was "at least negligent" in failing to include them).

"Permitting an agency to ignore 'unfavorable' evidence that was before it at the time of the decision would frustrate judicial review and would deprive the APA of much of its force." *Bazzi v. Gacki*, No. 19-cv-484 (RDM), 2020 WL 5653599, at *4 (D.D.C. Sept. 23, 2020) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). Thus, an "agency may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005) (citing *Envtl. Def. Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978)); *see also Sears, Roebuck & Co. v. U.S. Postal Serv.*, 118 F. Supp. 3d 244, 246 (D.D.C. 2015) (similar).

Supplementation under this exception is warranted where "the documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" *Fund for Animals*, 391 F. Supp. 2d at 198 (quoting *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986)).

**ARGUMENT**

The Court should grant Plaintiffs' motion for leave to supplement the administrative record with the Wolf Memo.

First, Plaintiffs plainly meet the requirement that the Wolf Memo was "known to the agency at the time it made its decision." *Fund for Animals*, 391 F. Supp. 2d at 198. While the memo is undated, it is clear that it was issued before the Guatemala Designation. Moreover, the memo is explicitly addressed to the Secretary, and "w[as] created by the agency itself." *Id.*; *see also Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008) (holding that agency "knew about the documents" because they were "created by [the] agency itself"); *Pub. Citizen*, 653 F. Supp. at 1237 (holding that "internal [HHS] memoranda" "prepared by various agency and departmental health officials . . . were known to HHS at the time of their decisionmaking").

Second, the Wolf Memo clearly satisfies the requirement that the supplemental document "is directly related to the [agency] decision" in question. *Fund for Animals*, 391 F. Supp. 2d at 198. A central issue in this case is whether Guatemala provides asylum seekers full and fair access to protection. By statute, an asylum seeker can only be removed to apply for protection elsewhere if the destination is a "[s]afe third country" where, inter alia, "the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection." 8 U.S.C. § 1158(a)(2)(A). The DHS Guatemala Designation purported to assess whether "Guatemala . . . satisfie[s] [this statutory] requirement." DHSFF1282. The Wolf Memo's finding that Guatemala, like most Central American countries, "ha[s] not . . . created [a] functioning asylum system[] to provide protection to refugees fleeing neighboring countries," Ex. A at 2, bears directly on that question. *See, e.g.*, *Fund for Animals*, 391 F. Supp. 2d at 198 (holding that documents that, inter alia, "describe[d] the impact" of hunting on wildlife refuges

7

were "directly relevant to the promulgation of rules opening refuges to hunting"); *see also Kent Cty.*, 963 F.2d at 396 ("The documents relate to the position of the agency's own experts on the question central to this case. To deny their relevance would be inconsistent with rational decisionmaking by an administrative agency.").

Third, the Wolf Memo "contain[s] information adverse to the agency's decision" in the DHS Guatemala Designation. *See Fund for Animals*, 391 F. Supp. 2d at 198. In *Fund for Animals*, this third requirement was met where the plaintiffs challenged several "agency rules creating or expanding recreational hunting opportunities at numerous National Wildlife Refuges," and the supplemental "documents suggest[ed] that increased hunting could have negative system-wide effects" on the refuges. *Id.* at 194, 198. In *Public Citizen*, this element was met where the agency "refus[ed] to promulgate rules banning the interstate sale of raw milk," 653 F. Supp. at 1238, and the supplemental documents showed that the relevant agency components had earlier "found all types of raw milk unsafe for human consumption and recommended that it be banned." *Id.* at 1237; *see also id.* ("For an agency to say one thing—that all raw milk is a known public health risk, and do another—refuse to ban all types of raw milk, is the essence of arbitrary action.") (citing *New England Coal. on Nuclear Pollution v. Nuclear Regulatory Comm'n*, 727 F.2d 1127 (D.C. Cir. 1984)).

As with the excluded information in those cases, the Wolf Memo's unambiguous finding that Guatemala lacks a "functioning asylum system[] to provide protection to refugees," Ex. A at 2, is clearly adverse to the relevant decision because it appears to directly contradict the agency's subsequent conclusion that Guatemala "has a robust protection system in place" that provides "[a]pplicants for protection . . . a meaningful opportunity to make [their] protection claim[s] . . . and safely remain in Guatemala until their protection claim[s] [are] heard." *See* DHSFF 1282-83.

Accordingly, the directly relevant information in the Wolf Memo appears adverse to the conclusion reached in the DHS Guatemala Designation and supplementation of the administrative record is warranted.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Supplement the Administrative Record with the Wolf Memo.

Dated: December 8, 2020                               Respectfully submitted,

                                                      /s/ Katrina Eiland
Keren Zwick (D.D.C. Bar. No. IL0055)                  Katrina Eiland*
Gianna Borroto**                                      Julie Veroff*
Ruben Loyo**                                          Morgan Russell*
Mark Fleming**                                        Stephen Kang*
Charles G. Roth**                                     American Civil Liberties Union Foundation
National Immigrant Justice Center                     Immigrants' Rights Project
224 S. Michigan Avenue, Suite 600                     39 Drumm Street
Chicago, IL 60604                                     San Francisco, CA 94111
(312) 660-1370                                        (415) 343-0770

Arthur B. Spitzer (D.C. Bar No. 235960)               Omar Jadwat*
Scott Michelman (D.C. Bar No. 1006945)                Lee Gelernt*
American Civil Liberties Union Foundation of          Noor Zafar***
the District of Columbia                              Ming Cheung***

---

[5] Plaintiffs' February 2020 "represent[ation] that they w[ould] consider the administrative records produced to be complete" for purposes of summary judgment briefing, *see* Joint Status Report, ECF No. 35, at 2, does not apply to this motion. Plaintiffs did not know the Wolf Memo existed when they agreed to take that position. DHS only released the Wolf Memo when forced to do so by a court order. That October 19, 2020 order postdates by eight months the joint status report in this case, which was explicitly "based on Defendants' representation" that the administrative record was complete. *See id.* In any event, Plaintiffs move for supplementation of the administrative record, rather than completion. While completion requires showing that a document was "considered by the agency" or "influenced the agency in its decisionmaking," supplementation requires no such showing if an established "exception to the record rule applies." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 9 (D.D.C. 2018) (citing and quoting *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78-89 (D.D.C. 2018)). As demonstrated above, Plaintiffs have established such an exception.

915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Blaine Bookey*
Annie Daher*
Sayoni Maitra*
Karen Musalo*
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877

American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Hardy Vieux (D.C. Bar No. 474762)
Patricia Stottlemyer (D.C. Bar No. 888252536)
Human Rights First
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 547-5692

*Attorneys for Plaintiffs*
*\* Admitted Pro Hac Vice*
*\*\*Admitted Pro Bono*
*\*\*\* Pro Hac Vice Forthcoming*