UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.T., *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) No. 1:20-cv-00116 (EGS) |
| v. | ) |
| WILLIAM BARR, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Defendants' opposition provides no reason why Plaintiffs' proposed First Amended Complaint should not be permitted under Rule 15's lenient standard. Defendants stress that months have passed since Plaintiffs filed their original complaint, but they have not shown that the delay is undue or that they would suffer any prejudice if the amendment were allowed. Instead, Defendants primarily object on the ground that in their view the filing deadline in 8 U.S.C. § 1252(e)(3)(B) bars the new claims. But where, as here, plaintiffs timely challenge the relevant expedited removal policies, those *same* plaintiffs amending their complaint to add new *claims* does not violate the statutory bar on bringing new *actions* after 60 days.

**I.      The Proposed Amendment Is Appropriate Under Rule 15's Lenient Standard.**

The Court should allow the proposed amendment under Rule 15(a)(2), which provides that courts should "freely give leave" where justice requires. Although a court may deny leave under certain circumstances, none of those is present here. *See* Pl.'s Br. ("Br."), ECF No. 113-1, at 7-10. Defendants emphasize that ten months have passed since Plaintiffs filed this action, but Defendants do not cite a single case where the mere passage of time was sufficient to deny a motion for leave. *See* Defs.' Opp'n. ("Opp."), ECF No. 114, at 1. Nor do Defendants contest that

1

they must establish prejudice to overcome the rule that amendment is liberally permitted. *Id.* Although Defendants note that the parties have briefed summary judgment motions, *see id.*, they do not explain why that fact justifies denying leave to amend. Those motions remain pending. The Court can allow for supplemental briefs on the new claims, as Judge Moss recently directed under similar circumstances. *See* Min. Order, *Nw. Immigrant Rights Project v. USCIS*, No. 19-cv-3283-RDM (D.D.C. Aug. 29, 2020).

## II. Because Plaintiffs Timely Filed This Action Challenging the Rule and DHS Guatemala Designation, § 1252(e)(3)(B) Does Not Bar Addition of the Proposed Claims.

Plaintiffs timely filed an action under 8 U.S.C. § 1252(e)(3), challenging several new written expedited removal policies, including the November 2019 Rule and Department of Homeland Security ("DHS") Guatemala Designation. The proposed amendment of Plaintiffs' legal theories does not violate § 1252(e)(3)(B)'s bar on a plaintiff bringing a new "action" after 60 days. Indeed, § 1252(e)(3)(A) provides that "[j]udicial review of determinations under section 1225(b) and its implementation is available in *an action* instituted" in this Court—precisely what Plaintiffs timely filed. 8 U.S. C. § 1252(e)(3)(A) (emphasis added). *See* Br. 19-20. As Plaintiffs previously explained, the distinction between an action, or lawsuit, and a specific claim runs throughout federal law generally, Br. 19 (citing Fed. R. Civ. P. 2 & 3), and throughout § 1252 specifically, Br. 20. Section 1252(e)(3)(B) thus does not bar the addition of new claims to a timely filed action.

Defendants incorrectly assert that *American Immigration Lawyers Ass'n v. Reno* ("*AILA I*"), 18 F. Supp. 2d 38, 46-47 (D.D.C. 1998), holds that § 1252(e)(3) requires all *claims* to be finalized within the 60-day window. Opp. 5-7. In *AILA I*, this Court rejected an attempt by *new plaintiffs* to sue after 60 days to cure a jurisdictional defect in the original complaint. 18 F. Supp. 2d at 46-47. *AILA I* initially involved three consolidated lawsuits by immigration organizations

and individual visa holders to challenge policies enacted to implement expedited removal. 18 F. Supp. 2d at 41, 44-45. The Court eventually held that the organizational plaintiffs lacked standing and that the visa holder plaintiffs had standing to challenge the policy only "as it relates to them as visa holders." *Id*. at 47, 52. In light of the possibility of such a ruling, new individual plaintiffs with different immigration statuses attempted to join the suit after the 60-day deadline elapsed to challenge the policies as applied to noncitizens *other* than visa holders, like asylum seekers. *See id.* at 45-46, 47. The Court rejected as untimely this attempt by new parties with different immigration statuses to fill the jurisdictional gap—the lack of a party with standing to challenge provisions other than those governing visa holders. *Id*. at 46-47.

Notably, this Court's holding was consistent with broader principles, which treat as new "actions" similar attempts by strangers to an original suit to intervene to fill a jurisdictional gap in that suit. For example, the Supreme Court has treated adding new parties to assert jurisdiction over claims that the original plaintiffs lacked standing to assert as equivalent to initiating a new action. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2462 (2018) (motion to intervene in jurisdictionally defective suit was "essentially . . . the operative complaint in a new lawsuit"). Circuit courts have likewise held that a court has discretion to allow intervention in a jurisdictionally defective suit by treating the "pleading of an intervener as a separate action." *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965); *see also Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc*., 675 F.3d 149, 161 (2d Cir. 2012); *Benavidez v. Eu*, 34 F.3d 825, 830 (9th Cir. 1994); *Miller & Miller Auctioneers, Inc. v. G.W. Murphy Indus., Inc*., 472 F.2d 893, 895 (10th Cir. 1973).

Here, no new time-barred plaintiffs, previously uninvolved in the litigation, seek to join the action to establish a basis for jurisdiction that the original plaintiffs lacked; Plaintiffs simply

assert new legal theories as to unlawfulness of the same November 2019 Rule and DHS Guatemala Designation that they challenged in their timely action. *Cf. United States v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1172 (9th Cir. 2018) (holding that newly asserted counterclaims between original parties to litigation were not a "new action" for claim preclusion purposes). The proposed amended claims are therefore part of the same original action, which was filed within the 60-day deadline.

Defendants cite various cases brought under § 1252(e)(3), but not one of those cases holds that the 60-day filing deadline precludes plaintiffs who timely filed from adding additional grounds to invalidate the same written policies they have always challenged in their action. *See* Opp. 3, 6. Those cases dismissed claims as untimely under § 1252(e)(3)(B) either because the *initial* lawsuits were filed after the 60-day deadline, *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 220 (D.D.C. 2020), *appeal filed*, No. 20-5106 (D.C. Cir. Apr. 28, 2020); *Vijender v. Wolf*, No. 19-CV-3337 (APM), 2020 WL 1935556, at *1 (D.D.C. Apr. 22, 2020); *Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015), or because, as in *AILA*, new *plaintiffs* attempted to challenge the policies after the deadline, *M.M.V.*, 456 F. Supp. 3d at 220.

Defendants unpersuasively attempt to read the term "action" in § 1252(e)(3) as synonymous with "claim" by citing a series of differently constructed statutes governing the time period in which *specific statutory claims* can be brought. Opp. 6-7. Although these statutes of limitations contain the word "action," that is where their similarity to § 1252(e)(3) ends. In each statute, there is additional language limiting the time for filing a specific claim. *See* Opp. 6 (citing 15 U.S.C. § 15b (governing filing limit on "[a]ny action to enforce any cause of action under section 15, 15a, or 15c [antitrust claims]") and 42 U.S.C. § 2000e-16(c) (governing time to file a "civil action as provided in section 2000e-5 [enforcement provisions for listed unlawful

4

employment practices claims]")).[1] In other words, because those statutes place a time limit for asserting a particular claim, it makes sense that the limit applies regardless of whether that untimely claim is asserted in a new suit or an existing suit. By contrast, § 1252(e)(3) does not say anything about when a particular *claim* must be asserted, only when the overall *action* must be filed. 8 U.S.C. § 1252(e)(3)(A)(i)-(ii) (providing for an "action" challenging the lawfulness of new expedited removal policies); 8 U.S.C. § 1252(e)(3)(B) (providing that such "action" must be brought within 60 days of the policy's implementation).

*Wiren v. Paramount Pictures*, 206 F.2d 465 (D.C. Cir. 1953), is inapposite for essentially the same reason. The statute of limitations period at issue there was likewise pegged to the accrual of a specific claim—fraud. *See id.* at 467 (citing D.C. Code § 12-201 (1951) (establishing three-year limitations period for all claims not specified to have different limitations period)). Although, like the other provisions Defendants cite, that statute used the word "action," the context makes plain that the limitations period was tied to assertion of that particular claim—i.e., cause of action. *See Perry v. Scholar*, 696 F. Supp. 2d 91, 96 (D.D.C. 2010) (interpreting subsequent version of statute containing the same relevant phrasing to provide that "a *cause of action* can be brought within the given time period from when 'the time the right to maintain the action accrues.'") (emphasis added). Again, § 1252(e)(3) is tied to filing an action challenging the implementation of a policy, not the assertion of any particular claim.

If anything, Defendants' various statutes and cases just underscore that context matters in interpreting statutory deadlines. And as previously explained, unlike the statutes on which

---

[1] *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008), and *Jones v. Bernanke*, 557 F.3d 670, 675 (D.C. Cir. 2009), simply hold that these claim-specific statutes of limitations found in 15 U.S.C. § 15b and 42 U.S.C. § 2000e-16(c), respectively, preclude a plaintiff from adding that particular claim type to an action after the deadline elapses, unless it relates back to the original complaint.

Defendants rely, § 1252 uses the terms "claim" and "action" *separately* and in some instances, disjunctively. *See* Br. 20; *see also* 8 U.S.C. § 1252(b)(5), (b)(7)(B) (addressing nationality "claims"); 1252(f)(1) (limitation on judicial review that applies regardless of "nature of the action or claim"); 1252(g) (barring review of any "type of cause or claim"). "[T]he use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 120 (D.D.C. 2017) (citation omitted); *see also Loughrin v. United States*, 573 U.S. 351, 357 (2014) (the word "or" is customarily "disjunctive, that is, the words it connects are to be given separate meanings") (internal quotation marks omitted). Whatever may be true in other statutes, the distinct usage of "claim" and "action" in § 1252 forecloses Defendants' attempt to read those words to mean the same thing in the § 1252(e)(3) context.

Unable to ground its reading in the statute's text, Defendants fall back on an appeal to the congressional goal of expediting these challenges. But its grave warnings that allowing post-deadline claim amendment would lead to unending delay are exaggerated. Opp. 6. Congress provided for the ordinary Federal Rules of Civil Procedure to govern § 1252(e)(3) challenges, with the irrelevant exception of Rule 23's class action procedures as provided in § 1252(e)(1)(B). And these rules give judges ample tools to manage the course of litigation to prevent bad faith conduct or successive amendments that would unduly delay a case or prejudice the government, including through case management deadlines and discretion to deny leave to amend where inappropriate. To be sure, Congress generally instructed courts to expeditiously resolve challenges to expedited removal policies. *See* 8 U.S.C. § 1252(e)(3)(D). But that only undercuts Defendants' argument to read an inflexible rule into the statute: By giving only a general direction, Congress wisely left the details of such case management to the sound discretion of the

courts, which of course know how to manage their dockets and expedite litigation when appropriate.

Moreover, any interest Congress expressed in prompt resolution of § 1252(e)(3) actions was balanced against Congress's clear intent to ensure that the legality of the expedited removal system could be fairly tested in court—which was, after all, the purpose of enacting this systemic review scheme. That countervailing goal would be frustrated by Defendants' wooden rule against adding any new claims. Under Defendants' interpretation, plaintiffs subjected to an illegal expedited removal policy on the 59th day after the policy was implemented, and forced to hastily file a skeletal complaint challenging the policy before the deadline, would be forever barred from amending their legal theories—even a day after the deadline elapsed, and even if further inquiry revealed additional grounds for challenging the policy. That rule is particularly illogical and inconsistent with the balance Congress struck in the context of existing plaintiffs amending in new legal claims. As here, there is a limited universe of claims any such plaintiff could add during the course of litigation. Flexibility in permitting some such amendments will minimally impact the goal of expediting litigation, but greatly contribute to the countervailing goal of fairly and fully assessing the lawfulness of expedited removal policies.

That Defendants ignore the vital role Congress envisioned for § 1252(e)(3) as a check on unlawful expedited removal policies is nothing new. Indeed, the government has repeatedly offered cramped, inflexible interpretations of § 1252(e)(3) in recent cases, invoking the same congressional interest in speed and limited review and ignoring contrary interests advanced by the statute. But those narrow interpretations have been rejected across the board by the Circuit, which has repeatedly emphasized that the section must be read generously in light of the

presumption in favor of review. *See Grace v. Barr*, 965 F.3d 883, 896 (D.C. Cir. 2020); *Make the Rd. New York v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020).

Finally, Defendants argue that § 1252(e)(3)(B)'s action filing deadline is "jurisdictional" and, therefore, Plaintiffs' cannot rely on the "relation back" doctrine, Opp. 4, or equitable tolling, Opp. 8-10. These contentions are irrelevant here. Regardless of whether the statute is deemed "jurisdictional,"[2] its plain terms do not place limitations on when additional claims may be raised by plaintiffs who have met the requirements of § 1252(e)(3). Thus, Plaintiffs need not rely on such equitable doctrines that might excuse an untimely action filing.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs leave to file a First Amended Complaint.

Dated: December 11, 2020

Keren Zwick (D.D.C. Bar. No. IL0055)
Gianna Borroto***
Ruben Loyo***
Mark Fleming***
Charles G. Roth***
National Immigrant Justice Center
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
(312) 660-1370

Respectfully submitted,

 */s/ Katrina Eiland*
Katrina Eiland*
Julie Veroff*
Morgan Russell*
Stephen B. Kang*
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

---

[2] Plaintiffs recognize that this Court previously indicated in *AILA I*, 18 F. Supp. 2d at 47, that the filing deadline is jurisdictional, but *AILA* predates the Supreme Court's decisions requiring a clear statement from Congress for jurisdictional rules. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)) (absent a "clear statement," courts "'should treat the [limitations rule] as nonjurisdictional'"). The D.C. Circuit is currently considering this question in *M.M.V. v. Barr*, No. 20-5106 (D.C. Cir. 2020). As noted, however, the question is not material here because Plaintiffs' action under § 1252(e)(3) was timely filed within 60 days of the policies' implementation.

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Blaine Bookey*
Annie Daher*
Sayoni Maitra*
Karen Musalo*
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877

Omar Jadwat*
Lee Gelernt*
Noor Zafar**
Ming Cheung**
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Hardy Vieux (D.C. Bar No. 474762)
Patricia Stottlemyer (D.C. Bar No. 888252536)
Human Rights First
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 547-5692

*Attorneys for Plaintiffs*
*\* Admitted Pro Hac Vice*
*\*\* Pro hac Vice Forthcoming*
*\*\*\*Admitted Pro Bono*