## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.T., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WILLIAM BARR, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 1:20-cv-00116-EGS |

## **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.    Plaintiffs' motion is untimely. ............................................................................................. 1

    II.    Plaintiffs cannot meet the standard required to supplement an administrative record. ...... 3

CONCLUSION ................................................................................................................................ 7

## **TABLE OF AUTHORITIES**

### **Cases**

*Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*,
 663 F.3d 476 (D.C. Cir. 2011) ............................................................................. 3, 7

*Am. Wildlands v. Kempthorne*,
 530 F.3d 991 (D.C. Cir. 2008) .................................................................................. 3

*Children's Hosp. Ass'n of Tex. v. Azar*,
 300 F. Supp. 3d 190 (D.D.C. 2018) .......................................................................... 4

*Commercial Drapery Contractors v. United States*,
 133 F.3d 1 (D.C. Cir. 1998) .................................................................................. 4, 6

*Dep't of Commerce v. New York*,
 139 S. Ct. 2551 (2019) .......................................................................................... 3, 5

*Fla. Power & Light Co. v. Lorion*,
 470 U.S. 729 (1985) .......................................................................................... 3, 5, 6

*Fund for Animals v. Williams*,
 245 F. Supp. 2d 49 (D.D.C. 2003) ............................................................................ 4

*Fund for Animals v. Williams*,
 391 F. Supp. 2d 191 (D.D.C. 2005) .......................................................................... 3

*Oceana, Inc. v. Ross*,
 920 F.3d 855 (D.C. Cir. 2019) ......................................................................... 3, 4, 5

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*,
 789 F.2d 26 (D.C. Cir. 1986) .................................................................................... 5

**INTRODUCTION**

Plaintiffs move to supplement the administrative record with an undated, unsigned memorandum addressing a government program that is not at issue in this case. Plaintiffs' request is both untimely and falls well short of the standard required to add evidence to the administrative record. For the reasons that follow, the Court should deny the motion.

**ARGUMENT**

**I.    Plaintiffs' motion is untimely.**

On January 27, 2020, the Court set a deadline of February 13, 2020, for Defendants to produce the Administrative Record and also set out deadlines and a process for the parties "to resolve any disputes concerning the Administrative Record." Minute Order (Jan. 27, 2020). That order was based in part on the parties' joint proposal for resolving such disputes in their joint statement on scheduling. ECF No. 19 at 1. Based on the parties' agreement, the Court ordered that "(1) Plaintiffs shall lodge any written objections to the Administrative Record to Defendants by no later than February 19, 2020; (2) the parties shall meet and confer to attempt to resolve any dispute by no later than February 20, 2020; and (3) if any disputes exist and remain unresolved, the parties shall file a joint status report by no later than February 24, 2020, concerning how to proceed, including what disputes remain, what briefing may be necessary to resolve those disputes, a schedule for that briefing, and the parties' positions on whether the dispute necessitates resolving the record disputes before merits briefing occurs." Minute Order (Jan. 27, 2020).

Following that order, Defendants produced five separate certified administrative records. ECF No. 35 at 1. The parties then conferred about Plaintiffs' questions about the administrative records on February 20, 21, 22, and 24, and on February 24, 2020, submitted the Joint Status Report ordered by the Court. ECF No. 35 at 2. In that status report Plaintiffs stated that, apart from one document—not the document at issue in this motion—"Plaintiffs represent that they will

1

consider the administrative records produced to be complete, based on Defendants' representation that these records include all materials that were before the relevant decision-maker, either directly or indirectly, at the time the relevant decisions were made." *Id*. Accordingly, any attempt to add additional documents to the record in this case is untimely.

Plaintiffs argue that they are seeking to supplement rather than complete the record, and that a motion to supplement the record does not require them to show "that a document was considered by the agency or influenced the agency in its decisionmaking." Mot. at 9, n.5 (quotation marks omitted). However, the parties' agreement on how to resolve disputes regarding the administrative record was not limited to disputes about its completeness, but extended to disputes about evidence outside of the administrative record. The parties' February 24 Joint Status Report also addressed how the parties would address any disputes related to "extra-record evidence" and stated that "[t]he parties have agreed on the following process for raising these record issues before the Court." ECF No. 35 at 2-3. Under that agreed process, Plaintiffs would include any extra-record evidence they believed relevant in their motion for summary judgment, Defendants would move to strike that evidence at the same time Defendants filed their cross motion for summary judgment and opposition on March 25, 2020, and Plaintiffs would file an opposition to the motion to strike by April 10, so "that any disagreements [could] be resolved by the Court alongside the existing schedule for summary judgment briefing." ECF No. 35 at 2. In a minute order dated February 25, 2020, "the Court adopt[ed] the parties' proposal to resolve the narrow dispute regarding whether it is appropriate for Plaintiffs to cite extra-record evidence," and adopted the deadlines set out above. Minute Order (Feb. 25, 2020).

Plaintiffs had ample time to meet and confer on the administrative records after they were produced and to raise any questions they might have on the record to Defendants. Rather than

challenge or move to supplement the administrative records on the timeline agreed to by the parties and ordered by the Court, Plaintiffs agreed that the records were complete for purposes of resolving the merits of Plaintiffs' claims. After agreeing that the records were complete and adequate for that purpose, Plaintiffs should be estopped from now attempting to supplement the records, contrary to the parties' settled expectations and the Court's order setting a date certain for resolving any record disputes.

### II. Plaintiffs cannot meet the standard required to supplement an administrative record.

The "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity," *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019), and "[a] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). Plaintiffs have not made the strong showing necessary to depart from the rule that, under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) ("We do not allow parties to supplement the record "unless they can demonstrate unusual circumstances justifying a departure from this general rule.").

A party may not supplement the record absent "a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record," *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011), and may not rely on extra-record materials absent a showing of "bad faith or improper behavior on the part of the agency, or that, 'the record is so bare that it prevents effective judicial review.'" *Fund for Animals v. Williams*, 391 F. Supp.

3

2d 191, 198 (D.D.C. 2005) (citing *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998), & *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 58 (D.D.C. 2003)); *see also Oceana, Inc.*, 920 F.3d at 865 ("[O]n arbitrary and capricious review, absent a showing of bad faith or improper behavior, agency deliberations not part of the record are deemed immaterial." (punctuation and quotation omitted)); *Children's Hosp. Ass'n of Tex. v. Azar*, 300 F. Supp. 3d 190, 202 (D.D.C. 2018) (extra-record material not properly part of record-review case absent showing of "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review"). Plaintiffs have not shown any bad faith here or identified any deficiencies with the nearly 1,300-page record for DHS's "full and fair determination."

  Plaintiffs argue that supplementation of the record is proper if the agency deliberately or negligently excluded documents that may have been adverse to its decision. Mot. at 6. But they make no argument that the agency deliberately or negligently excluded this memorandum from the record. Plaintiffs maintain that the memorandum is relevant to DHS's October 2019 determination that Guatemala has full-and-fair procedures for determining asylum and protection claims. Mot. at 1. They acknowledge, however, that the memorandum they seek to add to the record was issued by Chad Wolf, while the "full and fair determination" was made by Acting Secretary McAleenan. Mot. at 1-2. There is no indication that this memorandum was before Acting Secretary McAleenan at the time the Guatemala "full and fair determination" was made. Plaintiffs also concede that the memorandum is not dated, mot. at 7, and merely speculate about when it may have been written. The memorandum is also unsigned, indicating that it may not have been

4

finalized (a possible also explanation for why it is also undated).[1] There is no basis to conclude that this memorandum was before or reached the relevant agency decision maker at the time of the Guatemala "full and fair determination."

Plaintiffs next argue that the memorandum was prepared by a DHS official, so it was known to the agency. Mot. at 7. Again, this does not mean that it reached or was known to the relevant agency decision maker or that it was final. And ruling that any document created by any official within a large agency such as DHS may be properly added to an administrative record on that basis alone would directly contradict the D.C. circuit's repeated rulings that an agency decision should be judged based on the administrative record the agency produces, and the designation of the record is entitled to a presumption of regularity absent a strong showing of bad faith or other gross procedural irregularities. *Oceana*, 920 F.3d at 865; *Dep't of Commerce*, 139 S. Ct. at 2573; *Fla. Power & Light Co.*, 470 U.S. at 743-44

Plaintiffs next argue that the memorandum "is directly related to the agency decision in question." Mot. at 7 (quotations and brackets omitted). This is also incorrect. The memorandum, as is clear from the title, addresses the "Migrant Protection Protocols," and it sets out as its "[p]urpose" to contextualize "implementation of the Migrant Protection Protocols." ECF No. 115-2 at 1. This case does not involve a challenge to the Migrant Protection Protocols. And there is no mention of the Guatemala asylum cooperative agreement or "full and fair determination" in this memorandum. A memorandum that addresses an entirely different process and does not mention or address the agency decisions at issue in this case is plainly not "directly related to the agency

---

[1] If, as it appears, the memorandum is pre-decisional and not final, that is yet another reason the memorandum cannot properly be added to the record in this case. Deliberative materials are not part of an agency's administrative record. *See, e.g.*, *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (en banc); *Oceana*, 920 F.3d at 855.

decision in question," as Plaintiffs argue. Plaintiffs maintain that the memorandum is relevant to the Guatemala designation because it mentions "Central American countries" generally and a "regional approach to migration management." Mot. at 4. But it cannot be correct that every document in DHS's possession that mentions Central America or Guatemala must be considered when making any agency decision with respect to that country, and included in or added to the agency record as a result.

Finally, Plaintiffs argue that the memorandum contains information adverse to the agency decision because it contains a "finding that Guatemala lacks a functioning asylum system," mot. at 8 (quotation marks omitted), and "nothing in the Designation suggests that it was based on considerations that changed after the Wolf Memo was prepared," *id*. at 5. This is incorrect in several respects. First, again, the memo is undated and so Plaintiffs' speculation that the memorandum captures the circumstances at the time of the "full and fair determination" lacks any basis. Second, as the government previously noted in its cross motion for summary judgment, the record reflects that DHS not only undertook a thorough investigation of Guatemala's process for handling asylum and other protection claims, but also engaged in a concerted effort to build the capacity of Guatemala to process fear claims before the "full and fair determination." DOJFF20.

DHS "worked closely with the Guatemalan Ministry of Security, Ministry of Foreign Affairs, and Guatemalan migration, asylum and law enforcement authorities in a capacity-building role to prepare for the implementation of the Asylum Cooperative Agreement." *Id*. Over a five-month period, senior DHS officials, including the Acting Secretary, "visited Guatemala multiple times and hosted bilateral discussions with Guatemalan officials to examine that country's capacity for processing asylum and other refugee protection claims," and DHS and the State Department "verif[ied] the nature and capacity of Guatemala's procedures." DOJFF20; *see id.* at 21-23 (setting

out timeline of extensive meetings, communications, and negotiations with Guatemalan officials, many involving the Acting Secretary directly). The existing administrative record forecloses Plaintiffs' arguments that DHS ignored adverse evidence about the circumstances in Guatemala before issuing the "full and fair determination" and that nothing changed in Guatemala in the lead up to that determination. In fact, the record shows that DHS provided "planning, support, technical expertise, and logistical assistance to Guatemalan immigration and law enforcement authorities to implement the agreement in a phased manner"; established "a robust footprint of personnel supporting operations (over 45 personnel) in Guatemala both on permanent and temporary basis to assure successful implementation," including personnel from U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border protection; and, secured commitments from the Government of Guatemala that it would "commit all necessary personnel" and expand its "cooperation with international organizations, like [UNHCR] and IOM, who recently received $47 million dollars in U.S. foreign assistance funding to increase asylum capacity in Guatemala." DOJFF20.

Plaintiffs have accordingly not made the substantial showing of bad faith or an incomplete record necessary to justify supplementing the record. *Air Transp. Ass'n of Am.*, 663 F.3d at 487-88.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Supplement the Administrative Record.

Dated: December 22, 2020    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Brian C. Ward*
BRIAN C. WARD
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-9121
Email: brian.c.ward@usdoj.gov

*Counsel for Defendants*