UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.T., *et al.*,<br>          Plaintiffs,<br><br>          *v.*<br><br>PAMELA BONDI, Attorney General of the<br>United States, in her official capacity, *et al.*,<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:20-cv-116-EGS<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD........................................................................................................ 4

ARGUMENT .................................................................................................................... 5

    I.    Plaintiffs' new claims challenging the Belize and Liberia ACAs are futile at the threshold. They are jurisdictionally barred, Plaintiffs lack standing to challenge them, and Plaintiffs' new procedural due process claim is not cognizable. .......................................................................................................... 5

        A.    Plaintiffs are jurisdictionally barred from challenging the Belize and Liberia ACAs. ............................................................................... 5

        B.    Plaintiffs lack standing to challenge the Belize and Liberia ACAs. ........... 7

        C.    Plaintiffs' procedural due process claim is not cognizable........................ 8

    II.    Further amendment is not in the interest of justice because Plaintiffs' proposed SAC is unduly delayed and prejudices Defendants. ............................. 12

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atchinson v. Dist. of Columbia,*
    73 F.3d 418 (D.C. Cir. 1996) ................................................................... 4

*Atherton v. Dist. of Columbia Office of Mayor,*
    567 F.3d 672 (D.C. Cir. 2009) ................................................................. 8

*Bode & Grenier, LLP v. Knight,*
    808 F.3d 852 (D.C. Cir. 2015) ............................................................... 13

*Bourdon v. DHS,*
    940 F.3d 537 (11th Cir. 2019) ................................................................. 5

*Church Joint Venture, L.P. v. Blasingame,*
    947 F.3d 925 (6th Cir. 2020) ................................................................. 12

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ................................................................................. 7

*Daugherty v. Sheer,*
    No. 22-5103, 2023 WL 6380539 (D.C. Cir. Oct. 2, 2023) ......... 12, 13, 14

*Doe ex rel. Fein v. Dist. of Columbia,*
    93 F.3d 861 (D.C. Cir. 1996) ................................................................. 8

*Doe v. McMillan,*
    566 F.2d 713 (D.C. Cir. 1977) ............................................................... 4

*Elkins v. Dist. of Columbia,*
    690 F.3d 554 (D.C. Cir. 2012) ......................................................... 12, 13

*English v. Dist. of Columbia,*
    717 F.3d 968 (D.C. Cir. 2013) ............................................................... 8

*Foman v. Davis,*
    371 U.S. 178 (1962) ................................................................................. 4

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................ 7

*Harrison v. Rubin,*
    174 F.3d 249 (D.C. Cir. 1999) ............................................................. 13

*Hecht v. Ludwig,*
  82 F.3d 1085 (D.C. Cir. 1996) ............................................................... 4

*J.E.F.M. v. Lynch,*
  837 F.3d 1026 (9th Cir. 2016) ............................................................... 6

*Jimenez-Mora v. Ashcroft,*
  86 F. App'x 527 (3d Cir. 2004) ............................................................. 5

*Lewis v. Casey,*
  518 U.S. 343 (1996) ............................................................................. 7

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................. 7

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ............................................................................. 8

*Matter of C-I-G-M- & L-V-S-G-,*
  29 I & N Dec. 291 (BIA 2025) ............................................................. 9

*Moldea v. N.Y. Times Co.,*
  22 F.3d 310 (D.C. Cir. 1994) ............................................................... 4

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ........................................................................ 8, 11

*Olin v. Wakinekona,*
  461 U.S. 238 (1983) ........................................................................... 12

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ......................................................................... 7

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.,*
  980 F.3d 109 (D.C. Cir. 2020) ............................................................. 8

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................. 8

**Statutes**

8 U.S.C. § 1158(a)(2)(A) ........................................................... passim

8 U.S.C. § 1158(a)(3) ......................................................................... 5, 11

8 U.S.C. § 1229a ................................................................................... 14

8 U.S.C. § 1252(a)(5) ............................................................................................... 9

8 U.S.C. § 1252(b)(9) ........................................................................................... 6, 10

8 U.S.C. § 1252(e)(3) ............................................................................................... 6

8 U.S.C. § 1252(f)(1) ............................................................................................... 5

8 U.S.C. §§ 1225 ...................................................................................................... 5

**Rules**

Fed. R. Civ. P. 15(a)(2) ............................................................................................ 4

**Regulations**

8 C.F.R. § 1003.38(a) ............................................................................................. 10

8 C.F.R. § 1003.1(b) ................................................................................................ 9

**Other Authorities**

*Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the
Immigration and Nationality Act*,
84 Fed. Reg. 63,944 (Nov. 19, 2019) ...................................................................... 1

**INTRODUCTION**

Defendants submit this response in opposition to Plaintiffs' motion for leave to file second amended complaint, ECF No. 173. Plaintiffs seek leave to add new individual Plaintiffs and new claims to challenge two new asylum cooperative agreements ("ACAs") that the U.S. government concluded with the governments of Belize and Liberia, as well as related agency guidance on implementation of these ACAs. Plaintiffs also add a procedural due process claim challenging these and other ACAs, related agency guidance, and the 2019 interim final rule[1] (the "Rule") that provides procedures for removing aliens pursuant to ACAs. The Court should deny Plaintiffs leave to file yet another amended complaint because the claims they seek to add are futile and justice does not support granting leave due to the six years that have passed since Plaintiffs first filed suit and the prejudice further amendment would cause Defendants.

Indeed, numerous jurisdictional bars preclude Plaintiffs' new claims. They also lack standing to challenge the new Belize and Liberia ACAs because no Plaintiff has been impacted by these ACAs. And Plaintiffs' due process claim is not cognizable because Plaintiffs do not identify any procedural defects in § 240 proceedings that have affected them. Nor could they, as Plaintiffs' own purported experiences demonstrate that current procedures afford them sufficient process. Moreover, Plaintiffs appear intent on restarting this now-six-year-old litigation every time a new ACA is concluded. Allowing them to do so would only prejudice Defendants who have now had to restart their defense after having briefed cross-motions for summary judgment that could have resolved this case years ago. If Plaintiffs wish to challenge every new ACA that may be concluded, the Court should require them to file new suits.

---

[1]    *See Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act*, 84 Fed. Reg. 63,944 (Nov. 19, 2019).

## **BACKGROUND**

The asylum statute in the Immigration and Nationality Act ("INA") provides that an alien is ineligible to apply for asylum in the United States if, *inter alia*, he can be removed to a safe third country. *See* 8 U.S.C. § 1158(a)(2)(A). The U.S. government implements this so-called safe-third-country bar through the conclusion of ACAs. *Id.* Before the government may implement an ACA and begin removing qualified aliens to that country, both the Attorney General and Secretary of Homeland Security must make a determination that the legal system in the ACA country provides asylum seekers access to "full and fair procedure[s] for determining a claim to asylum or equivalent temporary protection." 8 U.S.C. § 1158(a)(2)(A). Relevant government agencies typically issue guidance instructing agency personnel on the implementation of a given ACA. *See, e.g.*, ECF No. 110-6 at 996–1000 (agency guidance on the now-rescinded Guatemala ACA).

Plaintiffs brought this suit in January 2020 challenging the Rule and ACAs the U.S. government concluded with El Salvador, Guatemala, and Honduras, which the government later rescinded.[2] ECF No. 3. At that time, Plaintiffs were comprised of six individuals who were in expedited removal proceedings and removed under the Guatemala ACA and two advocacy organizations. *Id.* The allegations in the original complaint thus focused entirely on the application of the Rule and now-rescinded ACAs in expedited removal proceedings. *Id.* Defendants produced the certified administrative record, ECF No. 82-3, and the parties briefed cross-motions for summary judgment, addressing multiple threshold issues that could have resolved this case, *see* ECF Nos. 82, 83, 88, 89. The parties then placed this case in abeyance in 2021, *see* Minute Order (Mar. 15,

---

[2]     *See* U.S. State Dep't, Press Release, *Suspending and Terminating the Asylum Cooperative Agreements with the Governments of El Salvador, Guatemala, and Honduras*, available at https://2021-2025.state.gov/suspending-and-terminating-the-asylum-cooperative-agreements-with-the-governments-el-salvador-guatemala-and-honduras/ (Feb. 6, 2021) (last visited Dec. 16, 2025).

2021), during which time the original individual Plaintiffs returned to the United States to pursue asylum claims in § 240 proceedings, ECF No. 128. The Court lifted the abeyance in October 2025. Minute Order (Oct. 15, 2025).

Concurrent with the lifting of the abeyance, Plaintiffs moved for leave to file a first amended complaint ("FAC") to drop their challenges to the rescinded ACAs but maintain their challenge to the Rule and to add challenges to new ACAs the U.S. government concluded with the governments of Honduras, Uganda, Guatemala, Ecuador, and Paraguay. ECF No. 157. Plaintiffs also added four new individual Plaintiffs who are in § 240 proceedings and who the government is attempting to remove to third countries pursuant to the Honduras and Uganda ACAs. *Id.* Plaintiffs also added class action allegations, with the four new individual Plaintiffs (but not the six original individual Plaintiffs) serving as class representatives. *Id.*

The Court allowed Plaintiffs to file the FAC over Defendants' opposition. Minute Order (Oct. 15, 2025). The Court did not address Defendants' argument that they would be prejudiced if the Court allowed Plaintiffs to restart the then five-and-a-half-year-old litigation after the original Plaintiffs' claims had mooted out and the parties had briefed cross-motions for summary judgment years prior. *See id.*; *see also* ECF No. 161. The Court instead allowed Plaintiffs to file the FAC solely on the basis that they still possessed the ability to amend their complaint once as a matter of right under Rule 15(a)(1)(B). Minute Order (Oct. 15, 2025). The Court then docketed the FAC. ECF No. 166.

Before Defendants could respond to the FAC, Plaintiffs filed the instant Motion along with the proposed second amended complaint (the proposed "SAC"), ECF Nos. 173, 173-1. In the proposed SAC, Plaintiffs maintain their challenges to the Rule, the Honduras, Uganda, Guatemala, Ecuador, and Paraguay ACAs, and related agency guidance, but seek to add challenges to two new

ACAs that the U.S. government concluded with Belize and Liberia, along with related agency guidance. ECF No. 173-1. Plaintiffs also seek to add 18 new individual Plaintiffs to this case who are in § 240 proceedings. *Id.* Those individuals are subject to various ACAs, but Plaintiffs do not allege that those individuals are subject to the Belize and Liberia ACAs. *See id.* ¶¶ 19–36. Last, Plaintiffs seek to add a procedural due process claim challenging the adequacy of current procedures for removing aliens pursuant to ACAs in both expedited removal and § 240 proceedings. *See id.* ¶¶ 183–84.

Plaintiffs concurrently filed a motion to certify class, ECF No. 174, which Defendants also oppose, ECF No. 182.

## LEGAL STANDARD

While Rule 15 provides that the Court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), the "decision to grant or deny leave to amend" is ultimately left to the "discretion of the trial court," *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977). The Court may exercise its discretion and deny leave to amend for reasons "such as undue delay" and "undue prejudice to the opposing party by virtue of allowance of the amendment." *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court may also "deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994).

## ARGUMENT

I.   **Plaintiffs' new claims challenging the Belize and Liberia ACAs are futile at the threshold. They are jurisdictionally barred, Plaintiffs lack standing to challenge them, and Plaintiffs' new procedural due process claim is not cognizable.**

    A.   **Plaintiffs are jurisdictionally barred from challenging the Belize and Liberia ACAs.**

Plaintiffs' claims challenging the Belize and Liberia ACAs are barred under numerous INA provisions. *First,* 8 U.S.C. § 1252(f)(1) precludes injunctive relief. It provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1225 or 1229a]." 8 U.S.C. § 1252(f)(1). That plainly precludes Plaintiffs' prayer for the Court to enjoin Defendants' implementation of the Belize and Liberia ACAs and guidance, *see* ECF 173-1, Prayer for Relief.

*Second*, 8 U.S.C. § 1158(a)(3) provides that no court shall have jurisdiction to review Defendants' determinations that the challenged ACA countries provide asylum seekers with access to full and fair asylum procedures. *See Jimenez-Mora v. Ashcroft*, 86 F. App'x 527, 530 (3d Cir. 2004). Congress's use of the word "determinations" coupled with the judicial-review bar in § 1158(a)(3) shows that Congress also shielded from review not just the agencies' final full-and-fair "determination," but also the "method for reaching that final decision." *Bourdon v. DHS*, 940 F.3d 537, 542 (11th Cir. 2019). Thus, § 1158(a)(3) bars Plaintiffs from challenging any full-and-fair determinations that might be made as to any ACA.

*Third*, 8 U.S.C. § 1252(a)(2)(B)(ii) limits jurisdiction to review the agencies' discretionary determinations under § 1158(a)(2)(A) and their chosen means of implementing it through the challenged ACAs. Congress stated in 8 U.S.C. § 1252(a)(2)(B)(ii) that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review" "any . . . decision or action of the Attorney General or Secretary of Homeland Security the authority for

which is specified under this subchapter to be in [their discretion], other than the granting of relief under 1158(a) of this title." Here, § 1158(a)(2)(A) grants such discretion to the Attorney General or her delegee the authority to "determine[] that the alien may be removed pursuant to a bilateral or multilateral agreement," that "the alien's life or freedom would not be threatened" on account of a protected ground, and that "the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection." 8 U.S.C. § 1158(a)(2)(A). Thus, Plaintiffs' challenges to any determinations under § 1158(a)(2)(A) are further barred.

*Fourth*, 8 U.S.C. § 1252(b)(9) strips federal district courts of jurisdiction to review any "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." Aliens may only challenge actions taken in their removal proceedings—including "practices and policies challenges"—*after* they are over. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031–32 (9th Cir. 2016). Here, Plaintiffs challenge actions taken against them during their removal proceedings, but their proceedings are not over. *See* Sealed Plaintiff Declarations, ECF Nos. 158-1, 158-2, 158-4, 175-1–175-9. Section 1252(b)(9) thus bars their challenges.

*Fifth*, Plaintiffs' new claims are barred to the extent they seek to challenge the Belize and Liberia ACAs in the context of expedited removal. Section 1252(e)(3), which Plaintiffs assert jurisdiction under, ECF No. 173-1 ¶ 6, only applies to challenges to the validity of the expedited removal system, *see* 8 U.S.C. § 1252(e)(3). But each individual Plaintiff is in § 240 proceedings, not expedited removal. *See* ECF No. 173-1 ¶¶ 9–36. Thus, § 1252(e)(3) does not confer jurisdiction here.

**B.    Plaintiffs lack standing to challenge the Belize and Liberia ACAs.**

To satisfy the "'irreducible constitutional minimum' of standing" under Article III, a plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs must separately establish standing and jurisdiction for each claim they raise and each form of relief they seek. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). Plaintiffs cannot establish standing to challenge the new Belize and Liberia ACAs.

Plaintiffs fail to satisfy Article III standing's traceability and redressability prongs. Plaintiffs do not allege that any individual Plaintiff is impacted by the Belize or Liberia ACAs. *See* ECF No. 173-1 ¶¶ 19–36. So, while Plaintiffs allege that the individual Plaintiffs have experienced harm caused by some of the ACAs they challenged in the FAC, *see id.* (alleging certain Plaintiffs are subject to the Honduras, Uganda, Guatemala, and Ecuador ACAs, but not alleging that any Plaintiffs are subject to the Paraguay, Belize, or Liberia ACAs), that does not confer to them standing to challenge new ACAs that are not the source of their alleged harm, *see Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (explaining that "a plaintiff who has been subject to injurious conduct of one kind" does not "possess[] by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject"). And because the new Belize and Liberia ACAs are not the source of the individual Plaintiffs' alleged harm, any judicial order pertaining to those ACAs would not redress that harm.

The organizational Plaintiffs lack standing for the same reasons. Organizations suing on their own behalf, as organizational Plaintiffs do here, must establish standing in the same manner as an individual. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). Plaintiffs likewise do not allege that the organizational Plaintiffs have been impacted by the Belize and Liberia ACAs. *See* ECF No. 173-1 ¶¶ 146–57. Thus, the organizational Plaintiffs also fail to satisfy the traceability and redressability prongs of standing.

**C.    Plaintiffs' procedural due process claim is not cognizable.**

The fundamental requirement of the Due Process Clause is "notice and the opportunity to be heard," but "the precise requirements of procedural due process are flexible." *English v. Dist. of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). For plaintiffs who establish deprivation of a protected liberty interest, courts assess the adequacy of the challenged procedure under the *Mathews v. Eldridge* framework. *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 690 (D.C. Cir. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). To bring a procedural due process claim, a plaintiff must also "identify the process that is due." *Doe ex rel. Fein v. Dist. of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)); *see Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 120 (D.C. Cir. 2020) (explaining that a plaintiff must suggest "what plausible alternative safeguards would be constitutionally adequate"). Plaintiffs' allegations fail to state a cognizable procedural due process claim and thus this claim would not survive a motion to dismiss.

In the proposed SAC, Plaintiffs do not identify a protected liberty interest, or how existing § 240 proceedings before the government can remove an alien to a third country under an ACA are deficient. Nor could they, as aliens in § 240 proceedings are afforded sufficient notice and opportunity to be heard when the government seeks to remove them to an ACA country. *See* 84

Fed. Reg. at 63,997–98. Indeed, the Rule allows an alien who is subject to an ACA the opportunity "to establish fear of persecution in the third country to which he would be removed." *Id.* at 63,997; *see id.* at 63,998 (explaining the Rule requires that, "in those instances in which the alien affirmatively states a fear of removal to [an ACA country], whether the alien can affirmatively establish it is more likely than not that the alien would be persecuted or tortured in that country"). In practice, this opportunity arises when a DHS attorney or an IJ moves to pretermit an alien's asylum case because the alien is subject to an ACA. In response, the alien can oppose the motion and express his fear of removal to the relevant ACA country. *See* Sealed Plaintiff Declarations, ECF Nos. 158-2, 175-2, 175-3, 175-5, 175-8, 175-9; *see also Matter of C-I-G-M- & L-V-S-G-*, 29 I & N Dec. 291, 295 (BIA 2025) ("Once DHS has provided notice [of the intent to remove under an ACA], the respondent must have a reasonable opportunity to satisfy his or her burden to show by a preponderance of the evidence that the safe third country bar does not apply because he or she will more likely than not be persecuted or tortured in the relevant third [ACA] country."). If the alien's opposition is unsuccessful and the IJ orders him to be removed to an ACA country, he may appeal the decision to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 1003.1(b), 1003.38(a). And if that appeal fails, the alien may petition a court of appeals for review of the BIA's decision. 8 U.S.C. § 1252(a)(5).

Plaintiffs' purported experiences show the adequacy of these procedures. When the government moved to pretermit the asylum cases of 18 of the individual Plaintiffs (two of whom are Plaintiffs added in the FAC and the rest are Plaintiffs added in the proposed SAC), most of them state that they opposed the government's motion or had the opportunity to oppose. *See* ECF Nos. 158-2 (Plaintiff A.S.), 175-2 (Plaintiffs L.H. and Y.V.), 175-3 (Plaintiffs D.M., I.B., A.M., M.S., and M.A.), 175-5 (Plaintiffs N.S. and D.D.), 175-8 (Plaintiffs S.M. and J.M.), 175-9 (Plaintiff

J.D.). Others do not say if they opposed or will oppose the government's motion. *See* ECF Nos. 158-1 (Plaintiff J.C.), 175-6 (Plaintiff N.V.). Others were granted asylum. ECF No. 175-4 (Plaintiffs L.T. and A.T.). And some who opposed the motions say that they intend to appeal to the BIA should the IJ grant the government's motion. ECF Nos. 158-2 (Plaintiff A.S.), 175-8 (Plaintiffs S.M. and J.M.).

When the government in one case and an IJ (*sua sponte*) in another moved to pretermit or summarily deny the asylum cases of two additional individual Plaintiffs (one of whom is a Plaintiff added in the FAC and the other a Plaintiff added in the proposed SAC), those Plaintiffs claim that they were not given the opportunity to oppose the motions. *See* ECF Nos. 158-4 (Plaintiff Y.A.), 175-7 (Plaintiff M.O.). But these Plaintiffs do not put forth any allegations establishing that their purported lack of opportunity to oppose was due to inadequacy of procedures in § 240 proceedings rather than what they allege to be erroneous decisions by the respective IJs. That the IJs in these cases could have simply erred in following adequate procedures underscores why Plaintiffs' disagreement with the outcomes of their asylum cases must be channeled through the INA's administrative processes rather than federal district court. *See* 8 U.S.C. § 1252(b)(9) (providing that "review of *all* questions of law and fact" arising from removal proceedings "shall be available *only* in judicial review of a final order under this section" (emphasis added)); *supra* p. 6. In any event, Plaintiff Y.A. appealed the IJ's decision in her case. ECF No. 158-4. And while Plaintiff M.O. does not say if he will appeal the IJ's decision in his case, ECF No. 175-7, INA regulations give him the opportunity to do so, *see* 8 C.F.R. § 1003.38(a).

Plaintiffs' only contentions concerning procedures in § 240 proceedings are that the Rule does not give IJs discretion to grant public interest exceptions and IJs may order an alien removed under an ACA before adjudicating the merits of his asylum and protection claims. ECF No. 173-

1 ¶¶ 82–83. But these contentions do not overcome, much less address, the fact that current procedures provide aliens with notice that the government intends to remove them to a third country under an ACA and the opportunity to be heard before the government may do so.

Indeed, it is not relevant that IJs may order an alien removed under an ACA before adjudicating the merits of his asylum claim because a determination that the alien may be removed under an ACA means the alien is not even eligible to apply for asylum. 8 U.S.C. § 1158(a)(2)(A). Nor is it relevant that the IJ does not adjudicate the merits of an alien's other claims for protection from removal to his *home country* because removal under an ACA is removal to a *third country*. *Id.* If the alien fears removal to an ACA country, he can raise that fear to the IJ. *See* 84 Fed. Reg. at 63,997.

As for Plaintiffs' contention that an IJ's inability to grant a public interest exception violates procedural due process, ECF No. 173-1 ¶ 83, it fails for at least three reasons. *First*, Plaintiffs do not even have standing to challenge § 240 procedures on this basis because none of them allege that their purported injuries have been caused by an IJ's inability to grant a public interest exception. *See* ECF No. 173-1 ¶¶ 19–36. *Second*, an IJ's inability to grant a public interest exception is not relevant to the central procedural due process question: whether an alien has notice of the government's intent to remove them under an ACA and whether the alien has the opportunity to respond before the government may do so. *See Mullane*, 339 U.S. at 315. As discussed *supra*, current procedures satisfy that central inquiry. *Third*, it is equally irrelevant to the central procedural due process inquiry *who* has the ability to grant public interest exceptions. The Rule provides that aliens may still receive public interest exceptions, it just limits the ability to grant exceptions to DHS officers. 84 Fed. Reg. at 63,998. Plaintiffs' desire that an IJ also have the ability to grant public interest exceptions despite that issue having no bearing on the central due process inquiry

11

is essentially a desire to receive additional process on top of otherwise adequate procedures, which is not an interest the Due Process Clause protects. *See Olin v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("An expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.").

The rest of Plaintiffs' due process contentions concern procedures in expedited removal proceedings. *See* ECF 173-1 ¶¶ 72–81. But Plaintiffs do not even have standing to challenge the application of the Rule, ACAs, or related guidance in expedited removal proceedings because Plaintiffs do not allege that any individual Plaintiff is in expedited removal or imminently fears being placed in expedited removal.

## II. Further amendment is not in the interest of justice because Plaintiffs' proposed SAC is unduly delayed and prejudices Defendants.

Plaintiffs' proposed SAC is also unduly delayed. The longer the delay in seeking leave to amend, the less the opposing party has to show in terms of prejudice, and prejudice can be presumed if the delay is significant. *See, e.g.*, *Daugherty v. Sheer*, No. 22-5103, 2023 WL 6380539, at *3 (D.C. Cir. Oct. 2, 2023) (noting that the D.C. Circuit has left open the question of whether prejudice is always required and collecting Circuit cases); *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020). Delay alone is also a sufficient basis to deny leave to amend when the amendment would add new parties or claims: "Undue delay is a valid reason to reject a party's attempt to add a new theory of liability to a complaint." *Elkins v. Dist. of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012) (upholding denial of leave to amend "five years after the initial complaint" without addressing prejudice).

Here, Plaintiffs seek leave to amend—a second time—nearly six years after they filed the original complaint and over five-and-a-half years after Defendants produced the certified administrative record and the parties briefed cross-motions for summary judgment. *See* ECF Nos. 3, 38,

82, 83, 88, 89. Plaintiffs once again seek to add new and different claims from those asserted in the original complaint, which only sought to challenge the Rule and now-rescinded ACAs and related guidance in the expedited removal proceedings of the six original individual Plaintiffs. *See* ECF No. 3. The proposed new Plaintiffs and claims would challenge ACAs not in existence at the time of the original complaint and would challenge their application in an entirely different context—§ 240 proceedings. *See id.* Even more glaring, the proposed new Plaintiffs seek to represent a nationwide class that covers a group of aliens who are likewise in completely different factual circumstances from those alleged by the original individual Plaintiffs such that those original Plaintiffs would not even be part of the new proposed class because they were in expedited removal at the start of this case. *See* ECF No. 173-1 (defining the class as pertaining only to aliens in § 240 proceedings). While Plaintiffs assert that this case "is at its very beginning stages" because they filed the FAC in October 2025, Mot. at 4, they overlook that this case is now six years old.

The Court should reject this attempt "to fundamentally reshape the landscape of the litigation" at this stage in the case. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (holding court did not abuse its discretion in denying leave to amend to add new defenses "four years after litigation began" and after summary judgment). The D.C. Circuit has recognized that a showing of prejudice is not required or that it can be presumed when a plaintiff seeks to amend a complaint to add new claims and parties years into litigation. *See Elkins*, 690 F.3d at 565 (upholding denial of leave to amend "to add new theory of liability" on the basis of undue delay alone without finding prejudice); *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) (noting that "this Circuit has recognized undue delay as a basis for denying a motion to amend" without any showing of prejudice in cases "where plaintiffs sought to add new factual allegations" as opposed to merely clarifying legal theories or making technical corrections); *Daugherty*, 2023 WL

6380539, at *2–3 (addressing attempt to amend to add new allegations and parties years into the litigation and noting "[t]his court has presumed prejudice under such circumstances").

Even if some showing of prejudice were required despite Plaintiffs' lengthy delay, Defendants would be prejudiced if this six-year-old litigation restarts every time a new ACA is concluded or a new individual becomes subject to an existing ACA. That appears to be Plaintiffs' intention: They assert that amendment is just and proper because the government "entered into a new ACA with Belize and . . . Liberia," which Plaintiffs did not have the chance to challenge in the FAC. Mot. at 6. They also assert that amendment is just and proper because "several new Individual Plaintiffs" are subject to the ACAs challenged in the FAC and those individuals "seek to serve as Class Representatives." *Id.* But amendment for these reasons makes little sense if Plaintiffs (a) already proposed a class consisting of "[a]ll noncitizens whom Defendants have sought or will seek to bar from asylum, withholding of removal, or CAT protection in proceedings under 8 U.S.C. § 1229a [§ 240] on the basis that they can be removed to a third country under an Asylum Cooperative Agreement pursuant to the Rule, Guidance, or Designations," ECF No. 173-1 ¶ 136, and (b) already appointed class representatives, *id.* ¶ 139. Plaintiffs' class definition appears to be designed to include even individuals subject to future ACAs, which would make it unnecessary to amend on account of the conclusion of new ACAs. And the appointment of class representatives who purportedly satisfy Rule 23's typicality requirement makes adding new class representatives unnecessary.[3] If Plaintiffs wish to challenge future ACAs or the circumstances of individuals who fall outside their proposed class, they may file a new suit.

---

[3]    Indeed, Plaintiffs' asserted need to amend the complaint to challenge additional ACAs and add new class representatives cuts against their claim that their proposed class satisfies Rule 23's commonality and typicality requirements. *See* ECF No. 182 (Defendants' opposition to Plaintiffs' motion for class certification).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: January 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CARA E. ALSTERBERG
Acting Assistant Director

/s/ Joseph A. McCarter
JOSEPH A. MCCARTER
TOLA MYCZKOWSKA
Trial Attorneys
Office of Immigration Litigation,
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537
Joseph.A.McCarter@usdoj.gov

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 16, 2026, I caused a copy of this filing to be served on counsel for Plaintiffs via the ECF system.

/s/ Joseph A. McCarter
JOSEPH A. MCCARTER
Attorney for Defendants

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| U.T., *et al.*,<br>　　　　Plaintiffs,<br><br>　　　　　*v.*<br><br>PAMELA BONDI, Attorney General of the<br>United States, in her official capacity, *et al.*,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　Civil Action No. 1:20-cv-116-EGS<br>)<br>)<br>)<br>)<br>)<br>) |

### **[PROPOSED] ORDER**

Upon consideration of Plaintiffs' motion for leave to file second amended complaint

(ECF No. 173) and Defendants' opposition thereto,

IT IS HEREBY ORDERED that the motion is DENIED

IT IS SO ORDERED.

Dated:

_____
Hon. Emmet G. Sullivan
District Judge

17