UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| U.T., *et al.*, <br>       Plaintiffs, <br><br>     *v.* <br><br> PAMELA BONDI, Attorney General of the <br> United States, in her official capacity, *et al.*, <br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:20-cv-116-EGS<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

      I.      The proposed class definition is imprecise and overbroad. ................................... 6

      II.     Plaintiffs fail to satisfy all of Rule 23(a)'s requirements. ...................................... 8

           A.     Plaintiffs do not satisfy the commonality or typicality requirements of Rule 23(a)(2) and (a)(3). .................................................................. 8

           B.     Plaintiffs fail to establish numerosity. ....................................................... 14

           C.     Plaintiffs do not establish adequacy of representation. ............................ 15

      III.    Plaintiffs fail to satisfy Rule 23(b)(2)'s requirements. ......................................... 17

CONCLUSION .................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Anchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 15, 17

*Beshir v. Holder,*
  840 F. Supp. 2d 379 (D.D.C. 2012) ............................................................................ 13

*Bynum v. Dist. of Columbia,*
  214 F.R.D. 27 (D.D.C. 2003) ...................................................................................... 13

*C.G.B. v. Wolf,*
  464 F. Supp. 3d 174 (D.D.C. 2020) ............................................................................ 17

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ...................................................................................................... 5

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2014) ...................................................................................................... 11

*Daskalea v. Washington Humane Soc.,*
  275 F.R.D. 346 (D.D.C. 2011) .................................................................................... 13

*DL v. Dist. of Columbia,*
  713 F.3d 120 (D.C. Cir. 2013) ............................................................................... 10, 11

*Gen. Tel. Co. of Southwest v. Falcon,*
  457 U.S. 147 (1982) ...................................................................................................... 5

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  573 U.S. 258 (2014) ...................................................................................................... 5

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  202 F.R.D. 12 (D.D.C. 2001) ...................................................................................... 12

*In re Navy Chaplaincy,*
  306 F.R.D. 33 (D.D.C. 2014) ...................................................................................... 17

*In re White,*
  64 F.4th 302 (D.C. Cir. 2023) ...................................................................................... 6

*J.D. v. Azar,*
  925 F.3d 1291 (D.C. Cir. 2019) .................................................................................. 15

*Kas v. Financial General Bankshares, Inc.*,
  105 F.R.D. 453 (D.D.C. 1984) ........................................................... 12

*Kifafi v. Hilton Hotels Ret. Plan*,
  189 F.R.D. 174 (D.D.C. 1999) ........................................................... 14

*Lewis v. Nat'l Football League*,
  146 F.R.D. 5 (D.D.C. 1992) ................................................................ 6

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ................................................... 10

*P.J.E.S. v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) ................................................... 10

*Pigford v. Glickman*,
  182 F.R.D. 341 (D.D.C. 1998) ........................................................ 6, 14

*Thorpe v. Dist. of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ............................................................ 7

*Tozzi v. Dep't of Health & Human Servs.*,
  271 F.3d 301 (D.C. Cir. 2001) .......................................................... 13

*\*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................ passim

*Webb v. Merck & Co., Inc.*,
  206 F.R.D. 399 (E.D. Pa. 2002) ....................................................... 14

**Statutes**

8 U.S.C. § 1158(a)(2)(A) ......................................................... 1, 2, 9, 18

8 U.S.C. § 1229a ...................................................................... 2, 3, 4, 7

8 U.S.C. § 1252(a)(5) ...................................................................... 4

8 U.S.C. § 1252(e)(3) ...................................................................... 3

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................... 1, 5

Fed. R. Civ. P. 23(b) ................................................................... 1, 2, 5

Fed. R. Civ. P. 23(a)(1) ................................................................... 14

Fed. R. Civ. P. 23(a)(4)........................................................................................... 15

Fed. R. Civ. P. 23(b)(2)........................................................................................ 5, 17

**Other Authorities**

*Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the*
  *Immigration and Nationality Act*,
  84 Fed. Reg. 63,944 (Nov. 19, 2019)........................................................... 2, 11, 18

## INTRODUCTION

The Court should deny Plaintiffs' motion for class certification, ECF No. 174 ("Mot."). Federal Rules of Civil Procedure 23(a) and 23(b) require that Plaintiffs have common claims that will lead to common answers and that can be addressed by a single injunction. Yet, at the threshold, Plaintiffs fail to even allege that they have even been harmed by the Aylum Cooperative Agreements ("ACAs") they challenge. Rather, Plaintiffs' asylum cases in immigration court are in various procedural postures with the ultimate decision on whether the government can remove them to a third country pursuant to an ACA yet to be made. It is quite possible that the immigration judges ("IJs") (or an appellate body) in some of these cases will ultimately decide that the government may not do so. That was the case with three named Plaintiffs and proposed class representatives who have already been *granted* asylum.

And individual Plaintiffs bring piecemeal claims attacking only the ACAs and agency guidance that specifically apply to them. This could result in varying answers to the question of whether the government properly conducted an individualized assessment of each ACA country's asylum system and whether each agency guidance implementing the ACAs is lawful. Should the Court ultimately decide that certain ACAs and guidance are lawful but others are not, an injunction against only a subset of the challenged ACAs will not redress the alleged injuries of the Plaintiffs challenging the lawful ACAs. Plaintiffs thus fail to satisfy Rule 23 many times over.

## BACKGROUND

The asylum statute in the Immigration and Nationality Act ("INA") provides that an alien is ineligible to apply for asylum in the United States if, *inter alia*, he can be removed to a safe third country. *See* 8 U.S.C. § 1158(a)(2)(A). The U.S. government implements this so-called safe-third-country bar through the conclusion of ACAs. *Id.* Before the government may implement an ACA

and begin removing qualified aliens to that country, both the Attorney General and Secretary of Homeland Security must make a determination that the legal system in the ACA country provides asylum seekers access to "full and fair procedure[s] for determining a claim to asylum or equivalent temporary protection." 8 U.S.C. § 1158(a)(2)(A). Relevant government agencies typically issue guidance instructing agency personnel on the implementation of a given ACA. *See, e.g.*, ECF No. 110-6 at 996–1000 (agency guidance on the now-rescinded Guatemala ACA).

Plaintiffs brought this suit in January 2020 challenging a 2019 interim final rule (the "Rule"), along with three ACAs the government formed with El Salvador, Guatemala, and Honduras that the government later rescinded. ECF No. 3 at ¶¶ 72, 95–101. The Rule created procedures for agencies to follow when concluding and implementing an ACA other than with Canada. *Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act*, 84 Fed. Reg. 63,994 (Nov. 19, 2019). In the first iteration of this suit, Plaintiffs were comprised of six individuals in expedited removal proceedings who were removed to Guatemala under the now-rescinded Guatemala ACA, plus two advocacy organizations. *See* ECF No. 3 ¶ 20. The parties later placed the case in abeyance until October 2025. *See* Minute Orders (Mar. 15, 2021; Oct. 15, 2025).

After the Court lifted the abeyance, Plaintiffs filed a first amended complaint ("FAC"). ECF No. 166. Plaintiffs maintained their challenge to the Rule but dropped their challenges to the rescinded El Salvador, Guatemala, and Honduras ACAs. *Id.* Plaintiffs added challenges to five new ACAs the government had either formed, or was in the process of forming, with Honduras, Uganda, Guatemala, Ecuador, and Paraguay, along with related agency guidance. *Id.* Plaintiffs also added four new individuals in removal proceedings under 8 U.S.C. § 1229a, INA § 240 ("§ 240 removal proceedings") as plaintiffs in the case and a proposed Rule 23(b) class which the

new individual plaintiffs would represent as class representatives. *Id.* The six original individual Plaintiffs and the two advocacy organizations are not part of the class.[1] *Id.* Plaintiffs claim that the Rule, these five ACAs, and related guidance violate both the INA and the Administrative Procedure Act. *Id.*

Before Defendants could respond to the FAC, Plaintiffs filed a motion for leave to file a second amended complaint ("SAC"), ECF Nos. 173, 173-1, which Defendants also oppose, ECF No. 180. In the proposed SAC, Plaintiffs added to the list of five ACAs they are challenging an additional two ACAs the government concluded or is in the process of concluding with Belize and Liberia. ECF No. 173-1. Plaintiffs also added 18 new individuals in § 240 removal proceedings as plaintiffs and appointed each of them to serve as class representatives along with the class representatives appointed in the FAC. ECF No. 173-1. In the interim, Plaintiff D.G., who was a proposed class representative in the FAC, voluntarily dismissed his claims. *See* ECF No. 172. Thus, at the date of this filing, Plaintiffs have appointed a total of 21 individuals to serve as class representatives. ECF No. 173-1.

Plaintiffs also filed the instant motion for class certification to certify the class proposed in the SAC. Plaintiffs define the proposed class as:

> All noncitizens whom Defendants have sought or will seek to bar from asylum, withholding of removal, or protection under the Convention Against Torture in removal proceedings under 8 U.S.C. § 1229a [INA § 240] on the basis that they can

---

[1]    As Defendants discussed in their opposition to Plaintiffs' first motion to amend, these original Plaintiffs' claims are moot. ECF No. 161 at 3–4. Plaintiffs' choice to exclude the original Plaintiffs from the putative class is an implicit acknowledgment that the original Plaintiffs lack standing to challenge the current ACAs. It appears to Defendants that the six original Plaintiffs' only role in the case is to act as a placeholder in the event that Defendants ever apply a current ACA to aliens in expedited removal proceedings. Plaintiffs acknowledged as much in their first motion to amend, stating that the original Plaintiffs needed to amend their complaint rather than let individuals with live claims file a new case because this was the only case in 2020 to challenge the Rule under 8 U.S.C. § 1252(e)(3), which has a strict 60-day statute of limitations. *See* ECF No. 157 at 8.

be removed to a third country under an Asylum Cooperative Agreement pursuant to the Rule, Guidance, or Designations.

Mot. at 1.

Importantly, the 21 proposed class representatives' circumstances are not uniform. Each is seeking asylum in § 240 removal proceedings, but their asylum cases are in various postures with uncertain outcomes. In the cases of 20 individual Plaintiffs, a government attorney moved to pretermit their asylum cases so that the government can remove them to a third country pursuant to an ACA. ECF Nos. 158-1 through 158-2, 175-1 through 175-8. The government seeks to remove these Plaintiffs pursuant to various ACAs—some to Honduras, others to Uganda, and others to Ecuador or Guatemala. *See id.* In Plaintiff Y.A.'s case, an IJ *sua sponte* pretermitted her asylum case because the IJ found that she is removable under both the Honduras and Uganda ACAs. ECF No. 158-4.

Many of these Plaintiffs state that they opposed the government's pretermission motions or had or will have the opportunity to do so. *See* ECF Nos. 158-1 (Plaintiff Y.A.), 158-2 (Plaintiff A.S.), 175-1 (Plaintiff E.M.), 175-2 (Plaintiffs L.H. and Y.V.), 175-3 (Plaintiffs D.M., I.B., A.M., M.S., and M.A.), 175-5 (Plaintiffs N.S. and D.D.), 175-8 (Plaintiffs S.M. and J.M.), 175-9 (Plaintiff J.D.). Others do not say if they have opposed or will oppose the government's motion in their case. *See* ECF Nos. 158-1 (Plaintiff J.C.), 175-6 (Plaintiff N.V.), 175-7 (Plaintiff M.O.). In one case, the IJ denied the government's motion and granted the Plaintiffs asylum in the United States. ECF No. 175-4 (Plaintiffs L.T., A.T., and A.J.). And some Plaintiffs who opposed the government's motions say that they intend to appeal to the Board of Immigration Appeals ("BIA") should the IJs in their cases grant the motions. ECF No. 175-8 (Plaintiffs S.M. and J.M.). Should any Plaintiff's appeal to the BIA fail, that Plaintiff may still petition a U.S. Court of Appeals for review of the BIA's decision, 8 U.S.C. § 1252(a)(5).

4

## LEGAL STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To fall within this narrow exception, Plaintiffs must affirmatively demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *Wal-Mart Stores*, *Inc.,* 564 U.S. at 350.

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). As relevant here, Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). These are not just "mere pleading standard[s]." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the Rules has been met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51.

## ARGUMENT

Plaintiffs fail to establish that class certification is warranted for multiple reasons. *First*, Plaintiffs' proposed class definition is imprecise and overbroad because it includes aliens who may never even lose the ability to apply for asylum upon the conclusion of their § 240 removal proceedings. *Second*, Plaintiffs fail to satisfy Rule 23(a)'s commonality, typicality, numerosity, and adequacy of representation requirements because they cannot articulate a uniform injury, singular policy, or common legal or factual claims amongst the proposed class representatives and putative class members. *Third*, Plaintiffs fail to satisfy Rule 23(b)'s additional requirements because assessing the legality of each ACA is an independent, ACA-by-ACA and guidance-by-guidance inquiry that cannot be resolved by a single injunction.

## I.    The proposed class definition is imprecise and overbroad.

Plaintiffs' class definition is imprecise and overbroad as it includes aliens who may never even lose the ability to apply for asylum, which is the very harm that Plaintiffs seek to redress through this action. Courts in this district have interpreted Rule 23 as imposing a "requirement that a class be clearly defined." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998). This requirement ensures that the class is "neither amorphous, nor imprecise." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992). It arises from Rule 23's "express[] direct[ion] that the definition of a class be determined and that its members be identified or identifiable early in the litigation, not at its end." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023). An inadequately defined or overbroad class implicates Rule 23 requirements such as typicality and commonality, as well as Rule 23(b)(2) standards for certifying an injunctive-relief class. For example, "[a] class sought to be certified under Rule 23(b)(2) must "accurately articulate[] the general demarcations of the class of

individuals who are being harmed." *Thorpe v. Dist. of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014).

Here, Plaintiffs' proposed class definition is both imprecise and overbroad. Again, they define the class as:

> All noncitizens whom Defendants have sought or will seek to bar from asylum, withholding of removal, or protection under the Convention Against Torture in removal proceedings under 8 U.S.C. § 1229a [INA § 240] on the basis that they can be removed to a third country under an Asylum Cooperative Agreement pursuant to the Rule, Guidance, or Designations.

Mot. at 1. It is not clear from this definition if the class includes aliens whom the government will seek to remove pursuant to future ACAs that are clearly not part of this litigation, or if the class only includes aliens subject to the ACAs Plaintiffs attempt to challenge in the proposed SAC. Indeed, Plaintiffs' definition covers all aliens whom the government will seek to remove under the Rule, *id.*, which would include aliens subject to future ACAs. But the definition then simultaneously limits the class to aliens subject to the "Designations" (*i.e.*, ACAs) at issue in this case, *see id.* This imprecision makes it impossible to identify the parameters of the proposed class.

Under either reading of the class definition, however, the proposed class is overbroad because it includes individuals who will ultimately not even be subject to third-country removal under an ACA. An alien would fall within the class definition so long as the government simply "sought or will seek" to remove them under an ACA. *Id.* In other words, any alien whose asylum case the government moves to pretermit or whose asylum case an IJ *sua sponte* pretermits will fall within the class definition. But such a definition does not account for the fact that not every alien who is confronted with a pretermission motion or even has his case pretermitted will ultimately be removed to an ACA country.

For example, despite the government moving to pretermit Plaintiffs L.T., A.T., and A.S.'s asylum cases, the IJ denied the motion and granted them asylum. SAC ¶¶ 28–29; ECF No. 175-4 ¶ 10 (L.T. Decl.). Similarly, eleven Plaintiffs have all either opposed the government's pretermission motions or have hearings scheduled where they plan to do so, thus, it is yet undetermined whether they will be removed to an ACA country, if at all. *See* ECF No. 175-2 (L.H. Decl.); ECF No. 175-3 (D.M. Decl.); ECF No. 175-5 (N.S. Decl.); ECF No. 175-8 (S.M. Decl.). And even those Plaintiffs, including A.S., Y.A., E.M., and J.D., whose asylum cases were pretermitted, may nevertheless avoid removal to an ACA country if their pending motions to reconsider or appeals to the BIA are successful or, if their BIA appeals fail, if any subsequent petitions for review that they decide to pursue are successful. *See* SAC ¶¶ 21-22; ECF No. 175-1 (E.M. Decl.); ECF No. 175-9 (J.D. Decl.). Thus, Plaintiffs' class definition improperly includes aliens who may never lose the ability to apply for asylum—the very harm that Plaintiffs seek to redress.

## II. Plaintiffs fail to satisfy all of Rule 23(a)'s requirements.

### A. Plaintiffs do not satisfy the commonality or typicality requirements of Rule 23(a)(2) and (a)(3).

Commonality and typicality are interrelated and often merge. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

**1. Commonality.** The commonality requirement of Rule 23(a)(2) requires that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 349. But this language is "easy to misread, since any competently crafted complaint literally raises common questions." *Id.* As such, "[i]t is not the raising of common 'questions'—even in droves—but, rather

the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and "[t]heir claims must depend upon a common contention." *Id.* at 349. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Here, Plaintiffs cannot establish commonality because Plaintiffs and the putative class members: (a) have not suffered the same injury; (b) do not challenge the same government policy; and (c) do not through their claims raise common questions or generate common answers.

a. **Common Injury.** Plaintiffs have not suffered the same injury. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. Contrary to their assertions, Mot. at 7, they do not point to a single policy that applies to all proposed class representatives, let alone putative class members. Consequently, there is not a "question[] of law or fact common to the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 349.

As a preliminary matter, aliens who are subject to an ACA are not all threatened with, as Plaintiffs claim, a "loss of the right to seek asylum," Mot. at 7. An alien who is determined to be removable to a safe third country pursuant to an ACA is, by definition, ineligible to apply for asylum. 8 U.S.C. § 1158(a)(2)(A). Thus, Plaintiffs are wrong to characterize their alleged injury as the loss of a "right," *see* Mot. at 7.

To the extent Plaintiffs claim that they all share the common injury of being unable to seek asylum in this country, that is incorrect. Plaintiffs' own declarations show that they have not all experienced the same alleged injury. Rather, their alleged injuries vary case-by-case. For example, the majority of Plaintiffs have not lost the ability to apply for asylum. Plaintiffs L.T., A.T. and A.J. were all *granted* asylum after the IJ denied the government's pretermission motion. SAC ¶¶ 28– 29; L.T. Decl. ¶ 10. Several others have either opposed or plan to oppose the government's

pretermission motions and could very well succeed and then continue with their asylum cases. *See* ECF No. 175-2 at ¶¶ 9–10 (L.H. Decl.); ECF No. 175-3 at ¶¶ 9–13 (D.M. Decl.); ECF No. 175-5 at ¶¶ 8–9 (N.S. Decl.); ECF No. 175-8 at ¶¶ 10–12 (S.M. Decl.). For those whose asylum cases were pretermitted, most have either already moved for reconsideration or appealed the IJ's decision to the BIA. *See* SAC ¶¶ 21–22; ECF No. 175-1 at ¶ 13 (E.M. Decl.); ECF No. 175-9 at ¶¶ 10–11 (J.D. Decl.). And in the event that any Plaintiffs appeal a pretermission decision to the BIA and fail, they may seek further review through a petition for review of the BIA's decision in a United States Court of Appeals. Thus, the individualized circumstances of each proposed class representative and, by extension, putative class members show that they cannot claim to have been denied the ability to apply for asylum. Consequently, they cannot show a common injury.

**b.** ***Common Policy.*** Plaintiffs also do not challenge the same government policy. That breaks commonality, as a finding of commonality involves a class identifying a "single policy or practice that bridges all of their claims." *See DL v. Dist. of Columbia*, 713 F.3d 120, 127 (D.C. Cir. 2013). Agency actions that satisfied commonality have involved factual or legal harms rendered on a categorical basis. *See, e.g. O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019) (policy of denying class members right to seek asylum because they all "entered the United States across the southern border after November 9, 2018, outside a designated port of entry"); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 504, 532 (D.D.C. 2020) (policy of expulsion under the Title 42 process of "persons traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting in a land Port of Entry"). That is not the case here.

While Plaintiffs assert that their claims challenge "the same agency actions (the Rule, Guidance, and Designations)," Mot. at 7, that is incorrect. Rather than identify a singular agency

action that applies categorically to all proposed class representatives' and members' ability to apply for asylum, Plaintiffs patched together challenges to *several* different ACAs and *several* different sets of agency guidance. SAC ¶¶ 104–05, 108, 111, 113, 118, 120, 122. The ACAs and their accompanying guidance are distinct from one another because before each can be implemented, the Attorney General and Secretary of Homeland Security must determine, based on each ACA country's unique legal systems, that the countries provide asylum seekers with access to full and fair asylum procedures. 84 Fed. Reg. at 63,997. Further, each ACA applies to different Plaintiffs, and some apply to none at all. *See, e.g.,* SAC ¶¶ 21 (Honduras), 26-27 (Uganda), 32 (Guatemala), 33 (Ecuador); *see generally* SAC ¶¶ 19–36 (lacking challenges to Paraguay, Belize, or Liberia ACAs). Thus, some Plaintiffs and proposed class members are challenging some ACAs, and some are challenging other ACAs. *See* SAC ¶¶ 21 (challenging only one ACA), SAC ¶¶ 22 (challenging two ACAs). Each ACA therefore does not apply equally to all proposed class members, and the proposed class does not challenge a "singular or uniform policy or practice." *DL*, 713 F.3d at 128. Plaintiffs cannot show commonality for this reason too.

      **c. *Common Questions.*** Last, Plaintiffs' claims do not raise common questions or generate common answers. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. While Plaintiffs assert that "multiple central questions are common to the proposed class," Mot. at 6, that assertion does not survive the "rigorous analysis" that Rule 23(a) demands. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2014). Indeed, the questions Plaintiffs list essentially boil down to the ultimate question of whether each challenged ACA and its related guidance is unlawful under the INA, APA, and Due Process Clause. *See* Mot. at 6. Plaintiffs overlook that the answer to those question may vary from ACA-to-ACA and from guidance-to-guidance.

For example, Plaintiffs' challenge to whether the Attorney General and Secretary of Homeland Security properly assessed if each ACA country provides access to full and fair asylum procedures, SAC ¶¶ 159–62, theoretically might lead to a different answer when challenging the Honduras ACA as opposed to the Ecuador ACA. The same goes for the guidance, as the contents of each guidance may vary. Furthermore, the answers to Plaintiffs' ACA-specific challenges to not apply to every class member, as not every class member is subject to every ACA.

Because answers to Plaintiffs' challenges might vary from ACA-to-ACA and guidance-to-guidance, the alleged harms of some class members might be redressed at the end of this litigation, but the harms of others might not be. Thus, Plaintiffs cannot establish that their claims will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. They accordingly fail to meet their burden to "affirmatively demonstrate" that there are "*in fact* . . . common questions." *Id.* In short, Plaintiffs lack commonality.

**2. Typicality.** The proposed class representatives' claims lack typicality for largely the same reasons. The typicality requirement ensures that the interests of the named representative align with the interests of the class. As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied. *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1984). At bottom, the typicality requirement is used to ascertain "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) (citations omitted).

As discussed, the proposed class representatives' legal claims, interests, and circumstances are not typical of one another, let alone each putative class member. The representatives are

challenging different ACAs and different guidance. Some theoretically may prevail in challenging

certain ACAs, whereas others may fail in challenging others. Thus, a representative challenging

the Honduras ACA and guidance does not have claims that are typical of a class member challeng-

ing the Uganda ACA and guidance. What's more, to the extent Plaintiffs' class definition is in-

tended to cover aliens who may be removed under future ACAs, none of the class representatives

can challenge an ACA that does not exist. *See* Mot. at 1 (class definition includes "all" aliens

"whom Defendants have sought or will seek to bar from asylum . . . under an [ACA]"); *see also*

*Beshir v. Holder*, 840 F. Supp. 2d 379, 382–83 (D.D.C. 2012) (citing *Tozzi v. Dep't of Health &*

*Human Servs.,* 271 F.3d 301, 307 (D.C. Cir. 2001) (noting "purely speculative" injuries cannot be

challenged)).

      In short, "the claims of the representatives and absent class members" are not "sufficiently

similar such that the representatives' acts are also acts on behalf of, and safeguard the interests of,

the class." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (citation omitted).

      Plaintiffs' assertion that the proposed class representatives' alleged injuries are "based on

the same agency actions," Mot. at 7, is incorrect. The representatives' alleged injuries are instead

based on different ACAs and guidance. Plaintiffs even acknowledge that the proposed class rep-

resentatives and members have factual differences, *id.,* but they fail to meet their burden to demon-

strate typicality. Instead, Plaintiffs merely make a conclusory statement that such differences are

"not enough" to break typicality. *Id.* Importantly, the proposed representatives here are not simply

situated differently in their asylum cases from the proposed class members; rather, they are chal-

lenging entirely separate agency actions from many of the proposed class members. That is hardly

the type of difference between class representative and member that courts have held do not matter.

*See, e.g.*, *Daskalea v. Washington Humane Soc.,* 275 F.R.D. 346, 358 (D.D.C. 2011) (typicality

requirement not met where "members of the proposed class suffered a wide range of deprivations . . . and claim distinct injuries"); *Webb v. Merck & Co., Inc.,* 206 F.R.D. 399, 408 (E.D. Pa. 2002) (concluding that neither commonality or typicality were met because "[p]laintiffs were employed in different states, in different divisions, in different facilities and at different levels within the company hierarchy" and adding that, "[i]n essence, this action is nothing more than a consolidation of 20 accounts of individualized disparate treatment").

### B.    Plaintiffs fail to establish numerosity.

A class action is appropriate only when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs may satisfy the requirement by supplying estimates of putative class members, *see Pigford*, 182 F.R.D. at 347–48, "[s]o long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999). Here, despite challenging multiple ACAs, Plaintiffs fail to provide a reasonable basis, or, in some instances, any basis, for their estimate of putative class members subject to each of the challenged ACAs.

To begin, Plaintiffs fail to identify *any* aliens facing pretermission or removal under the Paraguay, Belize, or Liberia ACAs. *See generally* SAC ¶¶ 20–36. Nor could they for the Liberia ACA, the existence of which Plaintiffs merely allege "[o]n information and belief." SAC ¶ 122. Clearly, a putative class of zero fails to satisfy the numerosity required to render joinder of plaintiffs impracticable. Furthermore, Plaintiffs' failure to appoint any class representative subject to the Paraguay, Belize, or Liberia ACA undermines Plaintiffs' allegation that any putative class members exist either.

Next, Plaintiffs identify only two proposed class representatives who actually face removal under a challenged ACA. Specifically, only Plaintiffs N.V. and M.O. face removal under a

challenged ACA—to Guatemala and Ecuador, respectively. *See* SAC ¶¶ 32–33; ECF No. 175-6 at ¶¶ 7–9 (N.V. Decl.); ECF No. 175-7 at ¶¶ 11–14 (M.O. Decl.). The additional nineteen proposed class representatives do not face removal under these, or any other challenged ACAs; rather, their asylum cases remain in various procedural postures in immigration court—some have pending hearings and opportunities to oppose pretermission, others are litigating motions to reconsider, and others are litigating or planning to litigate appeals to the BIA. *See generally* SAC ¶¶ 20–36. Most glaringly, Plaintiffs L.T., A.T., and A.J. *received* asylum despite the government filing a preter-mission motion in their case. *See* ECF No. 175-4 at ¶ 10 (L.T. Decl.). Thus, merely facing preter-mission pursuant to an ACA does not guarantee that an alien will ultimately face removal to that ACA country.

As such, despite claiming that "at least hundreds" of aliens face pretermission motions, Mot. at 5, Plaintiffs fail to demonstrate that the 21 proposed class representatives—let alone puta-tive class members—face removal under the challenged ACAs. Thus, numerosity is not satisfied.

### C.  Plaintiffs do not establish adequacy of representation.

Rule 23(a)(4) requires that the named Plaintiffs fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Anchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997). Adequacy thus "embraces two components: the class representative (i) must not have antagonistic or conflicting interests with the unnamed mem-bers of the class and (ii) must appear to vigorously prosecute the interests of the class through qualified counsel." *J.D. v. Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019) (citation omitted).

Here, the named Plaintiffs lack the same injury and interests as the putative class members and therefore cannot vigorously prosecute the interests of all the putative class members. As

discussed *supra*, class members will be subject to ACAs that the named Plaintiffs are not them-selves subject to. For example, Plaintiff E.M. is only subject to the Honduras ACA, SAC ¶¶ 23, and therefore lacks the same injury and interest as a class member who is only subject to the Ec-uador ACA. This is especially true to the extent Plaintiffs' class definition is designed to reach ACAs that are not yet in existence, *see* Mot. at 1, as that would mean that *none* of the named Plaintiffs have the same injury and interests as potential class members who might one day be subject to a new ACA with a new country.

Furthermore, there is no guarantee that the named Plaintiffs and proposed class represent-atives will suffer any injury at all or remain parties in this case. Indeed, none of the named Plaintiffs have been removed to third countries under the challenged ACAs. Plaintiffs L.T., A.T., and A.J., for instance, have asylum status. SAC ¶¶ 28–29; L.T. Decl. ¶ 10. The rest of the named Plaintiffs remain in § 240 removal proceedings, the results of which are unknown at this point. For example, while the asylum cases of Y.A. and A.S. were pretermitted pursuant to ACAs, both Y.A. and A.S. appealed the IJ's decision to the BIA; they could prevail on appeal and ultimately receive asylum just like Plaintiffs L.T., A.T., and A.S. SAC ¶¶ 21–22. Should these or any other named Plaintiffs receive asylum, they might voluntarily dismiss their claims and leave this suit, just like an earlier named Plaintiff—D.G.—did before Plaintiffs moved to amend their complaint. *See* SAC ¶ 4.

Plaintiffs assert that they will "fairly and adequately protect the interests of the proposed class" because they "aim to secure relief that will protect them and the entire class from the chal-lenged policies." Mot. at 7–8. But even though each named Plaintiff declares that they are com-mitted to participate in this case on behalf of unnamed class members, *e.g.*, E.M. Decl. ¶¶ 17–18, former Plaintiff D.G. made the same declaration and nevertheless dismissed his case, *see* ECF No.

158-3 (D.G. Decl.). The same thing could happen with any of the named Plaintiffs depending on the outcomes of their § 240 removal proceedings.

Thus, the named Plaintiffs do not adequately represent the putative class's interests.

### III.   Plaintiffs fail to satisfy Rule 23(b)(2)'s requirements.

The proposed class must also qualify under Rule 23(b)(2). *AmChem Prods. Inc.*, 521 U.S. at 614. In particular, a class may be maintained under Rule 23(b)(2) only if Plaintiffs successfully demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 360); *see In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (holding class is not permitted under Rule 23(b)(2) because the plaintiffs had not identified a common harm that could be resolved with a "single injunction or declaratory judgment" applicable to all class members).

Here, Plaintiffs cannot show that "a single injunction or declaratory judgment would provide relief to each member of the class." *C.G.B.*, 464 F. Supp. 3d at 206. As discussed *supra*, Plaintiffs challenge *several* different ACAs and *several* sets of guidance (and possibly even future ACAs and guidance). Because the legality of each ACA is an independent inquiry which may result in different answers, it is theoretically possible that the Court may enjoin certain ACAs and/or guidance but not others. *See supra* p. 12. Thus, an injunction as to a subset of ACAs would not provide relief to class members who are subject to ACAs the Court upholds as lawful.

Plaintiffs' assertion that they seek "indivisible relief of vacatur of the challenged Rule, Guidance, and Designations," Mot. at 9, overlooks that assessing the legality of each ACA is an

independent, ACA-by-ACA and guidance-by-guidance inquiry. The implementation of these ACAs involves determinations by the Attorney General and Secretary of Homeland Security that each ACA country's legal system provides asylum seekers with access to full and fair asylum procedures. 84 Fed. Reg. at 63,997 (quoting 8 U.S.C. § 1158(a)(2)(A)). The answer to whether these determinations were properly made hinges on both the actions of the Attorney General and Secretary and the unique legal systems of each country assessed. Likewise, the answer to whether each ACA guidance is lawful depends on the contents of each guidance, which might vary. Plaintiffs thus seek to enjoin Defendants' actions in this case not "in one stroke," as they claim, Mot. at 9, but in multiple strokes—ACA-by-ACA and guidance-by-guidance. Plaintiffs thus cannot support their claim that an injunction in this case, which may be limited to a subset of ACAs and/or guidance, would benefit the putative class members "in the same fashion," Mot. at 9.

Accordingly, Plaintiffs do not satisfy Rule 23(b), which is independently dispositive.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion for class certification.

18

Dated: January 16, 2026                  Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director

CARA E. ALSTERBERG
Acting Assistant Director

/s/ Joseph McCarter
JOSEPH MCCARTER
TOLA MYCZKOWSKA
Trial Attorneys
Office of Immigration Litigation
U.S. Dept. of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537
Joseph.A.McCarter@usdoj.gov

*Attorneys for Defendants*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 16, 2026, I caused a copy of this filing to be served on counsel for Plaintiffs via the ECF system.

<u>/s/ Joseph McCarter</u>
JOSEPH MCCARTER
Attorney for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| U.T., *et al.*,<br>　　　　Plaintiffs,<br><br>　　　　*v.*<br><br>PAMELA BONDI, Attorney General of the<br>United States, in her official capacity, *et al.*,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 1:20-cv-116-EGS<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER

Upon consideration of Plaintiffs' motion for class certification and related pleadings and

Defendants' opposition thereto,

IT IS HEREBY ORDERED that the motion for class certification is DENIED

IT IS SO ORDERED.

Dated:


_____
The Honorable Emmet G. Sullivan
District Judge

21