**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.T., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:20-cv-116-EGS |
| PAMELA BONDI, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
**LEAVE TO FILE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

The Court should grant Plaintiffs leave to file their proposed Second Amended Complaint ("SAC"). Defendants have no serious argument of undue delay or prejudice, since Plaintiffs' motion for leave was filed prior to Defendants' deadline to respond to the First Amended Complaint. And contrary to Defendants' unsupported speculation that Plaintiffs intend to restart the litigation each time they learn of a new Asylum Cooperative Agreement ("ACA"), Plaintiffs are prepared to proceed expeditiously with litigation once this motion is resolved.

That leaves Defendants' arguments that a few aspects of the proposed SAC are futile. They assert the futility of most of Plaintiffs' claims only insofar as those claims challenge the country-specific Designations concerning Belize and Liberia and any country-specific Guidance documents concerning solely those two countries. But Defendants make no challenge at all to the bulk of the amendments in the proposed second amended complaint: They do not contest the addition of nine new Individual Plaintiffs who seek to serve as additional class representatives; nor

do Defendants contest those proposed new Plaintiffs claims against the Rule itself or against all Designations and Guidance not specific to Belize or Liberia. Defendants therefore assert only *partial* futility. And courts in this District and across the country have consistently held that arguments that "do not show futility of the entire amendment" do not warrant denying leave and should instead be raised in an appropriate motion following amendment. *Mead v. City First Bank of D.C., N.A.*, 256 F.R.D. 6, 8 n.2 (D.D.C. 2009); *accord, e.g.*, *Brawer v. Egan-Jones Ratings Co.*, 347 F.R.D. 650, 654 (S.D.N.Y. 2024) (collecting cases); *Woodson v. 3M Co.*, No. 3:21-cv-50244, 2022 WL 1450385, at *5 (N.D. Ill. May 9, 2022) (same).

The Court therefore has no need to address the substance of Defendants' futility arguments at this point. As explained below, however, those arguments all lack merit. Plaintiffs' amendments are by no means futile, and their claims cannot be resolved at this juncture with truncated briefing.

## ARGUMENT

### I.    Defendants Fail To Show Undue Delay Or Prejudice.

Defendants assert that this case is too far along to permit amendment. Opp. 12-14, ECF No. 180. But following a long abeyance, this litigation is still at its very beginning stage. The Court docketed Plaintiffs' First Amended Complaint on October 15, 2025. *See* ECF No. 166. That same date, the Court denied as moot the parties' prior cross-motions for summary judgment concerning the original complaint. *See* Minute Order, Oct. 15, 2025. The only relevant filing by either party between that date and Plaintiffs' filing of their current motion for leave to amend on December 18, 2025, was Defendants' unopposed motion to extend their answer deadline concerning the First Amended Complaint from December 22, 2025, to January 5, 2026. *See* ECF No. 170 (Nov. 21, 2025); *see also* Minute Order, Nov. 25, 2025 (granting the extension).

Defendants ignore this reality and assert that Plaintiffs' motion is unduly delayed just because several years have passed since the original complaint was filed. But "[p]arties are routinely permitted to amend pleadings well after suit has been filed." *Howard v. Gutierrez*, 237 F.R.D. 310, 312 (D.D.C. 2006). As Plaintiffs' motion explained, this case was in abeyance at the parties' *joint* request for most of the time after it was first filed. *See* Mot. 2-3, ECF No. 173. And none of the cases that Defendants cite support denying leave here. Each of those cases found undue delay not merely because of the passage of time but because the litigation had proceeded to an advanced stage.[1]

Nor do Defendants show the necessary prejudice. Their attempt to do so concerns not the present motion but rather speculation that "Plaintiffs' intention" going forward is to restart this litigation "every time a new ACA is concluded." Opp. 14. To the contrary, Plaintiffs intend to proceed with litigation on their proposed SAC and are taking the appropriate steps to do so. They have moved for class certification along with seeking to amend their complaint to include additional appropriate class representatives. *See* ECF No. 174. And Plaintiffs have initiated

---

[1] *See Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (leave sought following "[t]wo rounds of discovery," "one year after summary judgment motions were *decided*," and "only days before trial") (emphasis added); *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) (leave sought "after discovery had closed"); *Doe v. McMillan*, 566 F.2d 713, 719-20 (D.C. Cir. 1977) (leave sought after case had already gone to the Supreme Court and back following adjudication of dispositive motion); *Harrison v. Rubin*, 174 F.3d 249, 252 (D.C. Cir. 1999) (case was "nearing trial, and the parties ha[d] almost concluded their pre-trial discovery"); *Daugherty v. Sheer*, No. 22-5103, 2023 WL 6380539, at *2 (D.C. Cir. Oct. 2, 2023) (unpublished) (leave sought "41 months after [court of appeals] issued its mandate on [a] first appeal, 34 months after the Supreme Court denied certiorari, and 18 months after the deadline [plaintiffs] themselves had proposed for returning the case to the district court's active docket and amending their complaint").

discussions with Defendants about a potential schedule for production of the challenged agency actions and administrative records and substantive briefing once the motion to amend is resolved.

Indeed, Plaintiffs are eager to proceed expeditiously in part so that this Court's rulings can inform any potential further litigation that may eventually become necessary—for example, concerning the validity of future country-specific Designations. *See, e.g.*, Proposed SAC ¶ 159-62 (Claim One), ECF No. 173-1 (alleging that all the current Designations violate the statute because of a common defect that would also apply to future Designations). Moreover, Defendants are wrong to suggest that eventual litigation concerning any such future Designations would require restarting the entire case. *See, e.g.*, *Chandler v. James*, 783 F. Supp. 2d 33, 39 (D.D.C. 2011) (noting that supplemental pleadings under Rule 15(d), unlike amended pleadings under Rule 15(a), do not "entirely replace the earlier pleading") (cleaned up).

In any event, Defendants' assertions are not responsive to the relevant prejudice standard. They must show that permitting the *current* proposed amendment would cause them to be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *See In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (cleaned up). Speculation about possible future developments does not suffice.

## II.     Defendants' Partial Futility Arguments Do Not Justify Denying Leave.

In the absence of any serious claim of undue delay or prejudice, Defendants spend the bulk of their opposition arguing that just a few aspects of Plaintiffs' proposed amendments would be futile. Opp. 5-12. But such assertions of "[p]artial futility" are "not a ground for denial of a motion to amend" because, even if correct, they do not implicate the amendment as a whole. *Brawer*, 347 F.R.D. at 654. It would also be inefficient for the Court to attempt to engage with the merits of Defendants' largely conclusory arguments as to just certain aspects of Plaintiffs' claims now, since

Defendants will no doubt raise those arguments more fully in a future motion. *Cf.* Defs.' Cross-MSJ & Opp. 16-29, ECF No. 82-1 (Mar. 25, 2020) (raising many of the same arguments).

Defendants' futility arguments principally address just limited aspects of Plaintiffs' claims. *See* Opp. 5-11. First, Defendants make several arguments that seemingly contest Plaintiffs' ability to challenge the Designations concerning Belize and Liberia (at issue in Claims 1 and 8) and any Guidance documents that are specific to just those two countries (potentially at issue in Claims 2 through 8, along with the Rule itself and the Guidance more generally). *See* Opp. 5-8.[2] Second, Defendants question the viability of Claim 6, which alleges violations of constitutional, statutory, and regulatory due process protections. Opp. 8-12.

Defendants therefore assert only partial futility of the proposed SAC. Critically, they do not challenge the addition of the proposed new Individual Plaintiffs who seek to serve as further class representatives. Defendants also do not contest those proposed new Plaintiffs' ability to challenge the Designations already at issue in the existing First Amended Complaint on statutory and arbitrary-and-capricious grounds. Nor do Defendants argue that it is futile for those proposed new Plaintiffs to challenge the Rule itself on notice-and-comment grounds in Claim 9. And Defendants' arguments concerning possible Belize- or Liberia-specific Guidance documents are clearly premature because they have not even produced any such Guidance.

Such assertions of partial futility do not warrant denial of leave to amend because they do not show that the entire amendment would not survive a motion to dismiss. They are therefore properly addressed on an appropriate motion following amendment. *See, e.g.*, *Mead v. City First*

---

[2] Defendants repeatedly assert that Plaintiffs cannot viably challenge "the Belize and Liberia ACAs." *E.g.*, Opp. 1, 5-7. As Plaintiffs' pleadings make clear, however, they do not challenge the ACAs—that is, the international agreements—themselves. As they have since the beginning, Plaintiffs instead challenge the agency actions that implement those agreements: the Rule, Designations, and Guidance. *See* Proposed SAC, ECF No. 173-1 ¶¶ 1, 5, 159-96.

*Bank of D.C., N.A.*, 256 F.R.D. 6, 8 n.2 (D.D.C. 2009) ("challenges to particular counts . . . do not show futility of the entire amendment"); *Porwitzky v. Romkowsky*, No. 1:25-cv-280, 2025 WL 3140765, at *2 (D.N.M. Nov. 10, 2025) ("[Defendants] do not cite to any case law indicating that *partial* futility—i.e., an amended complaint that would be subject to partial dismissal—is an adequate basis to deny amendment. Nor has the Court found case law in support of this conclusion."); *Cannon v. Blue Sky Casino, LLC*, No. 4:25-cv-13, 2025 WL 3003949, at *3 (S.D. Ind. Oct. 27, 2025) ("[T]he standard for futility of amendment asks whether the pleading as a whole could survive a motion to dismiss."); *Woodson v. 3M Co.*, No. 3:21-cv-50244, 2022 WL 1450385, at *5 (N.D. Ill. May 9, 2022) (collecting cases demonstrating that "[m]any courts grant a motion to amend where the plaintiff has put forth some allegations that allow the proposed amendment to survive a motion to dismiss, even if other portions of it are futile"); *Michael v. Bloomberg L.P.*, No. 14-cv-2657, 2016 WL 1659319, at *4 (S.D.N.Y. Mar. 18, 2016) ("Rule 15's standard concerns futility of a claim, not its 'partial' futility"); *Van Stelton v. Van Stelton*, 904 F. Supp. 2d 965, 970 (N.D. Iowa 2012) ("[T]he potential vulnerability of one count does not render the entire amendment 'futile.'").

Defendants therefore fail to carry their burden to show that denial of leave is warranted due to futility. If the Court permits the proposed SAC, Defendants can raise the various arguments they sketch out in their opposition to amendment in an appropriate motion. And Plaintiffs will respond in full to those arguments at that time, as they did in the previous round of summary judgment briefing. *See* Pls.' MSJ Opp. & Reply 6-16, ECF No. 88 (Apr. 10, 2020) (addressing many of the same arguments Defendants raise now).

There is therefore no need for the Court to engage with the merits of Defendants' futility arguments at this juncture. In any event, those arguments all lack merit.

First, Defendants argue that 8 U.S.C. § 1252(f)(1) precludes injunctive relief. Opp. 5. But even assuming that provision is relevant at all, it does not affect the Court's subject matter jurisdiction, *Biden v. Texas*, 597 U.S. 785, 798 (2022); and it does bar either declaratory relief, *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020), or APA relief, *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022).

Second, Defendants briefly assert three other statutory bars. Opp. 5-6. But as Plaintiffs explained in the prior summary judgment briefing, 8 U.S.C. §§ 1158(a)(3) and 1252(b)(9) concern review of individual cases and do not bar APA challenges to broadly applicable asylum policies like the agency actions challenged in this case; and § 1252(a)(2)(B)(ii) does not apply to asylum at all and does not concern non-discretionary statutory claims like those brought here. *See* Pls.' MSJ Opp. & Reply 6-11, ECF No. 88 (Apr. 10, 2020); *see also, e.g.*, *Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 167-69 (D.D.C. 2021) ("Courts in this Circuit . . . consistently have concluded that section 1252(b)(9)'s zipper clause is inapplicable when a rule of general applicability is challenged outside the context of a removal proceeding."); *Mass. Coal. for Immigr. Reform v. DHS*, 621 F. Supp. 3d 84, 98-99 (D.D.C. 2022) (§ 1252(b)(9) does not bar claims by organizational plaintiffs).

Third, Defendants assert that the Individual Plaintiffs could not challenge any Guidance documents that are both specific to the Belize or Liberia ACAs *and* specific to the expedited removal context. Opp. 6. As noted above, however, that premature because Defendants have not produced any such Belize- or Liberia-specific Guidance. And even if such Guidance exists, Defendants do not dispute the existing Organizational Plaintiffs' ability to challenge it. *See id.*

Fourth, Defendants argue that Plaintiffs would lack standing to challenge the Designations and any Guidance documents that are specific to the Belize or Liberia ACAs. *See* Opp. 7-8. But

nothing prevents DHS attorneys or immigration judges from invoking those or any other ACAs against the Individual Plaintiffs at any time. *See, e.g.*, Proposed SAC ¶ 22, ECF No. 173-1 (immigration judge *sua sponte* invoked multiple ACAs as basis to deny Plaintiff Y.A. asylum on the date of her final hearing without prior notice). And the Organizational Plaintiffs' core work is already being impaired by the need to prepare for such invocations of the challenged policies against their clients. *Id.* ¶¶ 146-48, 152-56.

Finally, Defendants fail in their attempt to prematurely litigate the merits of Claim 6 of the proposed SAC concerning due process. *See* Opp. 8-12. That claim alleges that the Rule and Guidance "fail to ensure adequate notice and opportunity to be heard" and therefore violate not just the Due Process Clause but also relevant statutory and regulatory protections. *See* Proposed SAC ¶¶ 183-84, ECF No. 173-1. Defendants argue that Plaintiffs lack a protected liberty interest concerning how "the government seeks to remove them to an ACA country." Opp. 8-9. But the Supreme Court last year reaffirmed that "'[t]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.'" *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Trump v. J.G.G.*, 604 U. S. 670, 673 (2025)). Additionally, Claim 6 will turn partly on whether the relevant *Guidance* ensures adequate process—and Defendants have not yet produced the Guidance. Moreover, Defendants make no argument whatsoever as to why the Rule or Guidance satisfy the statutory and regulatory requirements of 8 U.S.C. § 1229a and 8 C.F.R. Part 1240.

Therefore, even should the Court reach the substance of Defendants' futility arguments, they do not justify denying leave to amend.

## **CONCLUSION**

The Court should grant Plaintiffs' motion for leave to file their proposed Second Amended Complaint.

Dated: January 23, 2025

Respectfully submitted,

Keren Zwick (D.D.C. Bar. No. IL0055)
Mary Georgevitch**
Gerardo Romo**
Mark Fleming*
Charles G. Roth*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
(312) 660-1370
kzwick@immigrantjustice.org
mgeorgevich@immigrantjustice.org
gromo@immigrantjustice.org
mfleming@immigrantjustice.org
croth@immigrantjustice.org

Melissa Crow (D.C. Bar No. 453487)
Center for Gender & Refugee Studies
1901 Pennsylvania Avenue, NW
Suite 900, PMB 228
Washington, DC 20006
(202) 355-4471
crowmelissa@uclawsf.edu

Blaine Bookey**
Peter Habib**
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877
bookeybl@uclawsf.edu
habibpeter@uclawsf.edu

Anwen Hughes**
Inyoung Hwang**
Human Rights First
121 W. 36th St., PMB 520
New York, NY 10004
(202) 547-5692
hughesa@humanrightsfirst.org

s/ Lee Gelernt
Lee Gelernt*
Omar Jadwat*
Natalie Behr**
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
ojadwat@aclu.org
irp_nbehr@aclu.org

Morgan Russell*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mrussell@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation of
the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

*Attorneys for Plaintiffs*
*\* Appearing pro hac vice or pro bono*
*\*\* Application for admission pro hac vice or*

*pro bono appearance forthcoming*

hwangs@humanrightsfirst.org