**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.T., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, *et al.*,<br><br>Defendants. | Civil Action No. 20-116 (EGS) |

**MEMORANDUM OPINION**

Plaintiffs, a group of noncitizens seeking asylum in the United States and organizations who provide immigration counseling and legal services to asylum seekers, bring this lawsuit against Todd Blanche,[1] in his official capacity as Attorney General, and various other federal government officials and agencies, for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, and its implementing regulations; and the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), codified as Note to 8 U.S.C. § 1231, and its implementing regulations.

Pending before the Court are Plaintiffs' Motion for Leave to File Second Amended Complaint ("Mot. for Leave"), ECF No.

[1] Todd Blanche is substituted pursuant to Federal Rule of Civil Procedure 25(d).

173;[2] Plaintiffs' Motion for Class Certification ("Mot. for Class Cert."), ECF No. 174; and Plaintiffs' Unopposed Motion to Hold in Abeyance Claims Concerning Expedited Removal ("Mot. to Hold in Abeyance"); ECF No. 191. Upon careful consideration of the motions, the responses, and replies thereto; the applicable law; and the entire record, the Court **GRANTS** Plaintiffs' Motion for Leave to File a Second Amended Complaint, **GRANTS** Plaintiffs' Motion for Class Certification, and **GRANTS** Plaintiffs' Unopposed Motion to Hold in Abeyance Claims Concerning Expedited Removal.

## I. Background

### A. Factual Background

This suit stems from the government's interim final rule ("Rule") that allows the United States to use the statutory provision in the federal asylum statute to enter into international agreements. *See* Amended Complaint ("Am. Compl."), ECF No. 166 ¶ 1. These agreements are used to remove asylum seekers to third countries so that their asylum claims can be heard and processed there, rather than in the United States. *See id.*

---

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

**1. Methods of Seeking Protection Against Persecution and Torture**

Under federal law, an individual has three primary forms of protection if they are fleeing persecution and torture from their home country: (1) asylum under 8 U.S.C. § 1158; (2) withholding of removal from the United States under 8 U.S.C. § 1231(b)(3); and (3) protection under the Convention Against Torture ("CAT")[3] (hereinafter, collectively "Protection"). *See id.* ¶ 38.

Asylum can be granted to individuals who have a "well-founded fear of persecution" due to their race, religion, nationality, political opinion, or membership in a particular social group. *See id.* ¶ 39 (citing 8 U.S.C. § 1101(a)(42)(A)). Subject to several narrow exceptions, any noncitizen who is physically present in the United States or arrives in the United States, irrespective of the noncitizen's status, may apply for asylum. *Id.* ¶ 40 (citing 8 U.S.C. § 1158(a)(1)). There are three principal ways to seek asylum: (1) a noncitizen not already in removal proceedings may file an affirmative application with the United States Citizenship and Immigration Services ("USCIS") and complete an interview with an asylum officer; (2) a noncitizen already in regular removal proceedings may submit a "defensive" asylum application to the immigration judge; or (3) a noncitizen

[3] 8 C.F.R. § 1208.16-18.

placed in expedited removal proceedings may raise an asylum claim by expressing fear of removal and completing a credible fear interview with an asylum officer to screen for eligibility. *See id.* ¶ 41.

Under the withholding provision, the government cannot remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of their race, religion, nationality, political opinion, or membership in a particular social group. *Id.* ¶ 42 (citing 8 U.S.C. § 1231(b)(3)). The withholding statute bars removal of a noncitizen to any country where they would more likely than not be persecuted, not just the noncitizen's home country. *Id.* CAT also prohibits the removal of a noncitizen to any country where it is more likely than not that they would be tortured. *Id.* ¶ 43 (citing 8 C.F.R. § 208.16(c)(2)). Both the withholding statute and the CAT regulations implement obligations under international treaties preventing the United States from sending noncitizens to countries where they would face torture or persecution. *Id.* ¶ 44. These are known as "non-refoulement obligations," which include "indirect refoulement," meaning the United States cannot send an asylum seeker to countries that will send them onward to places where they would face persecution or torture. *Id.* ¶ 44-45.

Both expedited and regular removal proceedings have safeguards against refoulement. *Id.* ¶ 46. In regular removal proceedings, noncitizens have the right to counsel, to present evidence, to cross-examine witnesses, and to administrative appeal and judicial review. *Id.* Noncitizens in expedited removal proceedings can be removed by immigration officers without further hearing or review; however, an immigration officer must affirmatively ask noncitizens whether they have any fear or concern about being returned to their home country or being removed from the United States. *Id.* ¶ 47 (citing 8 C.F.R. § 235.3(b)(2)(i)). If the noncitizen expresses such fear, they are entitled to a credible fear interview. *Id.* (citing 8 U.S.C. § 1225(b)(1)(B)). At the credible fear hearing, a noncitizen must only establish a "significant possibility" that they could establish eligibility for one of the three protection methods in a full removal hearing, and if satisfied, they are placed in regular removal proceedings. *Id.* ¶¶ 48-49.

**2. Safe Third Country Provision and First ACAs**

The safe third country provision provides that

> if the Attorney General determines that the [noncitizen] may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the [noncitizen's] nationality or, in the case of an alien having no nationality, the country of the [noncitizen's] last habitual residence) in which the [noncitizen's] life or freedom would

> not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the [noncitizen] would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the [noncitizen] to receive asylum in the United States[,]

the noncitizen may not apply for asylum. *See id.* ¶ 50 (citing 8 U.S.C. § 1158(a)(2)(A)). The provision was enacted in 1996, "in light of negotiations initiated by Canada, which has long been a global leader in refugee protection." *Id.* ¶ 51. These agreements are also known as "asylum cooperative agreements" ("ACA"). The safe third country agreement with Canada was signed in 2002 and became effective in 2004. *Id.*

Until 2019, the only ACA the United States had entered into was the agreement with Canada. *Id.* ¶ 52. However, in 2019, the United States signed ACAs with Guatemala, El Salvador, and Honduras. *Id.* ¶ 53. The ACA with Guatemala was signed on July 26, 2019 and published in the Federal Register on November 20, 2019. *Id.* ¶ 54. The ACA with El Salvador was signed on September 20, 2020, and the ACA with Honduras was signed on September 25, 2019.[4] *Id.* ¶ 55.

[4] Plaintiffs note that the Rule at issue requires that ACAs must be published in the Federal Register, but the Honduras and El Salvador ACAs were not. Am. Compl., ECF No. 1 ¶ 55.

**3. The Rule**

On November 19, 2019, former Attorney General Barr ("Mr. Barr") and former Acting Department of Homeland Security ("DHS") Secretary Wolf promulgated the Rule[5] at issue in this case. *See id.* ¶ 56. The Rule adopts new procedures in regular and expedited removal proceedings that apply to noncitizens subject to the ACAs other than the one entered into with Canada. *Id.*

In an expedited removal process, the Rule "divert[s] [the asylum seeker] away from the normal credible fear process into a new process created by the Rule." *Id.* ¶ 60. The Rule states that rather than receiving a credible fear interview, the asylum seeker will receive written notice that if they fear removal to a prospective receiving ACA country, they must affirmatively state that to the officer. *See id.* If they do, an asylum officer will assess their risk of persecution or torture during a "threshold screening interview" to determine whether it is "more likely than not" that they would be persecuted or tortured in that country. *See id.* ¶¶ 62–63. The "more-likely-than-not" standard used in these threshold screening interviews is the *ultimate* standard used in a full removal hearing when seeking withholding or CAT relief. *Id.* ¶ 63. A noncitizen must meet this standard for every ACA country to which they are susceptible to

[5] 84 Fed. Reg. 63,944.

removal in order to receive a normal credible fear interview regarding their fear of removal to their home country. *Id.* If the asylum officer determines that after the threshold screening interview that they do not meet the "more-likely-than-not" standard, the noncitizen is subject to immediate removal to the ACA country once the supervisory asylum officer signs off on the decision. *Id.* ¶ 67. This decision is final, as the Rule "forbids immigration judge review." *Id.* ¶ 68.

In a regular removal process, the Rule "authoriz[es] immigration judges to order asylum seekers removed to ACA countries before hearing the merits of their asylum, withholding, and CAT claims as to their countries of origin." *Id.* ¶ 69. The Rule also prohibits immigration judges from exercising the "public interest" exception provided in the asylum statute in regular removal proceedings, *see id.* ¶ 70 (citing 8 U.S.C. § 1158(a)(2)(A)); and instead states that only DHS may exercise this discretionary authority. *Id.*

**4. 2019 Designations and Guidance**

The Rule states that

> [p]rior to implementation of an ACA, the Attorney General and the Secretary of Homeland Security' will 'make a categorical determination whether a country to which [noncitizens] would be removed under such an agreement provides access to a full and fair procedure for determining a claim to asylum or equivalent temporary protections.

*Id.* ¶ 72 (citing 84 Fed. Reg. at 63,997 (internal citations omitted). On October 16, 2019 and November 7, 2019, respectively, former Acting DHS Secretary Kevin McAleenan and Mr. Barr signed memoranda concluding that Guatemala met the statutory requirement of providing a full and fair asylum system. *Id.* ¶¶ 73–74. On Plaintiff's information and belief, similar memoranda were signed regarding Honduras and El Salvador, but these memoranda have not been made public. *Id.* ¶ 75.

On November 19, 2019, USCIS issued written guidance for asylum officers regarding how to conduct ACA threshold screening interviews in expedited removal proceedings. *Id.* ¶ 76. The guidance provided that Customs and Border Protection ("CBP") officers were to make the initial determination whether a noncitizen falls under an ACA. *Id.* ¶ 77. Moreover, the guidance states that in threshold screening interviews, demonstrating past persecution is only considered "strong evidence" of the future likelihood of persecution, unlike in credible fear interviews, where it creates a presumption of future persecution. *Id.* ¶ 78.

The same day, the Executive Office for Immigration Review ("EOIR") distributed guidance to immigration judges that noncitizens subject to an ACA are not eligible for Protection unless the immigration judge determines that: (1) the ACA does

not preclude the noncitizen from applying for asylum in the United States, (2) the noncitizen qualifies for an exception to the relevant ACA, or (3) the noncitizen has shown that they would more likely than not be persecuted or tortured in the third country. *Id.* ¶ 79. The guidance also prevented immigration judges from "review[ing], consider[ing], or decid[ing] any issues pertaining to any discretionary determination" of whether a noncitizen subject to an ACA can pursue asylum in the United States, or if a noncitizen can apply for asylum if a DHS officer determines that the public interest exception applies and files a written notice stating the same. *Id.* ¶ 80.

#### 5. First Trump Administration's Application of the Rule

In November 2019, Defendants began applying the Rule and the ACA with Guatemala to asylum seekers in expedited removal proceedings. *Id.* ¶ 81. Plaintiffs allege, however, that "the U.S. and Guatemalan governments had not yet developed any plan to ensure that asylum seekers deported under the agreement would be able to access asylum procedures," resulting in inadequate legal and social services and pressure on noncitizens to return to their countries of origin, which Plaintiffs allege is "indirect refoulement" of asylum seekers. *See id.* ¶¶ 81–84.

On March 17, 2020, due to concerns surrounding the spread of the COVID-19 virus, the Guatemalan government suspended the

2019 ACA. *Id.* ¶ 85. While removals under the agreement ultimately never resumed, between November 2019 and March 2020, Defendants removed approximately 945 non-Guatemalan asylum seekers to Guatemala. *See id.* ¶¶ 85–86.

The 2019 ACAs with Honduras and El Salvador were never implemented, likely due to the COVID-19 pandemic. *Id.* ¶ 87.

**6. Biden Administration Termination of the 2019 ACAs**

On February 2, 2021, then-President Biden directed the Attorney General and DHS Secretary to "promptly review and determine whether to rescind the interim final rule," as well as "any agency memoranda or guidance issued in reliance on that rule." *Id.* ¶ 88 (citing Exec. Order 14010, 86 Fed. Reg. 8267, 8270). The same order directs the Secretary of State to consider whether to notify the governments of Guatemala, El Salvador, and Honduras that the United States intends to suspend and terminate the ACAs. *Id.* On February 6, 2021, the State Department announced that it had begun the process of suspending and terminating the ACAs, and after the applicable notice periods, the ACAs were terminated by August 2019. *Id.* ¶ 89.

The government did not announce whether it had rescinded the 2019 Designations concerning Guatemala, El Salvador, and Honduras, nor did it announce whether it had rescinded the 2019 Guidance documents. *Id.* ¶ 90.

**7. Second Trump Administration Application of the Rule**

Beginning in June 2025, the second Trump administration signed a series of new ACAs. *Id.* ¶ 91.

The United States signed a new ACA with Guatemala on June 13, 2025, which was published in the Federal Register on July 15, 2025. *Id.* ¶ 92. (citing 90 Fed. Reg. 31675). Defendants entered into the new agreement despite the State Department acknowledging in May 2025 that Guatemala remains dangerous and discourages Americans from traveling to the country. *Id.* ¶ 93. The State Department also acknowledged in 2024 that while Guatemalan law does provide for the granting of asylum or refugee status, "there are gaps and shortcomings in the procedures for implementing the legal framework." *Id.* ¶ 94 (internal citation omitted).

On June 25, 2025, the United States signed a new ACA with Honduras, which was published in the Federal Register on July 8, 2025. *Id.* ¶ 95. The State Department has similarly warned Americans not to travel to Honduras, *see id.* ¶ 96; and that "Honduras has only a nascent system to provide legal protection to refugees and that migrants and asylum seekers with pending cases were vulnerable to abuse and sexual exploitation by criminal organizations," especially women, children, and LGBTQI+ asylum seekers. *Id.* ¶ 97 (citation modified).

On August 14, 2025, the United States signed an ACA with Paraguay.[6] *Id.* ¶ 98. The State Department reports that the ruling party of Paraguay engages in torture, restrictions on the freedom of expression, government corruption, and gender-based violence. *Id.* ¶ 99. In 2024, Paraguay granted asylum to eighty-five (85) people. *Id.*

On July 29, 2025, the United States signed an ACA with Uganda, which was published in the Federal Register on September 3, 2025. *Id.* ¶ 100. The State Department reports extensive human rights violations in Uganda, *see id.* ¶¶ 101–02; and that while Uganda does have a committee for determining refugee status eligibility, it already has an extensive backlog, and officials engage in corrupt practices. *Id.* ¶ 103.

On September 4, 2025, officials from the State Department and officials from Ecuador met to finalize an ACA between the United States and Ecuador.[7] *Id.* ¶ 104. The State Department warns that travel to Ecuador is dangerous because violent crime is widespread and reports that criminal groups specifically "target migrants and refugees for violence, recruitment into forced

---

[6] At the time the Amended Complaint was filed, the government had not yet published the ACA in the Federal Register. However, the government published the ACA in the Federal Register on December 23, 2025. *See* 90 Fed. Reg. 60,114.

[7] At the time the Amended Complaint was filed, the government had not yet finalized or published the ACA in the Federal Register. However, the government published the ACA in the Federal Register on November 17, 2025. *See* 90 Fed. Reg. 51,376.

labor, and sex trafficking, and that women, children, and LGBTQI+ individuals are in particular danger." *Id.* ¶ 105 (citation modified).

On August 20, 2025, then-DHS Secretary Noem issued an intended ratification of the Rule, which was published in the Federal Register on September 2, 2025. *Id.* ¶ 106 (citing 90 Fed. Reg. 42309–10). On Plaintiff's information and belief, Defendants issued Designations that "categorically [found] that each country with which the United States has signed an ACA has a 'full and fair' asylum process," but at the time the Amended Complaint was filed, the Designations were not yet public. *Id.* ¶ 107. Defendants also issued new guidance documents to DHS and DOJ personnel that outline the implementation of the Rule in both expedited and regular removal proceedings. *Id.* ¶ 108–13.

**B. Procedural Background**

Plaintiffs filed their Complaint in this case on January 15, 2020. *See* Compl., ECF No. 3. Thereafter, Plaintiffs filed their Motions for Summary Judgment and Permanent Injunction on February 28, 2020. *See* Mot. for Summ. J., ECF No. 38. Defendants filed their Motion for Summary Judgment and their opposition to Plaintiff's Motion for Summary Judgment on March 25, 2020. *See* Def.'s Opp. to Pls.' Mot. for Summ. J. and Permanent Inj. & Cross-Mot. for Summ. J., ECF No. 82; ECF No. 83. Plaintiffs filed their opposition to Defendant's Motion for Summary

Judgment and their reply to their Motion for Summary Judgment on April 10, 2020. *See* Pls.' Reply Mem. of Law in Supp. of their Mot. for Summ. J. & In Opp. to Defs.' Cross-Mot. for Summ. J., ECF No. 88; ECF No. 89.

Before the Court resolved the motions for summary judgment, the parties filed a motion to hold the case in abeyance, *see* Stip. Mot. to Hold Case in Abeyance, ECF No. 121; which the Court granted on February 22, 2021. *See* Minute Order (Feb. 22, 2021). The parties filed regular status reports for the next few years, until Plaintiffs filed an unopposed Motion to Lift Stay, *see* Pls.' Unopposed Mot. to Lift Abeyance, ECF No. 156; which the Court granted on October 15, 2025. *See* Minute Order (Oct. 15, 2025). The same day, Plaintiffs' Amended Complaint was docketed. *See* Am. Compl., ECF No. 166.

Before Defendants answered or otherwise responded to the Amended Complaint, Plaintiffs filed their Motion for Leave to File a Second Amended Complaint on December 19, 2025. *See* Pls.' Mot. for Leave to File 2d Am. Compl. ("Mot. for Leave"), ECF No. 173. Plaintiffs seek to add claims related to new ACAs and related guidance and procedures that were signed or implemented after they prepared their Amended Complaint. *See* Mot. for Leave, ECF No. 173 at 3-4. Plaintiffs also seek to add eighteen new named plaintiffs who are subject to regular removal proceedings. *See id.* at 6. Defendants filed their opposition on January 16,

2026. *See* Defs.' Mem. of Law in Opp. to Pls.' Mot. for Leave to File 2d Am. Compl. ("Opp'n to Mot. for Leave"), ECF No. 180. Plaintiffs filed their reply on January 23, 2026. Pls.' Reply in Supp. of Mot. for Leave to File 2d Am. Compl. ("Reply to Mot. for Leave"), ECF No. 183.

Plaintiffs also filed their Motion for Class Certification on December 19, 2025. *See* Pls.' Mot. for Class Certification ("Mot. for Class Cert."), ECF No. 174. Defendants filed their opposition on January 16, 2026. *See* Defs.' Opp'n to Pls.' Mot. for Class Certification ("Opp'n to Mot. for Class Cert."), ECF No. 181. Plaintiffs filed their reply on January 30, 2026. *See* Pls.' Reply in Supp. of Mot. for Class Certification ("Reply to Mot. for Class Cert."), ECF No. 185.

Finally, Plaintiffs filed their unopposed motion to hold certain claims regarding expedited removal in abeyance on June 5, 2026. *See* Pls.' Unopposed Mot. to Hold in Abeyance Claims Concerning Expedited Removal ("Mot. to Hold in Abeyance"), ECF No. 191.

The motions are now ripe and ready for the Court's adjudication.

## II. Legal Standard

### A. Motion for Leave to File Amended Complaint

A plaintiff may amend their complaint once as a matter of course within twenty-one (21) days of serving it or within

twenty-one (21) days of being served a responsive pleading. FED. R. CIV. P. 15(a)(1). However, when a plaintiff has already amended their complaint once, they must seek consent from the defendant or leave from the court to file another amended pleading, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).

"Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[I]n assessing an argument that an amendment would be futile, the court must assess the proposed amendments under the same standard as would be applied to a motion to dismiss." *Oladokun v. Corr. Treatment Facility*, 5 F. Supp. 3d 7, 13 (D.D.C. 2013). "Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008), app. dismissed, No. 08-7022, 2008 U.S. App. Lexis 9082 (D.C. Cir. Mar. 12, 2008) (citing *Dove v. WMATA*, 221 F.R.D. 246, 2476 (D.D.C. 2004). Moreover, "while courts *may*

deny a motion to amend a complaint as futile, it remains a discretionary choice." *Smith-Haynie v. U.S. Veterans Initiative*, Civil Action No. 17-cv-2824, 2019 WL 13139736, at *1 (D.D.C. Mar. 29, 2019) (citation modified) (emphasis in original).

**B. Motion for Class Certification**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks omitted). Federal Rule of Civil Procedural 23(a) establishes four requirements for class certification: (1) that "the class is so numerous that joinder of all members is impracticable;" (2) that "there are questions of law or fact common to the class;" (3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). In addition to satisfying Rule 23(a), a putative class must also meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification under Rule 23(b)(2), stating that certification under Rule 23(b)(2) is proper because declaratory and injunctive relief "would benefit the proposed class representatives as well as all members of the proposed class in the same fashion." Mot. for Class Cert., ECF No. 174 at 9.

"The party seeking certification bears the burden of persuasion, and must show that the putative class[] meet[s] the requirements of Rule 23 by a preponderance of the evidence." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 204 (D.D.C. 2018) (citing *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C. 2017)). To carry that burden, Plaintiffs must "affirmatively demonstrate . . . compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court must undertake a "rigorous analysis" to confirm that the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982).

## III. Analysis

### A. The Court Grants the Motion for Leave to File a Second Amended Complaint

In their Motion for Leave to File a Second Amended Complaint, Plaintiffs seek to challenge two additional ACAs—the ACA between the United States and Belize, and the ACA between the United States and Liberia. *See* Mot. for Leave, ECF No. 173 at 3-4; Proposed Second Amended Complaint ("Proposed SAC"), ECF No. 173-1 ¶¶ 120-23. Plaintiffs also seek to add eighteen (18) additional individual plaintiffs to the proposed class of

Section 240[8] plaintiffs, bringing the total of named Section 240 plaintiffs to twenty-one (21).[9] *See* Proposed SAC, ECF No. 173-1 ¶¶ 23–36. Finally, Plaintiffs seek to add a new claim for relief, arguing the Rule and Guidance fail to ensure adequate notice and opportunity to be heard in regular removal proceedings. *See id.* ¶¶ 183-84.

Defendants oppose the motion for leave to file a second amended complaint, arguing that Plaintiffs' new claims regarding Belize and Liberia are futile and that the Proposed SAC is unduly delayed and prejudices Defendants. *See generally* Opp'n to Mot. for Leave, ECF No. 180. The Court will address each argument in turn.

**1. Futility**

Defendants advance three primary arguments as to why Plaintiffs' new claims related to the Belize and Liberia ACAs are futile: (1) Plaintiffs are jurisdictionally barred from challenging the Belize and Liberia ACAs; (2) Plaintiffs lack standing to challenge the Belize and Liberia ACAs; and (3) Plaintiffs' procedural due process claim is not cognizable. *See* Opp'n to Mot. for Leave, ECF No. 180 at 5–12.

---

[8] In the Proposed SAC, Plaintiffs begin to refer to plaintiffs that are subject to regular removal proceedings as "Section 240" plaintiffs. *See, e.g.,* Proposed SAC ¶ 19. Therefore, the Court will use the terms interchangeably.

[9] One of the original four Section 240 plaintiffs, D.G., filed a Notice of Voluntary Dismissal on December 18, 2025.

First, Defendants argue that "Plaintiffs' claims challenging the Belize and Liberia ACAs are barred under numerous INA provisions." *Id.* at 5. Although they frame this argument as to why Plaintiffs cannot challenge the new Belize and Liberia ACAs, Defendants apply their jurisdictional arguments to all ACAs that Plaintiffs are challenging. *See id.* at 5–6. "Courts should be careful not to use the 'futility of amendment' standard as a shortcut for a properly filed and fully briefed motion to dismiss." *Farouki v. Petra Int'l Banking Corp.*, Civil No. 08-2137, 2013 WL 12309520, at *3 (D.D.C. June 12, 2013). The Court concludes that Defendants' jurisdictional arguments regarding the Belize and Liberia ACAs are best addressed in a motion to dismiss after each party has the opportunity to fully brief this issue regarding all ACAs.

Defendants also argue that in the Proposed SAC, "Plaintiffs' allegations fail to state a cognizable procedural due process claim and thus this claim would not survive a motion to dismiss," rendering the claim futile. Opp'n to Mot. for Leave, ECF No. 180 at 8. The Court agrees with Plaintiffs, however, that Defendants are "prematurely litigat[ing]" this claim. *See* Reply to Mot. for Leave, ECF No. 183 at 8. To determine whether the claim is futile, the Court would have to engage in a premature analysis of the merits. *See Norris v. Salazar*, 746 F. Supp. 2d 1, 4–5 (D.D.C. 2020) (granting a motion

to amend where determining whether a claim is futile would require a ruling on the merits); *see also Xilojitzep v. Nat'l R.R. Passenger Corp.*, 2024 WL 1350380, at *3 (D.D.C. Mar. 21, 2024) ("[I]t is impossible for the Court to determine whether the plaintiff's proposed Second Amended Complaint would be sufficient to survive a motion to dismiss without engaging in a premature analysis of the merits.").

Finally, Defendants argue that the Proposed SAC is futile because "Plaintiffs fail to satisfy Article III standing's traceability and redressability prongs" in relation to the Belize and Liberia ACAs.[10] *See* Opp'n to Mot. for Leave, ECF No. 180 at 7. This argument is unavailing, because, as Plaintiffs note, "nothing prevents DHS attorneys or immigration judges from invoking those or any other ACAs against the Individual Plaintiffs at any time." Reply to Mot. for Leave, ECF No. 183 at 8. The threat of imminent injury due to the government invoking the Belize or Liberia ACA is directly traceable to Defendants, and declaratory or injunctive relief invalidating the ACAs would redress the Individual Plaintiffs' injuries. Similarly, the Organizational Plaintiffs' harms due to the Belize and Liberia ACAs—interference with the core work of the organizations—are

[10] Defendants do not challenge the injury-in-fact prong of Article III standing, and so the Court will not address it here.

directly traceable and redressable to the actions of Defendants in the same way as the Individual Plaintiffs' harms. *See id.*

Overall, Defendants' arguments do not "clearly demonstrate [the] futility" of the Proposed SAC, *see Abraha v. Colonial Parking Inc.*, Civil Action No. 16-680, 2018 WL 1506005, at *4 (D.D.C. Apr. 5, 2019); so as to warrant denial of the Motion for Leave to File the Second Amended Complaint.

**2. Undue Delay and Prejudice**

Defendants also argue that Plaintiffs' Proposed SAC is unduly delayed and prejudices Defendants. *See* Opp'n to Mot. for Leave, ECF No. 180 at 12–14. Defendants argue that because Plaintiffs seek leave to amend the complaint "nearly six years after they filed the original complaint and over five-and-a-half years after Defendants produced the certified administrative record and the parties briefed cross-motions for summary judgment," *id.* at 12; they are prejudiced because Plaintiffs seek to "fundamentally reshape the landscape of the litigation" by adding new claims and parties at an advanced stage of the proceedings. *Id.* at 13 (citing *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015)). Defendants also argue that it "appears to be Plaintiffs' intention" to restart the litigation each time a new ACA is concluded or each time a new individual becomes subject to one. *See* Opp'n to Mot. for Leave, ECF No. 180 at 14.

"With respect to an amendment causing undue delay, courts generally consider the relation of the proposed amended complaint to the original complaint, favoring proposed complaints that do not radically alter the scope and nature of the case." *2910 Georgia Ave. LLC v. District of Columbia*, 312 F.R.D. 205, 209 (D.D.C. 2015) (citation modified). "The district court may not deny [a motion to amend a complaint] based solely on the timeliness unless the defendants can show undue prejudice." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 56–57 (D.C. Cir. 2014). "To show prejudice, the opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *See Dooley v. United Techs. Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993) (citing *Foremost-McKesson Inc. v. Islamic Rep. of Iran*, 759 F. Supp. 855, 858 (D.D.C. 1991)).

**a. Undue Delay**

Defendants mischaracterize the fact that the litigation is now six years old to assert their argument that Plaintiffs' Proposed SAC is unduly delayed. While the original complaint was indeed filed in 2020, the parties jointly requested that the case be held in abeyance for over four years. *See* Stip. Mot. to Hold Case in Abeyance, ECF No. 121. Moreover, in light of Plaintiffs' Amended Complaint, the Court denied both Plaintiffs'

and Defendants' motions for summary judgment as moot once the stay was lifted. *See* Minute Order (Oct. 15, 2025). Regardless of whether the operative complaint is the Amended Complaint or the Proposed SAC, the parties will have to refile dispositive motions. Defendants list several cases where the court rejected attempts to amend complaints because they did so years into the litigation, *see* Opp'n to Mot. for Leave, ECF No. 180 at 13–14; but as Plaintiffs note, each of these cases denied leave to amend the complaint after dispositive motions were decided and the cases were nearing resolution. *See* Reply to Mot. for Leave, ECF No. 183 at 3 n.1. Despite Defendants' assertions to the contrary, the case is still in its beginning stages, and the Proposed SAC is not unduly delayed.

**b. Prejudice**

Defendants have not shown that they would be prejudiced by the Proposed SAC. Plaintiffs are not seeking to "fundamentally reshape the landscape of the litigation," but rather to add claims and parties related to those already alleged in their Amended Complaint. *See generally* Proposed SAC.

Although Plaintiffs did not invoke Federal Rule of Civil Procedure 20, a motion for leave to amend a complaint seeking to add new parties must comply with both Rule 15 and Rule 20. *See* *Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 47–48 (D.D.C. 2022). Rule 20(a)(1) states that plaintiffs may be joined if they seek

relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(1). "Rule 20(a)'s requirements are to be liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Sadat I. v. Nielsen*, Civil Action No. 17-1976, 2019 WL 108854, at *3 (D.D.C. Jan. 4, 2019) (citation modified).

Defendants argue that the Court should deny leave to add the additional plaintiffs because Plaintiffs' proposed class definition would already encompass these proposed individual plaintiffs, and Plaintiffs have already designated class representatives. Opp'n to Mot. for Leave, ECF No. 180 at 14. However, at the time Plaintiffs filed their Proposed SAC, the Court had not yet certified Plaintiffs' proposed class. The Court sees no compelling reason to deny the request to amend the complaint to include additional individual plaintiffs at this early stage of litigation, *see Grogan v. Holder*, Civil Action 08-01747, 2011 WL 13340589, at *10 (D.D.C. Sept. 1, 2011) (granting leave to add additional putative class representatives in the absence of a compelling reason to deny the request); and it would be an abuse of discretion to do so, *see Bayatfshar v. Aeronautical Radio, Inc.*, 934 F. Supp. 2d 138, 143 (D.D.C. 2013) ("This Circuit has held that 'it is an abuse of discretion to

deny leave to amend unless there is sufficient reason'" (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Rather, it is in the interests of judicial economy to add additional named parties at this juncture rather than to spend additional time and resources to further amend the complaint at a later time.

Defendants also argue that the "proposed new Plaintiffs and claims would challenge ACAs not in existence at the time of the original complaint and would challenge their application in an entirely different context—[section] 240 proceedings." Opp'n to Mot. for Leave, ECF No. 180 at 13. Defendants' argument is without merit. First, Plaintiffs have already challenged the application of the Rule, Designations, and related guidance in the context of Section 240 removal proceedings in the Amended Complaint. *See, e.g.*, Am. Compl., ECF No. 166 ¶¶ 146–48 (Fourth Claim of Relief, including challenges to regular removal proceedings). Second, the new claims in the Proposed SAC relate back to the Amended Complaint because the government enters into new ACAs pursuant to the same statute, and they are implemented under the same Rule. These claims do not radically alter the scope of the litigation, and despite Defendants' assertion to the contrary, *see* Opp'n to Mot. for Leave, ECF No. 180 at 14; it would be inefficient and a waste of time and resources to

require Plaintiffs to file a new suit to challenge the validity of the new ACAs.

Moreover, Defendants cannot claim that they have been "unfairly disadvantaged or deprived of the opportunity to present facts or evidence," *see Dooley*, 152 F.R.D. at 425; as they had not yet filed a response to the Amended Complaint at the time the Proposed SAC was filed. Therefore, the Court concludes that it is in the interests of judicial economy to **GRANT** Plaintiffs' Motion for Leave to File their Second Amended Complaint.

### B. The Court Grants the Motion for Class Certification.

#### 1. Class Definition

Pursuant to Federal Rule of Civil Procedural 23(a) and 23(b)(2), Plaintiffs are seeking class certification for the following class:

> All noncitizens whom Defendants have sought or will seek to bar from asylum, withholding of removal, or protection under the Convention Against Torture in removal proceedings under 8 U.S.C. § 1229a on the basis that they can be removed to a third country under an Asylum Cooperative Agreement pursuant to the Rule, Guidance, or Designations, except that the class does not include noncitizens who have received final and unappealable adjudications on the substantive merits of such claims not premised on application of the Rule, Guidance, and Designations.

*See* Reply to Mot. for Class Cert., ECF No. 185 at 8.

Defendants argue that Plaintiffs' proposed class definition is overbroad because it could include noncitizens who were granted asylum despite being subject to the disputed policies. *See* Opp'n to Mot. for Class Cert., ECF No. 181 at 7-8. Plaintiffs therefore added the last clause to the above definition, agreeing that "final and unappealable adjudication of a noncitizen's asylum claim on the merits should except them from the class." Reply to Mot. for Class Cert., ECF No. 185 at 8.

"[I]t is far from clear that there exists in this [D]istrict a requirement that a class . . . must demonstrate ascertainability to merit certification." *Ramirez v. USCIS*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018); *see also Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017) (noting that "[t]he ascertainability requirement, while adopted by some courts in this district, has been recently disavowed by four federal appellate courts" and explaining that "the D.C. Circuit has not opined on the requirement"). However, the requirement of "definiteness" has been imposed by some courts as an "implied requirement" for class certification, in addition to the express requirements in Rule 23. *See DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013). This "common-sense requirement," *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998); is designed primarily to ensure the proposed class is

administratively manageable, *see Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). "It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that 'the general outlines of the membership of the class are determinable at the outset of the litigation.'" *Pigford*, 182 F.R.D. at 346 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 at 118).

"[W]here the plaintiff seeks certification of an injunctive class pursuant to Rule 23(b)(2), 'actual membership of the class need not . . . be precisely delimited' because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class.'" *Brewer v. Lynch*, No. 08-1747, 2015 WL 13604257, at *6 (D.D.C. Sept. 30, 2015). In those cases, the definiteness requirement is satisfied as long as plaintiffs can establish the "existence of a class" and propose a class definition that "accurately articulates 'the general demarcations' of the class of individuals who are being harmed by the alleged deficiencies." *See, e.g.*, *Kenneth R. v. Hassan*, 293 F.R.D. 254, 264 (D.N.H. 2013); *see also DL*, 302 F.R.D. at 17 ("Because the rationale for precise ascertainability is inapposite in the 23(b)(2) context, . . . it

is not required in cases such as this where only injunctive relief is sought and notice is not required.").

Here, with the addition of the final clause to the proposed definition, the Court concludes that the proposed definition "accurately articulate[s] the general demarcations of the class of individuals" who are being harmed by Defendants' actions. *Kenneth R.*, 293 F.R.D. at 264. Because a district court has "broad discretion to redefine and reshape [a] proposed class to the point that it qualifies for certification under Rule 23," *Wagner v. Taylor*, 836 F.2d 578, 589–90 (D.C. Cir. 1987); the Court will use the definition proposed in Plaintiffs' Reply as the operative proposed class definition.

### 2. Rule 23(a) Requirements

#### a. Numerosity

Because of the general rule in favor of confining litigation to the named parties only, a class action is appropriate only when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although Plaintiffs need not clear any "specific threshold," as a general benchmark, "courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Plaintiffs may satisfy the requirement by supplying estimates of putative class members,

*see Pigford*, 182 F.R.D. at 347–48; "[s]o long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

Plaintiffs state that the proposed class meets the numerosity requirement of Rule 23(a) because "Defendants have already invoked the challenged policies to bar or seek to bar at least hundreds of noncitizens from seeking or being granted asylum or other protection in Section 240 proceedings just in the past few months." Mot. for Class Cert., ECF No. 174 at 5; *see also* Reply to Mot. for Class Cert., ECF No. 185 at 13 (citing various news articles as evidence for their estimate). Defendants argue that Plaintiffs "fail to provide a reasonable basis, or, in some instances, any basis, for their estimate of putative class members subject to each of the challenged ACAs." Opp'n to Mot. for Class Cert., ECF No. 181 at 14. Defendants also argue that because Plaintiffs "fail to identify *any* aliens facing pretermission or removal under the Paraguay, Belize, or Liberia ACAs," that "Plaintiffs' failure to appoint any class representatives subject to the Paraguay, Belize, or Liberia ACA [sic] undermines Plaintiffs' allegation that any putative class members exist," and because Plaintiffs "identify only two proposed class representatives who actually face removal under a challenged ACA," Plaintiffs fail to establish numerosity. *Id.* at 14–15.

The Court agrees with Plaintiffs that the Defendants' arguments here lack merit. Reply to Mot. for Class Cert., ECF No. 185 at 12. First, Plaintiffs provide evidence in the form of news reports that supports their estimate that their proposed class would be comprised of "hundreds" of noncitizens. *See Gutierrez v. Noem*, Civil Action No. 25-1766, 2025 WL 3496390, at *6 (D.D.C. Dec. 5, 2025) (accepting news reports as a "sufficient basis" for the Court to infer that the proposed class would contain more than forty individuals). Plaintiffs correctly note that an estimate of putative class members who would be subject to *each* ACA is unnecessary, as the proposed class definition encompasses "all noncitizens in Section 240 proceedings against whom Defendants seek to apply the Rule, regardless of the particular [ACA] invoked." *Id.* Plaintiffs are not required to show that each class member will be harmed by "every distinct manifestation" of the challenged policies at this juncture. *See Robertson v. District of Columbia*, No. 24-cv-656, 2026 WL 125237, at *10 (D.D.C. Jan. 16, 2026). Moreover, the Court agrees with Plaintiffs that Defendants conflate their numerosity arguments with the standing or adequacy of the proposed class representatives. *See* Reply to Mot for Class Cert., ECF No. 185 at 13.

Accordingly, the Court finds that Plaintiffs have shown by a preponderance of the evidence that their proposed class satisfies Rule 23(a)'s numerosity requirement.

**b. Commonality**

A plaintiff seeking class certification must also establish that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This requires more than the identification of the purported violation of the same provision of law. *See DL v. District of Columbia*, 713 F.3d 120, 127–30 (D.C. Cir. 2013) (vacating an order certifying a class composed of students who were purportedly each denied a free appropriate public education on the ground that plaintiffs had identified only sufferers of a violation of the same provision of law and had not met the commonality requirement). Instead, the claims must depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. "Even a single common question will do." *Id.* at 359 (citation modified).

As the D.C. Circuit has explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members." *DL*, 713 F.3d at 128. Here, the members are seeking to invalidate the same Rule on the same grounds, as well

as the Designations and Guidance promulgated pursuant to the Rule. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019) (finding commonality satisfied where "[a]ll members of the proposed class, and all of the proposed class representatives, face the same threat of injury" and where they "[a]ll challenge the same Rule on the same grounds, and all seek the same remedy—invalidation of the Rule").

Defendants' arguments to the contrary are unavailing. Defendants argue that the class members do not face a common injury because noncitizens do not have a right to seek asylum if they are subject to removal under an ACA. *See* Opp'n to Mot. for Class Cert., ECF No. 181 at 9–10. But as Plaintiffs correctly note, this argument assumes that the challenged policies that prohibit noncitizens from seeking asylum in the United States if they are subject to removal under an ACA are lawful—the very question at issue in this lawsuit. *See* Reply to Mot. for Class Cert., ECF No. 185 at 10. Defendants' argument that different responses by Defendants to class members' asylum claims undermines Plaintiffs' claims of common injury, *see* Opp'n to Mot. for Class Cert., ECF No. 181 at 9–10; is also without merit. Each class member will have a "unique interest in pursuing his or her own claim to asylum," *see O.A.*, 404 F. Supp. 3d at 156; and the manner in which an individual's case progresses does not mean that they do not all face a common

injury. Finally, Defendants' arguments that Plaintiffs do not challenge the same government policy because not all Designations will apply to each class member and the fact that Plaintiffs' claims regarding Designations could require country-specific inquiries show that Plaintiffs have not identified common questions, *see* Opp'n to Mot. for Class Cert., ECF No. 181 at 10–12; lack merit for the same reason. Plaintiffs argue that the *Rule* is a common policy that affects all class members, which affects the lawfulness of all Designations and related Guidance.

Accordingly, the Court finds that Plaintiffs have shown by a preponderance of the evidence that the proposed class satisfies the commonality requirement of Rule 23(a).

**c. Typicality**

A class representative satisfies the typicality requirement if the representative's "claims are based on the same legal theory as the claims of the other class members" and her "injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003). Put another way, a representative's claims are typical of those of the class when "[t]he plaintiffs allege that their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

Typicality here is satisfied for largely the same reasons as the commonality requirement. *See Hettinger v. Bozzuto Mgmt. Co.*, Civil Action No. 23-3687, 2026 WL 2042479, at *9 (D.D.C. July 15, 2026) ("When commonality is met, typicality usually follows."). Defendants again argue that the class representatives' and class members' claims are "based on different ACAs and guidance" and because "[the proposed class representatives] are challenging entirely separate agency actions from many of the proposed class members," their claims are not typical of the class members. Opp'n to Mot. for Class Cert., ECF No. 181 at 12-13. As Plaintiffs state, the fact that Defendants are applying different ACAs and Guidance, including those that have not yet been published or do not yet exist, "does not defeat certification of a class including all noncitizens against whom Defendants seek to apply the Rule in Section 240 proceedings, regardless of the Designations at issue in particular cases." Reply to Mot. for Class Cert., ECF No. 185 at 12.

Accordingly, the Court finds that Plaintiffs have shown by a preponderance of the evidence that the proposed class satisfies the typicality requirement of Rule 23(a).

**d. Adequacy**

"The adequacy requirement aims to ensure that absent class members will not be bound by the outcome of a suit in which they

were not competently and fairly represented." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019). "Adequacy embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Id.* (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). "The adequacy of representation requirements tend to merge with the commonality and typicality requirements." *Gonzalez v. Brady*, 136 F.R.D. 329, 331 (D.D.C. 1991) (citation modified).

Plaintiffs state that the class representatives will adequately and fairly protect the interests of the class, as they "do not seek any unique benefit from this litigation that may make their interests different from or adverse to those of absent class members," but rather they "aim to secure relief that will protect them and the entire class from the challenged policies." Mot. for Class Cert., ECF No. 174 at 8. Defendants disagree that the class representatives can "vigorously prosecute the interests of all the putative class members" because they "lack the same injury and interests as the putative class members." Opp'n to Mot. for Class Cert., ECF No. 181 at 15. Defendants also argue that "there is no guarantee that the named Plaintiffs and proposed class representatives will suffer

any injury at all or remain parties in this case," as evidenced by former plaintiff D.G., and therefore they do not adequately represent the class. *Id.* at 16.

Plaintiffs respond that the class representatives' interests "strongly align" with the interests of the class members for three reasons: (1) Defendants can invoke any ACAs against any Plaintiffs at any time, so each class representative has a strong interest in invalidating all Designations; (2) Plaintiffs argue that all Designations share the common defect that Defendants did not consider the actual safety of the country and the capacity of each country's asylum system; and (3) invalidating the Rule would invalidate all Designations. *See* Reply to Mot. for Class Cert., ECF No. 185 at 14–15. The Court agrees. Moreover, the Court has already determined that Plaintiffs share common interests, and therefore Defendants' arguments to the contrary lack merit.

While it is true that D.G. has dismissed his claims and that others might in the future, Plaintiffs correctly note that "[e]ven if the claim of one or more of the proposed class representatives becomes moot in the future, 'plaintiffs with moot claims may adequately represent a class.'" Reply to Mot. for Class Cert., ECF No. 185 at 15 (citing *J.D.*, 925 F.3d at 1313).

Defendants do not dispute that Plaintiffs' counsel is qualified to represent the class, but the Court has determined *sua sponte* that proposed class counsel is well-qualified to do so. *See O.A.*, 404 F. Supp. 3d at 157 (determining *sua sponte* that current counsel is "willing and have the ability [to] vigorously [] litigate this case and to protect the interests of absent class members"). As shown by the declarations submitted in support of class certification, *see* Decl. of Morgan Russell, ECF No. 174-1; Decl. of Keren Zwick, ECF No. 174-2; Decl. of Melissa Crow, ECF No. 174-3; Decl. of Anwen Hughes, ECF No. 174-4; Decl. of Scott Michelman, ECF No. 174-5; counsel is well-qualified to serve as class counsel.

Accordingly, the Court finds that Plaintiffs have shown by a preponderance of the evidence that the proposed class satisfies the adequacy requirement of Rule 23(a).

**3. Rule 23(b) Requirements**

Having determined that Plaintiffs meet the requirements of Rule 23(a), the Court must next determine whether they meet the requirements of Rule 23(b)(2). Rule 23(b)(2) applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the

injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (internal quotation marks and citations omitted). Rule 23(b)(2) imposes "two requirements: (1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37.

Defendants do not dispute that their actions or refusal to act are generally applicable to the entire class. *See generally* Opp'n to Mot. for Class Cert., ECF No. 181. Defendants do dispute whether a single injunction or declaratory judgment would provide relief to each class member because "Plaintiffs challenge *several* different ACAs and *several* sets of guidance (and possibly even future ACAs and guidance)." *See id.* at 17–18 (emphasis in original).

Defendants are correct that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *See id.* at 17 (citing *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020) (internal citation omitted)). However, an injunction or declaratory judgment invalidating the Rule would "provide indivisible relief to the entire class." *See* Reply to Mot. for Class Cert., ECF No.

185 at 16. The same applies for any declaratory and injunctive relief that requires Defendants to consider the safety of ACA countries and the functionality of those countries' asylum systems when issuing any Designations. *Id.* at 17. Moreover, "[a]lthough the injunction must provide relief to each member of the class, the perfect need not be the enemy of the good. If a certain outcome is legally mandated and an injunction provides each member of the class an increased opportunity to achieve that outcome, Rule 23(b)(2) is satisfied." *Brown v. District of Columbia*, 928 F.3d 1070, 1082 (D.C. Cir. 2019). Any relief concerning country-specific Designations will benefit all class members because Defendants can currently invoke any ACA against any class member. *See* Reply to Mot. for Class Cert., ECF No. 185 at 17.

Accordingly, Plaintiffs have satisfied the requirements of both Rules 23(a) and (b). For all these reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification.

### C. Abeyance Motion

Plaintiffs filed an unopposed motion to hold certain claims in abeyance to "further facilitate the efficient resolution of the forthcoming summary judgment motions." *See* Mot. to Hold in Abeyance, ECF No. 191 at 1. Plaintiffs request that if the Proposed SAC becomes the operative complaint, the Court hold Claim 7 in abeyance in its entirety; and Claims 2, 3, 5, and 8

in abeyance "insofar as they challenge (i) the application of the Rule in expedited removal proceedings or (ii) expedited-removal-specific Guidance documents." *Id.* at 2.

Plaintiffs argue that holding the requested claims in abeyance will serve the efficiency interests of the parties and the Court by focusing their upcoming summary judgment briefings on Plaintiffs' claims concerning "the current administration's more widespread application of the challenged policies in regular Section 240 removal proceedings in immigration court." *Id.* The Court agrees. "A court's authority to stay proceedings stems from 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, Civ. Action No. 20-1708, 2021 WL 7447978, at *2 (D.D.C. May 17, 2021) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

Therefore, because the Court has granted the Motion for Leave to File a Second Amended Complaint, the Court will hold in abeyance Claim 7 of the SAC in its entirety and Claims 2, 3, 5, and 8 of the SAC in abeyance insofar that they challenge the application of the Rule in expedited removal proceedings or expedited-removal-specific Guidance documents.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 173; **GRANTS** Plaintiffs' Motion for Class Certification, ECF No. 174; and **GRANTS** Plaintiffs' Unopposed Motion to Hold in Abeyance, ECF No. 191.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**September 21, 2026**